# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**
STEPHANIE COHEN, individually and
on behalf of all others similarly situated,
(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Nassau___
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**
WARNER CHILCOTT PUBLIC LIMITED COMPANY; WARNER CHILCOTT HOLDINGS COMPANY III,
LTD.; WARNER CHILCOTT CORPORATION; WARNER CHILCOTT (US) INC; WARNER
CHILCOTT COMPANY, INC.; GALEN (CHEMICALS), LTD.; and BARR PHARMACEUTICAL, INC.,
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Morris___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John M. Mason, Esquire      LAW OFFICES OF ROBERT W. SINK
Of Counsel                  319 West Front Street
Tel: 610-566-0800           Media, PA 19063

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☒ A. Antitrust**

☒ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other)  OR  ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G. Habeas Corpus/ 2255**<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ **H. Employment Discrimination**<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **I. FOIA/PRIVACY ACT**<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **J. Student Loan**<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ **K. Labor/ERISA (non-employment)**<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ **L. Other Civil Rights (non-employment)**<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ **M. Contract**<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ **N. Three-Judge Court**<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

15 USC Sections 1 and 2; Antitrust Class action on behalf of indirect purchasers of Ovcon.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☒ ACTION UNDER F.R.C.P. 23 | **DEMAND $** In excess of $150,000 per class member | Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☒ YES    ☐ NO    If yes, please complete related case form.

DATE 3/3/06    SIGNATURE OF ATTORNEY OF RECORD _John Nesse_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT. (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE COHEN<br>42 Page Drive<br>Hicksville, New York 11801,<br>individually and on behalf of all others<br>similarly situated, | :<br>:<br>:<br>:<br>: 06 Civ. |
| | : |
| Plaintiff, | : |
| v. | : **JURY TRIAL**<br>: **DEMANDED** |
| WARNER CHILCOTT PUBLIC LIMITED<br>COMPANY<br>100 Enterprise Drive, Rockaway,<br>New Jersey 07866-2129;<br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD.<br>Old Belfast Road, Milbrook, Lame, BT40 2SH<br>County Antrim, United Kingdom;<br>WARNER CHILCOTT CORPORATION<br>100 Enterprise Drive<br>Rockaway, New Jersey 07866-2129;<br>WARNER CHILCOTT (US) INC<br>100 Enterprise Drive, Rockaway<br>New Jersey 07866-2129;<br>WARNER CHILCOTT COMPANY, INC.<br>100 Enterprise Drive<br>Rockaway, New Jersey 07866-2129;<br>GALEN (CHEMICALS), LTD.<br>Old Belfast Road, Milbrook, Lame, BT40 2SH<br>County Antrim, United Kingdom;<br>and<br>BARR PHARMACEUTICAL, INC.<br>2 Quaker Road,<br>Pomona, New York 10970-0519, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

## CLASS ACTION COMPLAINT

Plaintiff, Stephanie Cohen, by and through her undersigned attorneys, brings this action on behalf of herself and all others similarly situated, against Defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc,, Warner Chilcott Company, Inc., Galen

(Chemicals), Ltd. (collectively, "Warner Chilcott" or "Warner Chilcott Defendants"), and Barr Pharmaceuticals, Inc. ("Barr"). Plaintiff makes the following allegations based upon personal knowledge as to those matters relating to herself and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.  This case involves an illegal horizontal agreement between Warner Chilcott and Barr not to compete in the sale of Ovcon 35 ("Ovcon"), an oral contraceptive, and its AB-rated generic equivalents.

2.  Warner Chilcott is a pharmaceutical company that develops, manufactures, markets, and distributes proprietary women's healthcare and dermatological pharmaceutical products. Pursuant to an agreement with Bristol-Myers Squibb Company, Warner Chilcott is the exclusive marketer of Ovcon in the United States.

3.  Barr is a pharmaceutical company that develops, manufactures, markets, and distributes generic and proprietary pharmaceutical drugs. Barr developed a generic version of Ovcon, which was approved for sale by the United States Food and Drug Administration on or about April 22, 2004.

