# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHANIE COHEN | : | |
| 42 Page Drive | : | |
| Hicksville, New York  11801, | : | |
| and | : | |
| SUNDA CROONQUIST | : | |
| 10933 Wellworth Avenue – Apt. 13 | : | |
| Los Angeles, CA  90024, | : | |
| individually and on behalf of all others | : | |
| similarly situated, | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| WARNER CHILCOTT PUBLIC LIMITED | : | |
| COMPANY | : | 1:06CV00401 |
| 100 Enterprise Drive, Rockaway, | : | |
| New Jersey 07866-2129; | : | **Judge Colleen Kollar-Kotelly** |
| WARNER CHILCOTT HOLDINGS | : | |
| COMPANY III, LTD. | : | |
| Old Belfast Road, Milbrook, Lame, BT40 2SH | : | |
| County Antrim, United Kingdom; | : | |
| WARNER CHILCOTT CORPORATION | : | |
| 100 Enterprise Drive | : | |
| Rockaway, New Jersey 07866-2129; | : | |
| WARNER CHILCOTT (US) INC. | : | |
| 100 Enterprise Drive, Rockaway | : | |
| New Jersey 07866-2129; | : | |
| WARNER CHILCOTT COMPANY, INC. | : | |
| 100 Enterprise Drive | : | |
| Rockaway, New Jersey 07866-2129; | : | |
| GALEN (CHEMICALS), LTD. | : | |
| Old Belfast Road, Milbrook, Lame, BT40 2SH | : | |
| County Antrim, United Kingdom; | : | |
| and | : | |
| BARR PHARMACEUTICAL, INC. | : | |
| 2 Quaker Road, | : | |
| Pomona, New York 10970-0519, | : | |
| Defendants. | : | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Stephanie Cohen and Sunda Croonquist, by and through their undersigned

attorneys, bring this action on behalf of themselves and all others similarly situated, against

Defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., Galen (Chemicals), Ltd. (collectively, "Warner Chilcott" or "Warner Chilcott Defendants"), and Barr Pharmaceuticals, Inc. ("Barr").  Plaintiffs make the following allegations based upon personal knowledge as to those matters relating to themselves and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This case involves an illegal horizontal agreement between Warner Chilcott and Barr not to compete in the sale of Ovcon 35 ("Ovcon"), an oral contraceptive, and its AB-rated generic equivalents.

2.      Warner Chilcott is a pharmaceutical company that develops, manufactures, markets, and distributes proprietary women's healthcare and dermatological pharmaceutical products. Pursuant to an agreement with Bristol-Myers Squibb Company, Warner Chilcott is the exclusive marketer of Ovcon in the United States.

3.      Barr is a pharmaceutical company that develops, manufactures, markets, and distributes generic and proprietary pharmaceutical drugs. Barr developed a generic version of Ovcon, which was approved for sale by the United States Food and Drug Administration on or about April 22, 2004.

4.      Barr planned to market its generic drug in competition with Warner Chilcott's branded Ovcon. Prior to the challenged agreement, both Warner Chilcott and Barr predicted that the entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's Ovcon sales, capturing approximately 50% of Ovcon's business in the first year alone.

5.      As alleged more fully therein, Warner Chilcott entered into an agreement with Barr, in which Barr agreed not to market its generic Ovcon for five years in exchange for Warner Chilcott's payment of approximately $20 million.

6.      Defendants' agreement denied Plaintiffs and other purchasers of Ovcon the benefits of competition and of less-expensive, generic versions of Ovcon. As a result, Plaintiffs and members of the class defined below have paid illegally inflated prices for Ovcon.

7.      In connection with Counts I and II, this action is brought by Plaintiffs on behalf of themselves and a class of consumers, like Plaintiffs, for monopolization of, and an attempt to monopolize the market for Ovcon and generic Ovcon in violation of Sections 1 and 2 of

the Sherman Act, 15 U.S.C. §§ 1 and 2.

8.        In connection with Count III, this action is also brought by Plaintiffs on behalf of themselves and a class of consumers, like Plaintiffs, who purchased Ovcon in Arizona, California, Florida, Kansas, Maine, Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, and West Virginia ("the Indirect Purchaser States").