4.  Barr planned to market its generic drug in competition with Warner Chilcott's branded Ovcon. Prior to the challenged agreement, both Warner Chilcott and Barr predicted that the entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's Ovcon sales, capturing approximately 50% of Ovcon's business in the first year alone.

5.  As alleged more fully herein, Warner Chilcott entered into an agreement with Barr, in which Barr agreed not to market its generic Ovcon for five years in exchange for Warner Chilcott's payment of approximately $20 million.

6.  Defendants' agreement denied Plaintiff and other purchasers of Ovcon the benefits of competition and of less-expensive, generic versions of Ovcon. As a result, Plaintiffs and members of the class defined below have paid illegally inflated prices for Ovcon.

7.  In connection with Counts I and II, this action is brought by Plaintiff on behalf of herself and a class of consumers, like Plaintiff, for monopolization of, and an attempt to monopolize the market for Ovcon and generic Ovcon in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

8.  In connection with Count III, this action is also brought by Plaintiff on behalf of

herself and a class of consumers, like Plaintiff, who purchased Ovcon in Arizona, California, District of Columbia, Florida, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin ("the Indirect Purchaser States").

9.      In connection with Count IV, this action is also brought by plaintiff on behalf of herself and the class seeking restitution and disgorgement of profits for unjust enrichment of defendants under the common law of the fifty states.

## JURISDICTION AND VENUE

10.     This action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and recover treble damages and the costs of suit, including reasonable attorneys' fees, for injuries sustained by Plaintiffs and members of the Class as a result of Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, as alleged herein.

11.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337(a). This Court has supplemental jurisdiction over the state law claims.

12.     Venue is proper in this District under 15 U.S.C. §§ 15, 22, and 26 and under 28 U.S.C, § 1391, because (1) Warner Chilcott and Barr transact business and are found within this District; and (2) a substantial portion of the affected trade and commerce described below has been carried out in this District.

## PARTIES

13.     Plaintiff, Stephanie Cohen, is a resident of Hicksville, New York, and a purchaser, during the class period described below, of Ovcon, a brand-name prescription oral contraceptive..

14.     Defendant Warner Chilcott Holdings Company III, Ltd., is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda. Its principal place of business is located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

3

15.    Defendant Warner Chilcott Corporation is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

16.    Defendant Warner Chilcott (U.S.) Inc. is a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (U.S.) Inc. is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

17     Defendant Warner Chilcott Company, Inc., is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is organized, existing, and doing business under and by virtue of the laws of the Commonwealth of Puerto Rico.

18.    Defendant Warner Chilcott Public Limited Company (formerly Galen Holdings PLC) is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Northern Ireland, with its principal place of business located at Old Belfast Road, Milbrook, Larne, BT40 2SH. County Antrim, United Kingdom.

19.    Defendant Galen (Chemicals), Ltd. is a for-profit enterprise organized, existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen is directly and/or indirectly owned and/or controlled by Warner Chilcott Holdings Company III, Ltd.

20.    Unless otherwise specified Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (U.S.) Inc., Warner Chilcott Company, Inc., Warner Chilcott Public Limited Company, and Galen (Chemicals), Ltd. are referred to herein collectively as "Warner Chilcott" or the "Warner Chilcott Defendants." Warner Chilcott is engaged in the business of developing, manufacturing, marketing, and distributing women's healthcare and dermatological pharmaceutical products, including Ovcon.

21.    Defendant Barr Pharmaceuticals, Inc., is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr is engaged in the business of developing, manufacturing, marketing, and distributing generic

oral contraceptive products.

## BACKGROUND

### The Regulatory System Governing Pharmaceuticals in the United States

22.    The Federal Food, Drug, and Cosmetic Act. 21 U.S.C. § 301 et *seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 271(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs.

23.    Before a manufacturer can market a new drug in the United States, it must obtain approval from the United States Food and Drug Administration ("FDA").

24.    The FDA maintains a list of approved "Reference Listed Drugs" in a publication entitled, "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly known as the "Orange Book."