9.        In connection with Count IV, this action is also brought by Plaintiffs on behalf of themselves and the class seeking restitution and disgorgement of profits for unjust enrichment of defendants under the common law of the fifty states.

## JURISDICTION AND VENUE

10.       This action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and recover treble damages and the costs of suit, including reasonable attorneys' fees, for injuries sustained by Plaintiffs and members of the Class as a result of Defendants' violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, as alleged herein.

11.       This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337(a). This Court has supplemental jurisdiction over the state law claims.

12.       Venue is proper in this District under 15 U.S.C. §§ 15, 22, and 26 and under 28 U.S.C, § 1391, because (1) Warner Chilcott and Barr transact business and are found within this District; and (2) a substantial portion of the affected trade and commerce described below has been carried out in this District.

## PARTIES

13.       Plaintiff, Stephanie Cohen, is a resident of Hicksville, New York, and a purchaser in New York for personal use, during the class period described below, of Ovcon, a brand-name prescription oral contraceptive.

14.       Plaintiff, Sunda Croonquist, is a resident of Los Angeles, California, and a purchaser in California for personal use, during the class period described below, of Ovcon, a brand-name prescription oral contraceptive.

15.       Defendant Warner Chilcott Holdings Company III, Ltd., is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of

Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda. Its principal place of business is located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

16.    Defendant Warner Chilcott Corporation is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

17.    Defendant Warner Chilcott (U.S.) Inc. is a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (U.S.) Inc. is a for-profit company organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

18.    Defendant Warner Chilcott Company, Inc., is a wholly-owned subsidiary of Warner Chilcott Holdings Company III, Ltd., and is organized, existing, and doing business under and by virtue of the laws of the Commonwealth of Puerto Rico.

19.    Defendant Warner Chilcott Public Limited Company (formerly Galen Holdings PLC) is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Northern Ireland, with its principal place of business located at Old Belfast Road, Milbrook, Lame, BT40 2SH. County Antrim, United Kingdom.

20.    Defendant Galen (Chemicals), Ltd. is a for-profit enterprise organized, existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen is directly and/or indirectly owned and/or controlled by Warner Chilcott Holdings Company III, Ltd.

21.    Unless otherwise specified Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (U.S.) Inc., Warner Chilcott Company, Inc., Warner Chilcott Public Limited Company, and Galen (Chemicals), Ltd. are referred to herein collectively as "Warner Chilcott" or the "Warner Chilcott Defendants." Warner Chilcott is engaged in the business of developing, manufacturing, marketing, and distributing women's healthcare and dermatological pharmaceutical products, including Ovcon.

22.    Defendant Barr Pharmaceuticals, Inc., is a corporation organized, existing, and doing

business under and by virtue of the laws of the State of Delaware, with its principal place of business located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr is engaged in the business of developing, manufacturing, marketing, and distributing generic oral contraceptive products.

## BACKGROUND

### The Regulatory System Governing Pharmaceuticals in the United States

23.     The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et *seq*., as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act"), and the Medicare Prescription Drug, Improvement and Modernization Act of 2003, codified at 21 U.S.C. § 355(j) and 35 U.S.C. § 27l(e) (2005), establishes procedures designed to facilitate competition from lower-priced generic drugs.

24.     Before a manufacturer can market a new drug in the United States, it must obtain approval from the United States Food and Drug Administration ("FDA").

25.     The FDA maintains a list of approved "Reference Listed Drugs" in a publication entitled, "Approved Drug Products with Therapeutic Equivalence Evaluations," which is commonly known as the "Orange Book."

26.     A manufacturer seeking to market a new drug must file with the FDA a New Drug Application (NDA), demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005). Once the FDA approves the NDA, the manufacturer may market the branded drug, and the branded drug may be listed in the Orange Book. The NDA process is typically time-consuming and expensive.

27.     In 1984, Congress enacted the Hatch-Waxman Act, which accelerated the approval process for generic drugs. Among other things, the Act permits a manufacturer seeking FDA approval for a generic drug to file an Abbreviated New Drug Application ("ANDA"). 21 U.S.C § 355(j) (2005). An ANDA filer may rely on the safety and efficacy data previously provided in the NDA for its branded counterpart. FDA approval of an ANDA takes, on average, about 18 months.