25.    A manufacturer seeking to market a new drug must file with the FDA a New Drug Application (NPA), demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005). Once the FDA approves the NDA, the manufacturer may market the branded drug, and the branded drug may be listed in the Orange Book. The NDA process is typically time-consuming and expensive.

26.    In 1984, Congress enacted the Hatch-Waxman Act, which accelerated the approval process for generic drugs. Among other things, the Act permits a manufacturer seeking FDA approval for a generic drug to file an Abbreviated New Drug Application ("ANDA"), 21 U.S.C § 355(j) (2005). An ANDA filer may rely on the safety and efficacy data previously provided in the NDA for its branded counterpart. FDA approval of an ANDA takes, on average, about 18 months.

27.    FDA-approved generic drugs are certified by the FDA as bioequivalent to the branded drug, upon whose NDA the generic drug relied upon in its ANDA, and are completely interchangeable with that branded drug. The FDA refers to such drugs as "AB-rated." A generic drug that is "AB-rated" may be listed in the Orange Book and dispensed by a pharmacist in lieu of its branded counterpart.

### The Consumer Benefits of Generic Drugs

28.    Upon their introduction, generic drugs are generally priced 30 to 50 percent (or

more) below the price of their brand-name equivalents. Because generic and branded drugs are fully interchangeable in terms of safety and efficacy, purchasers may choose to purchase the less expensive generic instead of the brand-name drug.

29.    Almost all states (and the District of Columbia) encourage generic competition through laws that allow pharmacists to substitute brand-name drugs with their "AB-rated" generic equivalents, unless a physician directs or the patient requests otherwise.

30.    Many third-party payors of prescription drugs (e.g., health insurance plans, Medicaid programs) have adopted policies to encourage the substitution of available AB-rated generic drugs for their branded counterparts.

31.    Purchasers benefit from the introduction of generic drugs in the form of lower prices. A 1998 Congressional Budget Office Report estimated that in 1994 alone, consumers saved $8 to $10 billion on prescriptions at retail pharmacies by purchasing generic drugs in place of the brand-name equivalents.

### Ovcon

32.    Ovcon is an oral contraceptive, containing norethindrone and ethinyl estradiol as its active ingredients. It has been available to the general public as a prescription pharmaceutical product since approximately 1976 and is not subject to patent protection.

33.    Prior to January 26, 2000, Bristol Myers Squibb Company ("BMS") manufactured, distributed, and marketed Ovcon in the United States.

34.    On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title, and interests in Ovcon products, including an agreement with Bristol Myers Squibb Laboratories Company ("BMSLC"), a wholly-owned subsidiary of BMS, to supply Ovcon products to Warner Chilcott.

35.    Warner Chilcott then began marketing Ovcon manufactured by BMSLC and continues to be the exclusive marketer of Ovcon in the United States at the present time.

36.    Ovcon is highly profitable. It is, and has been, one of Warner Chilcott's highest revenue-producing products. Ovcon's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

### Generic Ovcon

37.    In September 2001, Barr filed an ANDA with the FDA for approval to market an

AB-rated generic version of Ovcon.

38.     In January 2003, Barr publicly announced its intention to launch a generic version of Ovcon by the end of that year.

39.     Barr intended to sell its generic version of Ovcon at a price approximately 30% below the price Warner Chilcott charged for Ovcon.

40.     Warner Chilcott expected Barr to price its generic Ovcon at approximately 30% below the price Warner Chilcott charged for Ovcon.

41.     Barr projected that within its first year of introduction, generic Ovcon would capture approximately 50% of Warner Chilcott's branded Ovcon sales.

42.     Warner Chilcott projected that within its first year of introduction, generic Ovcon would capture at least 50% of Ovcon's new prescriptions. Warner Chilcott calculated that, as a result of these prescriptions lost to Barr's generic Ovcon, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three-year period.

43.     To forestall this competitive threat and to protect its Ovcon revenues, Warner Chilcott embarked on a strategy to convert Ovcon customers to a chewable form of the product (Ovcon Chewable) and to stop selling branded Ovcon before entry of the generic equivalent. Prescriptions for Ovcon Chewable would not be able to be filled with Barr's generic Ovcon because Barr's generic version of non-chewable Ovcon would not be AB-rated to Ovcon Chewable.