28.     FDA-approved generic drugs are certified by the FDA as bioequivalent to the branded drug, upon whose NDA the generic drug relied upon in its ANDA, and are completely interchangeable with that branded drug. The FDA refers to such drugs as "AB-rated." A generic drug that is "AB-rated" may be listed in the Orange Book and dispensed

by a pharmacist in lieu of its branded counterpart.

## The Consumer Benefits of Generic Drugs

29.     Upon their introduction, generic drugs are generally priced 30 to 50 percent (or more) below the price of their brand-name equivalents. Because generic and branded drugs are fully interchangeable in terms of safety and efficacy, purchasers may choose to purchase the less expensive generic instead of the brand-name drug.

30.     Almost all states (and the District of Columbia) encourage generic competition through laws that allow pharmacists to substitute brand-name drugs with their "AB-rated" generic equivalents, unless a physician directs or the patient requests otherwise.

31.     Many third-party payors of prescription drugs (e.g., health insurance plans, Medicaid programs) have adopted policies to encourage the substitution of available AB-rated generic drugs for their branded counterparts.

32.     Purchasers benefit from the introduction of generic drugs in the form of lower prices. A 1998 Congressional Budget Office Report estimated that in 1994 alone, consumers saved $8 to $l0 billion on prescriptions at retail pharmacies by purchasing generic drugs in place of the brand-name equivalents.

## Ovcon

33.     Ovcon is an oral contraceptive, containing norethindrone and ethinyl estradiol as its active ingredients. It has been available to the general public as a prescription pharmaceutical product since approximately 1976 and is not subject to patent protection.

34.     Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS") manufactured, distributed, and marketed Ovcon in the United States.

35.     On January 26, 2000, Warner Chilcott purchased from BMS certain rights, title, and interests in Ovcon products, including an agreement with Bristol Myers Squibb Laboratories Company ("BMSLC"), a wholly-owned subsidiary of BMS, to supply Ovcon products to Warner Chilcott.

36.     Warner Chilcott then began marketing Ovcon manufactured by BMSLC and continues to be the exclusive marketer of Ovcon in the United States at the present time.

37.     Ovcon is highly profitable. It is, and has been, one of Warner Chilcott's highest revenue-producing products. Ovcon's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price. For the twelve months ending September

30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

## Generic Ovcon

38.     In September 2001, Barr filed an ANDA with the FDA for approval to market an AB-rated generic version of Ovcon.

39.     In January 2003, Barr publicly announced its intention to launch a generic version of Ovcon by the end of that year.

40.     Barr intended to sell its generic version of Ovcon at a price approximately 30% below the price Warner Chilcott charged for Ovcon.

41.     Warner Chilcott expected Barr to price its generic Ovcon at approximately 30% below the price Warner Chilcott charged for Ovcon.

42.     Barr projected that within its first year of introduction, generic Ovcon would capture approximately 50% of Warner Chilcott's branded Ovcon sales.

43.     Warner Chilcott projected that within its first year of introduction, generic Ovcon would capture at least 50% of Ovcon's new prescriptions. Warner Chilcott calculated that, as a result of these prescriptions lost to Barr's generic Ovcon, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three-year period.

44.     To forestall this competitive threat and to protect its Ovcon revenues, Warner Chilcott embarked on a strategy to convert Ovcon customers to a chewable form of the product (Ovcon Chewable) and to stop selling branded Ovcon before entry of the generic equivalent. Prescriptions for Ovcon Chewable would not be able to be filled with Barr's generic Ovcon because Barr's generic version of non-chewable Ovcon would not be AB-rated to Ovcon Chewable.

45.     The switch to a chewable form of Ovcon would have no real benefits to patients and was sought by Warner Chilcott to preserve its monopoly profits on Ovcon.

46.     By mid-2003, however, Warner Chilcott's strategy of converting users from non-chewable Ovcon to Ovcon Chewable was in jeopardy. The entry of Barr's generic Ovcon appeared imminent, and the FDA had not yet approved Ovcon Chewable for sale.

47.     In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

## Defendants' Agreement Not to Compete

48.     By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon entry

could occur as early as September of that year.