44.     The switch to a chewable form of Ovcon would have no real benefits to patients and was sought by Warner Chilcott to preserve its monopoly profits on Ovcon. '

45.     By mid-2003, however, Warner Chilcott's strategy of converting users from non-chewable Ovcon to Ovcon Chewable was in jeopardy. The entry of Barr's generic Ovcon appeared imminent, and the FDA had not yet approved Ovcon Chewable for sale.

46.     In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

## Defendants' Agreement Not to Compete

47.     By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry could occur as early as September of that year.

48.     In August 2003, Warner Chilcott and Barr discussed potential business arrangements under which Barr would refrain from competing with Warner Chilcott's branded Ovcon.

49.    On September 10, 2003, Warner Chilcott and Barr signed a Letter of Intent to enter into a non-compete agreement by which (a)Warner Chilcott would pay Barr $20 million not to compete in the United States with Barr's generic Ovcon product for a term of five years following Barr's final FDA approval for generic Ovcon: and (b) rather than enter the market as a competitor, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

50.    On March 24, 2004, Defendants entered into their non-compete agreement ("Agreement"), as contemplated by their Letter of Intent. Under the Agreement  Warner Chilcott paid Barr $1 million.

51.    Under the Agreement, within 45 days after FDA approval of Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's commitment to refrain from marketing generic Ovcon in the United States, either by itself, or through a license, for five years.

52.    On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic Ovcon.

53.    On April 23, 2004, Barr announced its intent to begin marketing generic Ovcon under the name "Balziva" in the event Warner Chilcott chose not to exercise its option under the Agreement.

54.    On May 6, 2004, Warner Chilcott exercised its option under the Agreement: Warner Chilcott paid Barr $19 million to secure Barr's commitment not to compete with Warner Chilcott by introducing generic Ovcon into the market.

55.    Under the terms of the Agreement, because of Warner Chilcott's payment to Barr, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.

56.    Absent this Agreement, Barr would have begun marketing its generic Ovcon after it received FDA approval of its ANDA on or about April 22, 2004.

57.    Barr has abided by the Agreement not to sell generic Ovcon in the United States. To date, no other company has received FDA approval to market a generic version of Ovcon.

58.    If Barr had introduced its generic product, Plaintiff and members of the Class, defined below, would have substituted Barr's lower-priced generic Ovcon for all or a portion of their purchases of branded Ovcon, and/or would have paid substantially less for

8

branded Ovcon because Warner Chilcott would have provided discounts in response to competition.

59.    As a consequence of Defendants' Agreement, Plaintiff and members of the Class have been deprived of the benefits of free and open competition in their purchases. Purchasers of Ovcon were required to continue purchasing brand name Ovcon when a less expensive product would have otherwise been available.

## CLASS ACTION

60.    Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and the following Class (the "Class"):

> All persons throughout the United States who purchased Ovcon for personal use at any time during the period from April 22, 2004 to the present seeking injunctive relief, disgorgement and restitution under the Sherman Act (Counts I and II);
>
> All persons who purchased, in any of the "Indirect Purchaser States,"( Ovcon for personal use at any time during the period from April 22, 2004 to the present (Count III) hereinafter "Indirect Purchaser Subclass");
>
> All persons who purchased, in any of the fifty states Ovcon for personal use at any time during the period from April 22, 2004 to the present (Count IV);
>
> Excluded from the above classes are all governmental entities and the defendant and its respective subsidiaries and affiliates.

61.    The Class is so numerous that joinder of all members is impracticable. Class members include all persons throughout the United States who purchased Ovcon for personal use at any time during the period from April 22, 2004 to the present. Upon information and belief, the Class includes thousands of members.