49.    In August 2003, Warner Chilcott and Barr discussed potential business arrangements under which Barr would refrain from competing with Warner Chilcott's branded Ovcon.

50.    On September 10, 2003, Warner Chilcott and Barr signed a Letter of Intent to enter into a non-compete agreement by which (a)Warner Chilcott would pay Barr $20 million not to compete in the United States with Barr's generic Ovcon product for a term of five years following Barr's final FDA approval for generic Ovcon; and (b) rather than enter the market as a competitor, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

51.    On March 24, 2004, Defendants entered into their non-compete agreement ("Agreement"), as contemplated by their Letter of Intent. Under the Agreement  Warner Chilcott paid Barr $1 million.

52.    Under the Agreement, within 45 days after FDA approval of Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's commitment to refrain from marketing generic Ovcon in the United States, either by itself, or through a license, for five years.

53.    On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic Ovcon.

54.    On April 23, 2004, Barr announced its intent to begin marketing generic Ovcon under the name "Balziva" in the event Warner Chilcott chose not to exercise its option under the Agreement.

55.    On May 6, 2004, Warner Chilcott exercised its option under the Agreement: Warner Chilcott paid Barr $19 million to secure Barr's commitment not to compete with Warner Chilcott by introducing generic Ovcon into the market.

56.    Under the terms of the Agreement, because of Warner Chilcott's payment to Barr, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.

57.    Absent this Agreement, Barr would have begun marketing its generic Ovcon after it received FDA approval of its ANDA on or about April 22, 2004.

58.    Barr has abided by the Agreement not to sell generic Ovcon in the United States. To date, no other company has received FDA approval to market a generic version of Ovcon.

59.     If Barr had introduced its generic product, Plaintiffs and members of the Class, defined below, would have substituted Barr's lower-priced generic Ovcon for all or a portion of their purchases of branded Ovcon, and/or would have paid substantially less for branded Ovcon because Warner Chilcott would have provided discounts in response to competition.

60.     As a consequence of Defendants' Agreement, Plaintiffs and members of the Class have been deprived of the benefits of free and open competition in their purchases. Purchasers of Ovcon were required to continue purchasing brand name Ovcon when a less expensive product would have otherwise been available.

## CLASS ACTION

61.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class (the "Class"):

> All persons throughout the United States who purchased Ovcon for personal use at any time during the period from April 22, 2004 to the present seeking injunctive relief under the Sherman Act (Counts I and II);
>
> All persons who purchased, in any of the "Indirect Purchaser States," Ovcon for personal use at any time during the period from April 22, 2004 to the present (Count III) (hereinafter "Indirect Purchaser Subclass"), excluding any persons who suffered no economic harm as a result of Defendants' conduct;
>
> All persons who purchased, in any of the fifty states, Ovcon for personal use at any time during the period from April 22, 2004 to the present (Count IV);
>
> Excluded from the above classes are all governmental entities and the Defendants and their respective subsidiaries and affiliates.

62.     The Class is so numerous that joinder of all members is impracticable. Class members include all persons throughout the United States who purchased Ovcon for personal use at any time during the period from April 22, 2004 to the present. Upon information and belief, the Class includes thousands of members.

63.     There are questions of law and fact common to the Class, including but not limited to, the following:

> a.     whether Defendants combined, agreed, or conspired as alleged herein in restraint of trade;

b.   whether Defendants' agreement, combination, or conspiracy was lawful;

c.   whether Defendants' unlawful conduct as alleged herein has affected interstate commerce;

d.   whether Defendants monopolized and/or attempted to monopolize the market for Ovcon and generic Ovcon;

e.   whether Defendants' unlawful conduct caused Plaintiffs and the other members of the Class to pay more for Ovcon than they would have paid absent Defendants' conduct;

f.   whether Defendants' unlawful conduct caused antitrust injury to the business or property of Plaintiffs and the members of the Class and, if so, the appropriate relief and/or measure of damages; and

g.   whether Defendants were unjustly enriched.

64.    These and other questions of law and fact are common to the members of the Class and predominate over any questions affecting individual members, because Defendants have acted on grounds generally applicable to the entire Class. Such generally applicable conduct is inherent in Defendants' collusive conduct.