62.    There are questions of law and fact common to the Class, including but not limited to, the following:

> a.    whether Defendants combined, agreed, or conspired as alleged herein in restraint of trade;
>
> b.    whether Defendants' agreement, combination, or conspiracy was lawful;
>
> c.    whether Defendants' unlawful conduct as alleged herein has affected interstate commerce;

d.     whether Defendants monopolized and/or attempted to monopolize the market for Ovcon and generic Ovcon;

e.     whether Defendants' unlawful conduct caused Plaintiff and the other members of the Class to pay more for Ovcon than they would have paid absent Defendants' conduct;

f.     whether Defendants' unlawful conduct caused antitrust injury to the business or property of Plaintiff and the members of the Class and, if so, the appropriate relief and/or measure of damages; and

g.     whether Defendants were unjustly enriched.

63.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting individual member, because Defendants have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in Defendants' collusive conduct.

64.    Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members suffered antitrust injury by reason of the same wrongful conduct by the Defendants; they have all paid artificially inflated prices for Ovcon resulting from Warner Chilcott's agreement with Barr to exclude genetic competition.

65.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel experienced in class action and antitrust litigation. Plaintiff has no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class.

66.    A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require. The benefits of proceeding by way of class action, including providing injured persons or entities with a method for obtaining redress on claims that they might not be able to pursue individually, substantially outweigh any difficulties that may arise in the management of a class action.

67.    Plaintiff knows of no difficulty that would be encountered in the management of the claims advanced by the Class that would preclude certification.

## INTERSTATE TRADE AND COMMERCE

68.     During the period relevant to this litigation, Ovcon was sold throughout the United States. Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state lines. Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

69.     In furtherance of their unlawful conduct, Defendants employed the United States mail and interstate and international telephone lines, as well as means of interstate and international travel.

## VIOLATIONS
## COUNT I
## SHERMAN ACT § 1

70.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully stated herein.

71.     By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon out of the market, Defendants have engaged in a continuing contract, combination or conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

72.     The Defendants' contract, combination, and/or conspiracy has included concerted actions and undertakings among Defendants with the purpose and effect of fixing, raising, maintaining, or stabilizing the price of Ovcon.

73.     For the purpose of formulating and effectuating their contract, combination, and/or conspiracy, Defendants performed the following acts:

        a.      entering into an illegal agreement by which Barr agreed not to sell generic Ovcon in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

        b.      depriving direct purchasers of the ability to purchase Ovcon at a competitive price.

74.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, and/or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

75.    Defendants' illegal contract, combination, and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon resulted in Plaintiff and members of the Class paying more than they would have paid for Ovcon absent Defendants' illegal conduct.

76.    Defendants' contract, combination, and/or conspiracy is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

77.    Defendants' unlawful conduct will continue, unless enjoined.

78.    Plaintiff has no adequate remedy at law.

79.    In the alternative, Defendants' contract, combination, and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under the "quick look" and/or rule of reason analyses, because the purpose and effect of Defendants' conduct was to unreasonably restrain competition in the sale of Ovcon and its generic equivalents. To the extent required by law, the relevant product market is Ovcon and its AB-rated generic equivalents, and the relevant geographic market is the United States.

## COUNT II

## SHERMAN ACT § 2

80.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully stated herein.

81.    By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon out of the market, the Defendants have monopolized, attempted to monopolize and/or combined or conspired to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

82.    The Defendants' contract, combination, and/or conspiracy has included concerted actions and undertakings among Defendants with the purpose and effect of fixing, raising, maintaining, or stabilizing the price of Ovcon.

83.    For the purpose of formulating and effectuating their contract, combination, and/or conspiracy, Defendants performed the following acts:

    a.    entering into an illegal agreement by which Barr agreed not to sell generic Ovcon in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

    b.    depriving direct purchasers of the ability to purchase Ovcon at a

competitive price.

84.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, and/or conspiracy were authorized, ordered or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

85.    Defendants' illegal contract, combination and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon resulted in Plaintiff and members of the Class paying more than they would have paid for Ovcon absent Defendants' illegal conduct.

86.    As hereinbefore alleged, Defendants have engaged in the aforesaid unlawful and anticompetitive acts with the specific intent to acquire and maintain that monopoly power.

87.    There is a dangerous probability that defendant would be, and will continue to be, successful in its monopolization and attempt to monopolize the relevant markets.