65.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class members suffered antitrust injury by reason of the same wrongful conduct by the Defendants; they have all paid artificially inflated prices for Ovcon resulting from Warner Chilcott's agreement with Barr to exclude generic competition.

66.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel experienced in class action and antitrust litigation. Plaintiffs have no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class

67.    A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require. The benefits of proceeding by way of class action, including providing injured persons or entities with a method for obtaining redress

on claims that they might not be able to pursue individually, substantially outweigh any difficulties that may arise in the management of a class action.

68.    Plaintiffs know of no difficulty that would be encountered in the management of the claims advanced by the Class that would preclude certification.

## INTERSTATE TRADE AND COMMERCE

69.    During the period relevant to this litigation, Ovcon was sold throughout the United States. Ovcon was manufactured and sold in a continuous and uninterrupted flow of commerce across state lines. Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

70.    In furtherance of their unlawful conduct, Defendants employed the United States mail and interstate and international telephone lines, as well as means of interstate and international travel.

## VIOLATIONS
## COUNT I
## SHERMAN ACT § 1 (INJUNCTIVE RELIEF ONLY)

71.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully stated herein.

72.    By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon out of the market, Defendants have engaged in a continuing contract, combination or conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

73.    The Defendants' contract, combination, and/or conspiracy has included concerted actions and undertakings among Defendants with the purpose and effect of fixing, raising, maintaining, or stabilizing the price of Ovcon.

74.    For the purpose of formulating and effectuating their contract, combination, and/or conspiracy, Defendants performed the following acts:

　　　　　　a.    entering into an illegal agreement by which Barr agreed not to sell generic Ovcon in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

　　　　　　b.    depriving consumers of the ability to purchase Ovcon at a competitive

price.

75.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, and/or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

76.     Defendants' illegal contract, combination, and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon resulted in Plaintiffs and members of the Class paying more than they would have paid for Ovcon absent Defendants' illegal conduct.

77.     Defendants' contract, combination, and/or conspiracy is a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

78.     Defendants' unlawful conduct will continue, unless enjoined.

79.     Plaintiffs have no adequate remedy at law.

80.     In the alternative, Defendants' contract, combination, and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under the "quick look" and/or rule of reason analyses, because the purpose and effect of Defendants' conduct was to unreasonably restrain competition in the sale of Ovcon and its generic equivalents. To the extent required by law, the relevant product market is Ovcon and its AB-rated generic equivalents, and the relevant geographic market is the United States.

## COUNT II

## SHERMAN ACT § 2 (INJUNCTIVE RELIEF ONLY)

81.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as if fully stated herein.

82.     By entering into the Agreement, the purpose and effect of which was to restrain trade by keeping generic competition to Ovcon out of the market, the Defendants have monopolized, attempted to monopolize and/or combined or conspired to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

83.     The Defendants' contract, combination, and/or conspiracy has included concerted actions and undertakings among Defendants with the purpose and effect of fixing, raising, maintaining, or stabilizing the price of Ovcon.

84.     For the purpose of formulating and effectuating their contract, combination, and/or

conspiracy, Defendants performed the following acts:

      a.    entering into an illegal agreement by which Barr agreed not to sell generic Ovcon in U.S. commerce in exchange for monetary payment by Warner Chilcott; and

      b.    depriving consumers of the ability to purchase Ovcon at a competitive price.

85.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, and/or conspiracy were authorized, ordered or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

86.    Defendants' illegal contract, combination and/or conspiracy to prevent the introduction into the U.S. marketplace of a generic version of Ovcon resulted in Plaintiffs and members of the Class paying more than they would have paid for Ovcon absent Defendants' illegal conduct.

87.    As hereinbefore alleged, Defendants have engaged in the aforesaid unlawful and anticompetitive acts with the specific intent to acquire and maintain that monopoly power.

88.    There is a dangerous probability that Defendants would be, and will continue to be, successful in their monopolization and attempt to monopolize the relevant markets.

89.    The unlawful activities alleged herein occurred in interstate commerce.

90.    Plaintiffs and the Class were compelled to pay, and did pay, artificially high prices that were manipulated and inflated by reason of the monopolization and attempts to monopolize the market for Ovcon and generic Ovcon.