88.    The unlawful activities alleged herein occurred in interstate commerce.

89.    Plaintiff and the Class were compelled to pay, and did pay, artificially high prices that were manipulated and inflated by reason of the monopolization and attempts to monopolize the market for Ovcon and generic Ovcon.

90.    The prices paid by Plaintiff and the Class resulting from Defendants' monopolization and attempt to monopolize the market for Ovcon and generic Ovcon were substantially greater than the prices that Plaintiff and the Class would have paid absent Defendants" monopolization and attempt to monopolize the aforesaid markets.

91.    Plaintiff and the Class have, as a consequence, sustained substantial losses and damage to their business and property in the form of, *inter alia*, paying prices for their needed medication that were higher than they would have been but for Defendants' monopolization and attempts to monopolize that product market in the United States. The full amount of such damages is presently unknown and will be determined after discovery and upon proof at trial.

92.    Defendants' unlawful conduct will continue, unless enjoined.

93.    Plaintiff has no adequate remedy at law.

94.    Defendants' contract, combination, and/or conspiracy is a *per se* violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

95.    In the alternative, Defendants' contract, combination, and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 2, under the "quick look" and/or rule of reason analyses, because the purpose and effect of Defendants' conduct was to unreasonably restrain competition in the sale of Ovcon and its generic equivalents. To the extent required by law, the relevant product market is Ovcon and its AB-rated generic equivalents, and the relevant geographic market is the United States.

## COUNT III

## MONOPOLIZATION AND ATTEMPT TO MONOPOLIZE IN VIOLATION OF LAW OF INDIRECT PURCHASER STATES

96.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully stated herein.

97.    Defendants' monopolization and attempts to monopolize alleged herein violates the laws of Indirect Purchaser States as follows:

(a)    Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Arizona Revised Statutes §§ 44-1401, *et seq.* with respect to purchases of Ovcon in Arizona by members of the Indirect Purchaser Subclass;

(b)    Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of California Business and Professions Code §§ 16750, *et seq.* with respect to purchases of Ovcon in California by members of the Indirect Purchaser Subclass;

(c)    Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of the District of Columbia Antitrust Act of 1980, D.C. Code §§ 28-4502, *et seq.*, with respect to purchases of Ovcon in the District of Columbia by members of the Indirect Purchaser Subclass;

(d)    Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Chapter 501, Part II, Florida

14

Statutes, with respect to purchases of Ovcon in Florida by members of the Indirect Purchaser Subclass;

   (e) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Kansas Statutes Annotated §§ 50-101, *et seq.*, with respect to purchases of Ovcon in Kansas by members of the Indirect Purchaser Subclass;

   (f) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Louisiana Revised Statutes §§ 51:137, *et seq.*, with respect to purchases of Ovcon in Louisiana by members of the Indirect Purchaser Subclass;

   (g) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Maine Revised Statutes Annotated, 10 M.R.S.A. §§ 1101, *et seq.*, with respect to purchases of Ovcon in Maine by members of the Indirect Purchaser Subclass;

   (h) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Massachusetts Ann. Laws, Ch. 93A, *et seq.*, with respect to purchases of Ovcon in Massachusetts by members of the Indirect Purchaser Subclass;

   (i) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of the Michigan Antitrust Reform Act, MCL §§ 445.771, *et seq.*, with respect to purchases of Ovcon in Michigan by members of the Indirect Purchaser Subclass;

(j)      Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of the Minnesota Antitrust Act of 1961, Minn. Stat. §§ 325D.49, *et seq.*, with respect to purchases of Ovcon in Minnesota by members of the Indirect Purchaser Subclass;

(k)      Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of N.M. Stat. Ann. §§ 57-1-1, *et seq.*, with respect to purchases of Ovcon in New Mexico by members of the Indirect Purchaser Subclass;

(l)      Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of New York General Business Law §§ 340, *et seq.* with respect to purchases of Ovcon in New York by members of the Indirect Purchaser Subclass,

(m)      Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*, with respect to purchases of Ovcon in North Carolina by members of the Indirect Purchaser Subclass;