91.    The prices paid by Plaintiffs and the Class resulting from Defendants' monopolization and attempt to monopolize the market for Ovcon and generic Ovcon were substantially greater than the prices that Plaintiffs and the Class would have paid absent Defendants' monopolization and attempt to monopolize the aforesaid markets.

92.    Plaintiffs and the Class have, as a consequence, sustained substantial losses and damage to their business and property in the form of, *inter alia*, paying prices for their needed medication that were higher than they would have been but for Defendants' monopolization and attempts to monopolize that product market in the United States. The full amount of such damages is presently unknown and will be determined after discovery

and upon proof at trial.

93.    Defendants' unlawful conduct will continue, unless enjoined.

94.    Plaintiffs have no adequate remedy at law.

95.    Defendants' contract, combination, and/or conspiracy is a *per se* violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

96.    In the alternative, Defendants' contract, combination, and/or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 2, under the "quick look" and/or rule of reason analyses, because the purpose and effect of Defendants' conduct was to unreasonably restrain competition in the sale of Ovcon and its generic equivalents. To the extent required by law, the relevant product market is Ovcon and its AB-rated generic equivalents, and the relevant geographic market is the United States.

## COUNT III

### VIOLATION OF THE ANTITRUST AND/OR CONSUMER PROTECTON STATUTES OF THE INDIRECT PURCHASER STATES

97.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully stated herein.

98.    Defendants' conduct is unfair, unlawful, deceptive, unconscionable, an unlawful restraint of trade and/or an unfair method of competition, and is in violation of the antitrust and/or unfair and deceptive trade practices acts of the Indirect Purchaser States as follows:

(a)    Violation of Arizona Revised Statutes §§ 44-1401, *et seq*., with respect to purchases of Ovcon in Arizona by members of the Indirect Purchaser Subclass;

(b)    Violation of California Business and Professions Code §§ 16700, *et seq*., and California Business and Professions Code §§ 17200, *et seq*., with respect to purchases of Ovcon in California by members of the Indirect Purchaser Subclass;

(c)    Violation of Fla. Stat. Ann. §§ 501.201, *et seq.,* with respect to purchases of Ovcon in Florida by members of the Indirect Purchaser Subclass;

(d)    Violation of Kansas Statutes Annotated §§ 50-101, *et seq*., with respect to purchases of Ovcon in Kansas by members of the Indirect Purchaser Subclass;

(e)     Violation of Maine Revised Statutes Annotated, 10 M.R.S.A. §§ 1101, *et seq*., with respect to purchases of Ovcon in Maine by members of the Indirect Purchaser Subclass;

(f)     Violation of the Michigan Antitrust Reform Act, MCL §§ 445.771, *et seq.,* with respect to purchases of Ovcon in Michigan by members of the Indirect Purchaser Subclass;

(g)     Violation of the Minnesota Antitrust Act of 1961, Minn. Stat. §§ 325D.49, *et seq*., with respect to purchases of Ovcon in Minnesota by members of the Indirect Purchaser Subclass;

(h)     Violation of N.M. Stat. Ann. §§ 57-1-1, *et seq*., with respect to purchases of Ovcon in New Mexico by members of the Indirect Purchaser Subclass;

(i)     Violation of New York General Business Law §§ 340, *et seq*., and New York General Business Law §§ 349, *et seq*., with respect to purchases of Ovcon in New York by members of the Indirect Purchaser Subclass,

(j)     Violation of North Carolina Gen. Stat. §§ 75-1, *et seq*., with respect to purchases of Ovcon in North Carolina by members of the Indirect Purchaser Subclass;

(k)     Violation of North Dakota Cent. Code §§ 5l-08.1-0, *et seq*., with respect to purchases of Ovcon in North Dakota by members of the Indirect Purchaser Subclass;

(l)     Violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*., with respect to purchases of Ovcon in South Dakota by members of the Indirect Purchaser Subclass;

(m)     Violation of Tenn. Code Ann. §§ 47-25-101, *et seq*., with respect to purchases of Ovcon in Tennessee by members of the Indirect Purchaser Subclass; and

(n)     Violation of West Virginia Code, W. Va. Code §§ 47-18-1, *et seq*., with respect to purchases of Ovcon in West Virginia by members of the Indirect Purchaser Subclass.