(n)      Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of North Dakota Cent. Code §§ 51-08.1 0, *et seq.*, with respect to purchases of Ovcon in North Dakota by members of the Indirect Purchaser Subclass;

(o)      Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of South Dakota Codified Laws

Ann. §§ 37-1, *et seq.* with respect to purchases of Ovcon in South Dakota by members of the Indirect Purchaser Subclass;

(p) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Tenn. Code Ann. §§ 47-25-101, *et seq.*, with respect to purchases of Ovcon in Tennessee by members of the Indirect Purchaser Subclass;

(q) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of West Virginia Code, W. Va. Code §§ 47-18-1, *et seq.*, with respect to purchases of Ovcon in West Virginia by members of the Indirect Purchaser Subclass; and

(r) Defendants have intentionally and wrongfully maintained and abused their monopoly power in the relevant market in violation of Wisconsin Stat. §§ 133.01, *et seq.*, with respect to purchases of Ovcon in Wisconsin by members of the Indirect Purchaser Subclass.

98. Plaintiff and the Indirect Purchaser Subclass seek damages and treble damages, as permitted by law, for their injuries caused by these flagrant violations pursuant to these statutes.

## COUNT IV

### UNJUST ENRICHMENT

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully stated herein.

100. As a result of the conduct described above, Defendants have been and will continue to be unjustly enriched at the expense of the Plaintiff and the Class. Specifically, Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and illegal monopoly profits on its sale of Ovcon.

101. Defendant have benefited from their unlawful acts, and it would be inequitable for

17

Defendants to be permitted to retain any of the ill-gotten gain obtained from Plaintiff and the Class, resulting from their overpayments for Ovcon.

102.    Plaintiff and members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful unjust and inequitable conduct. Plaintiff and members of the Class are entitled to make claims on a *pro rata* basis for restitution.

## EFFECTS

103.    Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

        a.    prices for Ovcon have been fixed, raised, maintained, or stabilized at artificially high and non-competitive levels;

        b.    buyers of Ovcon have been unable to purchase lower-priced generic versions of Ovcon;

        c.    buyers of Ovcon have been deprived of the benefits of free and open competition in their purchases; and

        d.    competition in the production and sale of Ovcon has been restrained, suppressed, and eliminated.

## DAMAGES

104.    During the relevant period, Plaintiff and members of the Class purchased substantial amounts of Ovcon from Defendants. As a result of Defendants' illegal conduct, Plaintiff and members of the Class were compelled to pay, and did pay, artificially inflated prices for Ovcon. Those prices were substantially greater than the prices they would have paid absent the illegal agreement, combination, and/or conspiracy alleged herein, because they were deprived of the opportunity to: (1) pay lower prices for the generic versions of the drug; (2) pay lower prices for their Ovcon requirements by switching more of the volume of their purchases from the brand to the generic versions; and (3) pay lower prices for the brand-name drug Ovcon. Members of the Class have sustained substantial losses and damage to their businesses and property in the form of overcharges, among other things. The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request:

1. Certification of this case as a class action;

2. Judgment declaring Defendants' contract, combination, or conspiracy alleged herein to be an unlawful restraint of trade in violation of Sections 1 and 2 of the Sherman Act and the laws of the Indirect Purchaser States;

3. An injunction against Defendants from continuing their illegal contract, combination, or conspiracy;

4. Judgment in favor of Plaintiff and other members of the Class and against Defendants for damages representing three times the overcharge damages sustained by Plaintiff and the other members of the Class;

5. Joint and several judgment be entered against each Defendant in favor of Plaintiff and the other members of the Class;

6. Compensatory damages;

7. Restitution;

8. Disgorgement of profits;

9. An award to Plaintiff and the other members of the Class all costs incurred, and reasonable attorneys' fees;

10. Pre- and post-judgment interest;

11. Such other and further relief as the Court deems just and proper.

LAW OFFICES OF ROBERT W. SINK

John M. Mason, Esquire
DC Bar ID#: 193268
Of Counsel
LAW OFFICES OF ROBERT W. SINK
319 West Front Street
Media, PA 19063

Tel:    610-566-0800
Fax:    610-566-4408