99.     Plaintiffs and the Indirect Purchaser Subclass seek damages and treble damages, as permitted by law, for their injuries caused by these flagrant violations pursuant to these statutes, except for New York where Plaintiffs and the Indirect Purchaser Subclass seek actual damages only.

## COUNT IV

## UNJUST ENRICHMENT

100.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully stated herein.

101.    As a result of the conduct described above, Defendants have been and will continue to be unjustly enriched at the expense of the Plaintiffs and the Class. Specifically, Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and illegal monopoly profits on its sale of Ovcon.

102.    Moreover, Defendant Barr has been and will continue to be unjustly enriched at the expense of the Plaintiffs and the Class by its receipt of any and all payments made by the Warner Chilcott Defendants to Barr to keep generic Ovcon off the market.

103.    Defendants have benefited from their unlawful acts, and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains, including but not limited to, gains obtained from Plaintiffs and the Class resulting from their overpayments for Ovcon and all payments made to Barr by Warner Chilcott.

104.    Plaintiffs and members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust and inequitable conduct. Plaintiffs and members of the Class are entitled to make claims on a *pro rata* basis for restitution.

## EFFECTS

105.    Defendants have undertaken the foregoing unlawful courses of conduct for the

following purposes and with the following effects:

      a.      prices for Ovcon have been fixed, raised, maintained, or stabilized at artificially high and non-competitive levels;

      b.      buyers of Ovcon have been unable to purchase lower-priced generic versions of Ovcon;

      c.      buyers of Ovcon have been deprived of the benefits of free and open competition in their purchases; and

      d.      competition in the production and sale of Ovcon has been restrained, suppressed, and eliminated.

## DAMAGES

106.    During the relevant period, Plaintiffs and members of the Class purchased substantial amounts of Ovcon from Defendants. As a result of Defendants' illegal conduct, Plaintiffs and members of the Class were compelled to pay, and did pay, artificially inflated prices for Ovcon. Those prices were substantially greater than the prices they would have paid absent the illegal agreement, combination, and/or conspiracy alleged herein, because they were deprived of the opportunity to: (1) pay lower prices for the generic versions of the drug; (2) pay lower prices for their Ovcon requirements by switching more of the volume of their purchases from the brand to the generic versions; and (3) pay lower prices for the brand-name drug Ovcon. Members of the Class have sustained substantial losses and damages in the form of overcharges, among other things. The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and members of the Class, respectfully request:

1.    Certification of this case as a class action;

2.    Judgment declaring Defendants' contract, combination, or conspiracy alleged therein to be an unlawful restraint of trade in violation of Sections 1 and 2 of the Sherman

Act and the laws of the Indirect Purchaser States;

     3.      An injunction against Defendants from continuing their illegal contract, combination, or conspiracy;

     4.      Judgment in favor of Plaintiffs and other members of the Class and against Defendants for damages and treble damages, as permitted by law, for their injuries caused by these flagrant violations pursuant to these statutes, except for New York where Plaintiffs and the Indirect Purchaser Subclass seek actual damages only;

     5.      Joint and several judgment be entered against each Defendant in favor of Plaintiffs and the other members of the Class;

     6.      Compensatory damages;

     7.      Restitution;

     8.      Disgorgement of profits;

     9.      An award to Plaintiffs and the other members of the Class all costs incurred and reasonable attorneys' fees;

     10.     Pre- and post-judgment interest; and

     11.     Such other and further relief as the Court deems just and proper.

**LAW OFFICES OF ROBERT W. SINK**


/s/ John M. Mason
John M. Mason, Esquire
DC Bar ID#: 193268
Of Counsel
**LAW OFFICES OF ROBERT W. SINK**
319 West Front Street
Media, PA 19063
Tel:    610-566-0800
Fax:    610-566-4408


Robert W. Sink, Esquire
*Pro Hac Vice*
**LAW OFFICES OF ROBERT W. SINK**
319 West Front Street
Media, PA 19063
Tel:    610-566-0800
Fax:    610-566-4408
***Attorneys for Plaintiffs***