**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STEPHANIE COHEN and SUNDA CROONQUIST, individually and on behalf of all others similarly situated,

               Plaintiffs,

      v.

WARNER CHILCOTT PUBLIC LIMITED CO., WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC.,

               Defendants.

Civil Action No. 1:06CV00401

Judge Colleen Kollar-Kotelly

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED
CLASS ACTION COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

Defendants Warner Chilcott Public Limited Co., Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., and Galen (Chemicals) Ltd. (collectively, "Warner Chilcott") and Barr Pharmaceuticals, Inc. ("Barr") (collectively, "Defendants") respectfully submit this memorandum in support of their joint motion to dismiss in part the above captioned Amended Class Action Complaint filed by Stephanie Cohen and Sunda Croonquist (collectively, "Plaintiffs").

## Table of Contents

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.    The Agreement Between Warner Chilcott And Barr.................................2

    B.    Plaintiffs Cohen And Croonquist.................................................................3

    C.    The Amended Class Action Complaint .......................................................4

ARGUMENT ........................................................................................................................5

    I.    PLAINTIFFS LACK STANDING TO ASSERT THE MAJORITY OF
THEIR CLAIMS .........................................................................................7

    II.    PLAINTIFFS CANNOT CIRCUMVENT *ILLINOIS BRICK'S*
STANDING LIMITS BY ALLEGING A GENERALIZED UNJUST
ENRICHMENT CLAIM ............................................................................10

    A.    *Illinois Brick* Bars Plaintiffs' Common Law Claims................................11

    1.    Plaintiffs Cannot Circumvent *Illinois Brick* By Re-Labeling
Their Damages Claim As A Request For Equitable
Restitution Or Unjust Enrichment. .................................................12

    2.    At A Minimum, Plaintiffs' Unjust Enrichment Claim Is
Barred In States That Adhere To *Illinois Brick* ............................13

    3.    Plaintiffs' Exclusive Remedy Should Lie In The Antitrust
Laws. ................................................................................................14

    III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CONSUMER
PROTECTION LAW OF NEW YORK ..................................................16

CONCLUSION...................................................................................................................18

## Table of Authorities

**Page(s)**

**Cases**

*Allen v. Wright,*
    468 U.S. 737 (1984) ........................................................................................... 7

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ......................................................................................... 10

*ASA Accugrade, Inc. v. Am. Numismatic Ass'n,*
    370 F. Supp. 2d 213 (D.D.C. 2005) ................................................................. 6

*Bledsoe v. Crowley,*
    849 F.2d 639 (D.C. Cir. 1988) ....................................................................... 15

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ........................................................................................... 9

*Bowen v. First Family Fin. Servs., Inc.,*
    233 F.3d 1331 (11th Cir. 2000) ........................................................................ 8

*Brady Campaign v. Ashcroft,*
    339 F. Supp. 2d 68 (D.D.C. 2004) ............................................................... 5, 6

*California Ass'n of Physically Handicapped,*
    *Inc. v FCC,*
    778 F.2d 823 (D.D.C. 1985) ............................................................................. 7

*California v. ARC Am. Corp.,*
    490 U.S. 93 (1989) ........................................................................................... 11

*Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.,*
    295 F. Supp. 2d 430 (D. Del. 2003) ............................................................... 15

*Cephas v. MVM, Inc.,*
    403 F. Supp. 2d 17 (D.D.C. 2005) ................................................................... 6

*Daisy Group, Ltd. v. Newport News, Inc.,*
    999 F. Supp. 548 (S.D.N.Y. 1998) ................................................................ 13

*Easter v. Am. West Fin.,*
    381 F.3d 948 (9th Cir. 2004) ............................................................................ 9

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ......................................................................................... 13

*Fascione v. CNA Ins. Cos.*,
    754 N.E.2d 662 (Mass. 2001) .................................................................. 15

*First Nat'l Bank of Waukesha v. Warren*,
    796 F.2d 999 (7th Cir. 1986) ................................................................... 12

*Free v. Abbott Labs., Inc.*,
    176 F.3d 298 (5th Cir. 1999) ................................................................... 14

* *FTC v. Mylan Labs., Inc.*,
    62 F. Supp. 2d 25 (D.D.C. 1999) ...................................................... passim

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    774 N.E.2d 1190 (N.Y. 2002) .................................................................. 16

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
    185 F. Supp. 2d 9 (D.D.C. 2001) ........................................................... 5, 6

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) ................................................................. 8

* *Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ......................................................................... passim

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002) .................................................................... 9

*In re Microsoft Corp. Antitrust Litig.*,
    241 F. Supp. 2d 563 (D. Md. 2003) ........................................................ 14

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) .................................................... 13, 16

*In re Newbridge Networks Secs. Litig.*,
    926 F. Supp. 1163 (D.D.C. 1996) ........................................................... 17

*In re Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass. 2004) ............................................................. 10

*In re Rezulin Prods. Liab. Litig.*,
    390 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................... 15

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 3d 1365 (S.D. Fla. 2001) .................................................. 9, 13

*Jaffee v. United States*,
    592 F.2d 712 (3d Cir. 1979) ................................................................... 13

*Kloth v. Microsoft Corp.*,
    2006 WL 998087 (4th Cir. Apr. 18, 2006) ..................................................... 12

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2003) ..................................................... 16, 17

*Lewis v. Casey*,
    518 U.S. 343 (1996) ..................................................... 9

*Lubner v. Los Angeles*,
    53 Cal. Rptr. 2d 24 (Cal. Ct. App. 1996) ..................................................... 15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................... 7

*Monroe Beverage Co. v. Stroh Brewery Co.*,
    559 N.W.2d 297 (Mich. 1997) ..................................................... 15

*Nw. Mut. Life Ins. Co. v. Wender*,
    940 F. Supp. 62 (S.D.N.Y. 1996) ..................................................... 17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................... 8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..................................................... 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E.2d 741 (N.Y. 1995) ..................................................... 16

*Qualls v. Rumsfeld*,
    412 F. Supp. 2d 40 (D.D.C. 2006) ..................................................... 17

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ..................................................... 10

*Solomon v. Bell Atl. Corp.*,
    9 A.D.3d 49 (N.Y. App. Div. 2004) ..................................................... 16

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..................................................... 10

*Steves v. Robie*,
    31 A.2d 797 (Me. 1943) ..................................................... 15

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (N.Y. 2000) ..................................................... 16

*Trade 'N Post, L.L.C. v. World Free Duty Ams., Inc.*,
  628 N.W.2d 707 (N.D. 2001) ........................................................................ 15

*USAlliance Fed. Credit Union v. CUMIS Ins. Soc., Inc.*,
  346 F. Supp. 2d 468 (S.D.N.Y. 2004) ............................................................ 17

*Varela v. Investors Ins. Holding Corp.*,
  615 N.E.2d 218 (N.Y. 1993) ......................................................................... 16

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ..................................................................................... 10

*Wyman v. Terry Schulte Chevrolet, Inc.*,
  584 N.W. 2d 103 (S.D. 1998) ....................................................................... 15

## Statutes

N.Y. Gen. Bus. Law §§ 349, *et seq.* ............................................................... 2, 16

## Other Authorities

Dobbs, Law of Remedies § 4.1(1) (1993) ............................................................ 12

Restatement (Second) of Conflict of Laws § 221, cmt. d ...................................... 16

*U.S. Const., art. III, § 2* .................................................................................. 7

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ................................................................................... 6

## INTRODUCTION

Plaintiffs, Stephanie Cohen and Sunda Croonquist, are self-described *indirect* purchasers of Ovcon, a prescription oral contraceptive.  That is, Plaintiffs are individual "consumers" of Ovcon who — like members of the putative classes Plaintiffs purport to represent — purchased the product "for personal use."  Plaintiffs allege that Defendants entered into an anticompetitive agreement relating to Ovcon.  In their Amended Class Action Complaint, Plaintiffs assert claims for injunctive relief under the federal Clayton Act (Counts I and II), for compensatory and treble damages under the antitrust and consumer protection laws of fourteen states (Count III), and "unjust enrichment" under the "common law of the fifty states" (Count IV).  Plaintiffs, however, lack standing or are otherwise barred from pursuing the majority of their claims.

*First*, Plaintiffs have no constitutional standing to assert claims under the laws of states where no named plaintiff resides.  Plaintiffs — residents of New York and California — purport to bring claims on behalf of citizens not only of their home states, but also twelve other states.  Even for jurisdictions that permit indirect purchaser recovery, Plaintiffs have no standing to assert claims under the laws of states where no named Plaintiff resides.  In the absence of a named representative from each jurisdiction, Plaintiffs' attempt to assert antitrust or consumer protection claims under the laws of the myriad other "Indirect Purchaser States" listed in Count III of the complaint must be rejected.

*Second*, Plaintiffs' generalized equitable claim for "restitution" based on a theory of "unjust enrichment" (Count IV) is barred by the direct purchaser rule of *Illinois Brick*.  Quite simply, a plaintiff cannot circumvent the direct purchaser rule of *Illinois Brick* by disguising a claim for damages as one for equitable "restitution."  In any event, *Illinois Brick* precludes both federal antitrust *and* common law claims by indirect purchasers absent express authority for such relief under state law.  Thus, Plaintiffs' unjust enrichment claim is barred absent state law

1

expressly repealing *Illinois Brick* (so-called *Illinois Brick*-repealer statutes). Even there, however, Plaintiffs' exclusive remedy should lie in these *Illinois Brick*-repealer statutes, **not** any generalized common law claim. Count IV of Plaintiffs' Amended Class Action Complaint should thus be dismissed in its entirety.

***Finally***, Plaintiffs fail to state a claim under New York's consumer protection act because they have failed to allege any deceptive or misleading acts by the Defendants in New York — or elsewhere — as that act requires. Therefore, Plaintiffs' claims pursuant to N.Y. Gen. Bus. Law §§ 349, *et seq*., must be dismissed.

Accordingly, Count III of Plaintiffs' Amended Class Action Complaint should be dismissed, with the exception of Plaintiffs' claims brought pursuant to N.Y. Gen. Bus. Law §§ 340, *et seq*., Cal. Bus. & Prof. Code §§ 16700, *et seq.,* and §§ 17200, *et seq*., and Count IV should be dismissed in its entirety. Further, Plaintiffs' claims under Count III brought pursuant to New York's consumer protection statute, N.Y. Gen. Bus. Law §§ 349, *et seq*., should be dismissed.[1]

## **BACKGROUND**

### A.    **The Agreement Between Warner Chilcott And Barr**

Warner Chilcott markets and distributes pharmaceutical products, including Ovcon, a prescription oral contraceptive. (*Cohen* and *Croonquist* Am. Class Action Compl. ("Am. Compl.") ¶ 2.) Warner Chilcott purchased Ovcon from Bristol-Myers Squibb ("BMS") in January 2000, and simultaneously entered into a supply agreement for that product. (*Id.* ¶ 35.) BMS, however, was unable to adequately supply Warner Chilcott with Ovcon. Therefore, in

---

[1]    Unless otherwise noted, all ***emphasis*** is added and internal citations omitted.

August 2003, Warner Chilcott began negotiations with Barr to manufacture and supply Warner Chilcott with Ovcon.[2]  (*Id.* ¶ 49.)

In September 2003, Warner Chilcott and Barr reached a tentative agreement concerning Ovcon, the material terms of which were disclosed in a September 2003 Letter of Intent ("LOI") between the parties.  (*Id.* ¶ 50.)  Under the terms of the LOI, Barr contemplated granting Warner Chilcott an option to acquire a five-year exclusive license to its ANDA for Ovcon in addition to a supply of that product.  (*Id.*)  More than six months later, on March 24, 2004, Warner Chilcott and Barr executed an agreement implementing the terms of the LOI.  (*Id.* ¶ 51.)

In April 2004, Barr received approval from the FDA to produce Ovcon under its ANDA. (*Id.* ¶ 53.) And, on May 6, 2004, Warner Chilcott exercised its option under the parties' agreement.  (*Id.* ¶ 55.)  Currently, Barr produces Ovcon for Warner Chilcott pursuant to the parties' license and supply agreement.  (*See id.* ¶ 50.)  Plaintiffs challenge this agreement as anticompetitive (*id.* ¶¶ 6, 60), and allege that Defendants' license and supply agreement prevented generic competition.[3]  (*Id.* ¶¶ 6, 60.)

### B.    Plaintiffs Cohen And Croonquist

Plaintiffs, Stephanie Cohen and Sunda Croonquist, are self-described indirect purchasers of Ovcon.  (*Id.* ¶¶ 7-8, 13-14, 61.)  That is, Plaintiffs are individual "consumers" of Ovcon who — like members of the putative classes Plaintiffs purport to represent — purchased the product

---

[2]    Manufacturers must file a New Drug Application ("NDA") with the Food and Drug Administration ("FDA") to produce a new drug.  (Am. Compl. ¶ 26.)  Manufacturers may file an Abbreviated New Drug Application ("ANDA") to obtain approval to market generic versions of a "Reference Listed Drug[]," that is, a drug for which an NDA has been approved.  (*Id.* ¶¶ 25-27.)  Barr — a manufacturer of pharmaceutical products (*id.* ¶ 3) — had filed an ANDA to produce Ovcon with the FDA in September 2001.  (*Id.* ¶ 38.)

[3]    Notably, Ovcon has been on the market since approximately 1976 and was off-patent long before it was purchased by Warner Chilcott.  (*Id.* ¶ 33.)  Accordingly, Defendants' conduct could *not* preclude generic entry and a generic version of Ovcon may enter the market at any time.

"for personal use." (*Id.* ¶¶ 13-14, 61.) Importantly, Plaintiffs do not allege that they purchased Ovcon directly from the Defendants, nor do they allege that Warner Chilcott ever marketed or sold Ovcon directly to Plaintiffs or other consumers. Rather, Plaintiffs allege that Ovcon is a "prescription pharmaceutical product," that is, a product that can only be purchased by consumers through an intermediary such as a retail pharmacy or other licensed retailers, not directly from Warner Chilcott. (*Id.* ¶ 33.)

As described in Section C below, Plaintiffs purport to represent three separate classes or sub-classes of "Indirect Purchaser[s]." (*Id.* ¶ 61; *see also id.* ¶¶ 7-9.)

### C. The Amended Class Action Complaint

Plaintiffs filed their Amended Class Action Complaint on April 19, 2006 alleging that the agreement described above gives rise to multiple claims under both state and federal law. Plaintiffs allege that the challenged supply agreement caused Plaintiffs and other consumers to pay overcharges or "artificially high prices" for Ovcon. (*Id.* ¶ 90; *see also id.* ¶¶ 76, 103, 105.)

Plaintiffs' Amended Class Action Complaint asserts four counts seeking recovery of these alleged "overpayments." In Counts I and II, Plaintiffs seek "injunctive relief under the [Clayton] Act," (*id.* ¶ 61), based on alleged violations of Section 1 (Count I) and Section 2 (Count II) of the Sherman Act.[4] (*Id.* ¶¶ 72-76, 82-92.) In Count III, Plaintiffs assert various claims under the antitrust and consumer protection laws of fourteen so-called "Indirect Purchaser States," including N.Y. Gen. Bus. Law §§ 349, *et seq.* (*Id.* ¶ 98.) Finally, in Count IV, Plaintiffs assert an equitable claim of "unjust enrichment" pursuant to "the common law of the fifty states"

---

[4]     In Paragraph 10 of the Amended Complaint Plaintiffs assert that they seek both injunctive relief and "treble damages" under the Sherman Act. Because Plaintiffs elsewhere indicate that they are seeking only injunctive relief pursuant to Sections 1 (Count I) and 2 (Count II) of the Sherman Act, Defendants presume Plaintiffs' statement to the contrary in Paragraph 10 of the Amended Complaint is merely an error in drafting.

(*id*. ¶ 9; *see also id.* ¶¶ 101-04), seeking the "restitution and disgorgement of profits" arising from alleged "overpayments." (*Id.* ¶¶ 9, 103.)

As noted above, Plaintiffs purport to represent three separate classes or sub-classes of "Indirect Purchaser[s]." (*Id.* ¶ 61; *see also id.* ¶¶ 7-9.) ***First***, pursuant to Counts I and II (Sherman Act), Plaintiffs seek injunctive relief only on behalf of a proposed class of "consumers, like Plaintiffs," (*id.* ¶ 7), "who purchased [prescription] Ovcon for personal use" during the alleged class period "seeking injunctive relief" under the Clayton Act. (*Id.* ¶ 61.) ***Second***, pursuant to Count III (state indirect purchaser statutes), Plaintiffs seek compensatory and treble damages on behalf of a "[s]ubclass" of consumers who purchased Ovcon in "any of the [so-called] 'Indirect Purchaser States.'" (*Id.*; s*ee also id.* ¶ 98.) ***Third***, pursuant to Count IV, Plaintiffs seek restitution on behalf of a proposed nationwide class of consumers on a theory of common law unjust enrichment. (*Id.* ¶¶ 9, 61; *see also id.* ¶¶ 101-04.)

As discussed below, Plaintiffs lack standing to assert claims under Count III on behalf of citizens of so-called "Indirect Purchaser" States for which there is no named class representative. Count IV is barred by the direct purchaser rule set forth in *Illinois Brick*. Further, Count III is barred to the extent it purports to state a claim under N.Y. Gen. Bus. Law §§ 349, *et seq.*

## ARGUMENT

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) must be granted where plaintiffs fail to affirmatively prove the subject matter jurisdiction of the court. *See, e.g.*, *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); *Brady Campaign v. Ashcroft*, 339 F. Supp. 2d 68, 72 (D.D.C. 2004). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is

acting within the scope of its jurisdictional authority." *Grand Lodge*, 185 F. Supp. 2d at 13. Thus, the court must determine whether it has jurisdiction under Article III of the Constitution *before* deciding other substantive matters. *See Brady Campaign*, 339 F. Supp. 2d at 73.

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) must be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 43 (D.D.C. 1999), *modified on other grounds*, 99 F. Supp. 2d 1 (D.D.C. 1999). While the Court "should accept the plaintiff's allegations as true and construe those allegations in the light most favorable to the pleader," *ASA Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 214 (D.D.C. 2005), it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Cephas v. MVM, Inc.*, 403 F. Supp. 2d 17, 20 (D.D.C. 2005). To survive a motion to dismiss, a plaintiff must set forth in its complaint "factual allegations that are neither vague nor conclusory and that cover[] all the elements that comprise the theory for relief." *ASA Accugrade*, 370 F. Supp. 2d at 215 (internal quotation marks omitted). Bare legal conclusions will not suffice. *See id.*

Even construing the allegations in the light most favorable to Plaintiffs, Plaintiffs do not — and cannot — allege any set of facts that would entitle them to relief under the majority of the claims asserted. Count III of Plaintiffs' complaint should be dismissed with the exception of Plaintiffs' claims pursuant to N.Y. Gen. Bus. Law §§ 340, *et seq.*, Cal. Bus. & Prof. Code §§ 16700, *et seq.*, and §§ 17200, *et seq.*, because Plaintiffs have no constitutional standing to assert claims under the laws of states where no named plaintiff resides, thereby rending the court without jurisdiction to consider them. Count IV should be dismissed in its entirety because it is

barred by the direct purchaser rule established by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Finally, Plaintiffs in Count III fail to state a claim under New York's consumer protection act because they have failed to allege any deceptive or misleading conduct on the part of the Defendants.

## I.    PLAINTIFFS LACK STANDING TO ASSERT THE MAJORITY OF THEIR CLAIMS

Plaintiffs — residents of New York and California — purport to bring claims on behalf of citizens not only of their home states, but also twelve other states.  Even for jurisdictions that arguably permit indirect purchaser recovery, Plaintiffs have no constitutional standing to assert claims under the laws of states where no named plaintiff resides.  In the absence of a named representative from each jurisdiction, Plaintiffs' attempt to assert antitrust or consumer protection claims under the laws of the myriad other "Indirect Purchaser States" listed in Count III of the complaint must be rejected.[5]

Under Article III of the Constitution, federal courts only have jurisdiction to adjudicate actual "cases" and "controversies."  *U.S. Const., art. III, § 2*; *see also Allen v. Wright*, 468 U.S. 737, 750 (1984).  To demonstrate a case or controversy, Plaintiffs "must allege **personal** injury fairly traceable to the defendant's allegedly unlawful conduct [] likely to be redressed by the requested relief."  *Allen*, 468 U.S. at 751; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *California Ass'n of Physically Handicapped, Inc. v FCC*, 778 F.2d 823, 825 (D.D.C. 1985).  The "injury in fact" must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560.

---

[5]    In addition to their home states, Plaintiffs assert claims on behalf of citizens of Arizona, Florida, Kansas, Maine, Michigan, Minnesota, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, and West Virginia.

Plaintiffs here cannot demonstrate that an actual case or controversy exists under the laws of twelve (12) states, *i.e.*, states where Plaintiffs neither reside nor purchase Ovcon. Plaintiffs' complaint does not contain a single factual allegation of any conduct occurring in any state. At best, Plaintiffs' complaint can be read to allege that Plaintiffs — residents of and consumers in New York and California — suffered injury **only** in their home states. Therefore, although Plaintiffs may be able to demonstrate a case or controversy arising from an alleged violation of the laws of New York and California, Plaintiffs cannot demonstrate that a case or controversy exists under the laws of any **other** state. Rather, if a case or controversy exists at all under the laws of other states, it would arise only from absent class members' purchases of Ovcon — and their alleged injury arising therefrom — in those other states, not the claims or alleged injuries of the named Plaintiffs.

Plaintiffs, however, cannot acquire constitutional standing by virtue of the hypothetical claims of absent plaintiffs. Indeed, it is neither necessary nor appropriate for the Court to consider the claims of absent un-named class members: the named Plaintiffs are the only plaintiffs before the Court. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 n.6 (11th Cir. 2000) (affirming dismissal and not considering potential claims of uncertified class members because "[a] plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue") (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987)) (internal quotation marks omitted).

Put another way, Plaintiffs can pursue only those claims for which they have standing to bring in their own right; Plaintiffs cannot "borrow" the standing of absent class members. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.") (internal quotation marks omitted); *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982) (warning that named plaintiffs cannot merely allege that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (internal quotation marks omitted); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) (observing that "[t]he question of constitutional standing [] is a prerequisite to Rule 23 class certification" and should be addressed by a court in a motion to dismiss and not be deferred until class certification "because it goes to the court's jurisdiction"); *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (noting that a district court should address "the issue of standing before it addresse[s] the issue of class certification").

Against this backdrop, Count III of Plaintiffs' complaint is defective on its face, because it raises claims under the laws of several states where no named plaintiff resides. Plaintiffs' purported standing to seek relief under the laws of Plaintiffs' home states — New York and California — does not give Plaintiffs constitutional standing to assert claims on behalf of residents of different states pursuant to other state laws. As the court explained in *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001), "the named plaintiffs cannot rely on unidentified persons within those [other] states to state a claim for relief. Class allegations that others suffered injuries giving rise to claims 'add . . . nothing to the question of standing.'" *Id.* at 1371 (dismissing claims from states without a designated named

plaintiff) (quoting *Lewis*, 518 U.S. at 357).[6]  Accordingly, Count III should be dismissed to the extent it purports to assert claims under the laws of any state but New York and California, because the court does not have jurisdiction over such claims.

## II.    PLAINTIFFS CANNOT CIRCUMVENT *ILLINOIS BRICK'S* STANDING LIMITS BY ALLEGING A GENERALIZED UNJUST ENRICHMENT CLAIM

Count IV of Plaintiffs' Amended Class Action Complaint pleads a common law claim for disgorgement or "unjust enrichment."  (Am. Compl. ¶¶ 100-04.)  Plaintiffs purport to base this Count on "the common law of the fifty states."  (*Id.* ¶ 9.)  Plaintiffs' "unjust enrichment" claim, however, falls squarely within the *Illinois Brick* ban against recovery by indirect purchasers.

---

[6]   Relying on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), some courts have deferred addressing the issue of a plaintiff's constitutional standing until after class certification on the grounds that the issue of standing was "logically antecedent" to class certification.  *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 269 (D. Mass. 2004).  These decisions, however, are neither persuasive nor controlling and simply misconstrue *Ortiz*. In *Ortiz*, the Supreme Court held that a court could determine class certification before addressing standing where named plaintiffs sought to include in a mandatory settlement class countless individuals who had been exposed to asbestos but had not yet suffered any harm.  527 U.S. at 831; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997).  *Ortiz* thus created a "limited exception" to the general rule that "[s]tanding is an inherent prerequisite to the class certification inquiry."  *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).  Thus, a court may defer addressing the issue of standing in only exceptional circumstances, *i.e.*, where the absent class members lack constitutional standing and class certification issues are dispositive of the whole case, as in *Ortiz* and *Amchem*.  Indeed, the Supreme Court has never adopted a broad exception to jurisdictional requirements.  *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101 (1998) ("[N]one of [the exceptions to the general rule that a court must address issues of standing first] even approaches approval of a doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt.").  Instead, the Supreme Court has warned that, as a general rule, questions of jurisdiction must be considered before the merits "since if there is no jurisdiction there is no authority to sit in judgment of anything else."  *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000).  Because it is the named Plaintiffs here — not the unnamed class members — that lack standing to assert claims under the laws of states to which they have no connection, the limited exception recognized in *Ortiz* does ***not*** apply.  Accordingly, the Court must address the issue of standing prior to any determination of class certification.

### A.    *Illinois Brick* Bars Plaintiffs' Common Law Claims.

The Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), firmly established that ***indirect*** purchasers — such as Plaintiffs here — cannot pursue claims for damages arising from an alleged antitrust violation. *Id.* at 727-28. The Court, however, left states free to reverse this "direct purchaser rule" by expressly providing indirect purchasers a remedy under state antitrust laws (so-called *Illinois Brick*-repealer statutes). *See California v. ARC Am. Corp.*, 490 U.S. 93, 100-01, 109 (1989) (holding federal antitrust laws do not "pre-empt state laws permitting indirect purchaser recovery."). Absent such an express state-law remedy, *Illinois Brick* governs and bars indirect purchasers' claims for damages arising from an alleged antitrust violation. *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 42-43 (D.D.C. 1999), *modified on other grounds*, 99 F. Supp. 2d 1, 5 (D.D.C. 1999); *see also Illinois Brick Co.*, 431 U.S. at 727-28.

Plaintiffs here are, by definition, "Indirect Purchasers." Plaintiffs concede that their Amended Class Action Complaint seeks to recover damages on behalf of individual consumers or "***Indirect*** Purchaser[s]" who — like the Plaintiffs — "purchased Ovcon for personal use" through an intermediary, not directly from Warner Chilcott.[7] (Am. Compl. ¶¶ 7-9, 61.) Indeed, Plaintiffs purport to represent a class of "Indirect Purchaser[s]." (*Id.* ¶ 61.)

As such, Plaintiffs lack standing to sue under the antitrust laws. As next discussed, Plaintiffs cannot effect an end-run around *Illinois Brick* by asserting a claim for "unjust enrichment" rather than damages. (*Id.* ¶ 9.)

---

[7]    Plaintiffs allege that Ovcon is a "prescription pharmaceutical product" — a product that can only be purchased by consumers through pharmacies or other licensed retailers, not directly from Warner Chilcott. (Am. Compl. ¶ 33.)

1.      **Plaintiffs Cannot Circumvent** *Illinois Brick* **By Re-Labeling Their Damages Claim As A Request For Equitable Restitution Or Unjust Enrichment.**

Reduced to its core, Count IV represents nothing more than an attempt to side-step this binding precedent by disguising a damages claim based on an alleged antitrust violation as an equitable request for "restitution."  Plaintiffs, however, cannot simply re-label their damages claim as a request for "restitution" or "unjust enrichment" to avoid the reach of *Illinois Brick*.

Plaintiffs allege that the challenged supply agreement caused them and other consumers to pay "artificially high prices."  (*Id.* ¶¶ 90, 76; *see also id.* ¶ 106 (alleging that Plaintiffs and class members "sustained substantial losses and damage in the form of **overcharges**").)  But a claim to recover "overcharges" as a result of supracompetitive prices is plainly a claim for damages, not restitution.   *See, e.g.*, Dobbs, Law of Remedies § 4.1(1) (1993) ("Restitution measures the remedy by the defendant's gain . . . damages [] measures the remedy by the plaintiff's loss."); *Kloth v. Microsoft Corp.*, 2006 WL 998087, at *8 (4th Cir. Apr. 18, 2006) (holding that indirect purchaser claims for injuries arising from "supra-competitive prices" were "barred by *Illinois Brick*").  Moreover, Plaintiffs' claim for disgorgement is similarly nothing more than an attempt to recover monetary damages barred by *Illinois Brick*.  *See First Nat'l Bank of Waukesha v. Warren*, 796 F.2d 999, 1000 (7th Cir. 1986) (observing that disgorgement or restitution is not a form of equitable relief when "the plaintiff seeks money for its own coffers"); *Mylan*, 62 F. Supp. 2d at 43 (explaining that "restitution and/or disgorgement on behalf of indirect purchasers" is barred by *Illinois Brick*).

Count IV of Plaintiffs' complaint is therefore nothing more than a blatant attempt to circumvent *Illinois Brick's* bar against indirect purchasers' recovery of damages.  Plaintiffs,

however, cannot circumvent *Illinois Brick* by disguising a damages claim as a request for common law restitution or unjust enrichment.[8]

> ### 2. At A Minimum, Plaintiffs' Unjust Enrichment Claim Is Barred In States That Adhere To *Illinois Brick*.

In any event, no matter how Plaintiffs' remedy under Count IV is characterized, *Illinois Brick* bars Plaintiffs' claim. As this Court observed in *Mylan*, *Illinois Brick* precludes both federal antitrust ***and*** common law claims by indirect purchasers "***absent express authority for such relief under state law***." 62 F. Supp. 2d at 43; *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d. 160, 211 (D. Me. 2004) ("Certainly no restitutionary remedy can escape the limitations the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick*."). In *Mylan*, several states sought recovery in restitution on behalf of indirect purchasers. The court examined the law of each of the states at issue, and dismissed those claims for disgorgement on behalf of indirect purchasers where the state antitrust laws did not expressly authorize them. *See* 62 F. Supp. 2d at 44-53. And, even with regard to the states where the disgorgement claims were allowed to proceed, the court required those claims to be pursued under the state antitrust laws, ***not*** under general unjust enrichment principles. *See id.*

Similarly, in *In re Terazosin*, the court rejected indirect purchaser-plaintiffs' unjust enrichment claim under the common law of the fifty states with respect to each state that did not allow indirect purchasers to sue under that state's antitrust laws. *See* 160 F. Supp. 2d at 1379-80. The court explained that:

---

[8]   *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 666 (1974) (plaintiffs cannot bring claims that "may be labeled 'equitable' in nature," if "in practice [they would] resemble a money judgment."); *Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) ("A Plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money."); *see also Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548, 552 (S.D.N.Y. 1998) (cautioning that disgorged profits sought "as restitution for unjust enrichment," are, in fact, "a rough proxy measure of plaintiff's damages").

> *Illinois Brick* expressed concerns that indirect purchasers actions would lead to complex apportionment disputes among injured parties, undermine the efficient enforcement of antitrust laws, or expose defendants to the risk of multiple liability. ***The end payors' unjust enrichment claim raises identical concerns . . . State legislatures and courts that adopted the Illinois Brick rule against indirect purchaser antitrust suits did not intend to allow "an end run around the policies allowing only direct purchasers to recover."***

*Id.* at 1380; *see also In re Microsoft Corp. Antitrust Litig.*, 241 F. Supp. 2d 563, 565 (D. Md. 2003) (barring indirect purchasers from recovering on their unjust enrichment claim for antitrust violations where they could not recover under state antitrust law).

Because *Illinois Brick* precludes both federal antitrust and common law claims by indirect purchasers absent express contrary state authority, Plaintiffs' sole remedy is under those state statutes that have expressly repealed *Illinois Brick* (so-called *Illinois Brick*-repealer statutes). In fact, Count III of the complaint already purports to seek relief under those statutes. (Am. Compl. ¶ 98.) Count IV is therefore facially defective in the many states in which indirect purchaser actions are ***not*** available under relevant state antitrust laws. *See, e.g., Free v. Abbott Labs., Inc.*, 176 F.3d 298, 301, n.7 (5th Cir. 1999) (observing that the majority of states "have decided to follow the *Illinois Brick* road"). Therefore, at a minimum, Plaintiffs' common law claim for "restitution," or "unjust enrichment" (Count IV) must be dismissed to the extent it purports to state claims under the common law of states that adhere to the direct purchaser rule of *Illinois Brick*.

### 3.    Plaintiffs' Exclusive Remedy Should Lie In The Antitrust Laws.

Finally, even with regard to states that have adopted *Illinois Brick*-repealer statutes, or with regard to the states where courts have construed the state antitrust laws to allow indirect purchaser claims, Count IV is improper. As the Court in *Mylan* observed, in those states, Plaintiffs' exclusive remedy should lie in the state antitrust laws, ***not*** in some undefined and

unsupported claim for unjust enrichment. *See* 62 F. Supp. 2d at 44-53. Indeed, several courts have held that when state law provides an express remedy, parties are limited to that remedy. *See*, *e.g.*, *Fascione v. CNA Ins. Cos.*, 754 N.E.2d 662, 666 (Mass. 2001) ("[W]here a statute creates a new right and prescribes the remedy for its enforcement, the remedy prescribed is exclusive.") (internal quotations marks omitted); *Lubner v. Los Angeles*, 53 Cal. Rptr. 2d 24, 28 (Cal. Ct. App. 1996) ("[W]here a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive."); *see also Trade 'N Post, L.L.C. v. World Free Duty Ams.*, *Inc.*, 628 N.W.2d 707, 713 (N.D. 2001) (finding that where a statute prescribes a specific remedy, that statutory remedy is exclusive); *Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998) (same); *Monroe Beverage Co. v. Stroh Brewery Co.*, 559 N.W.2d 297, 298-99 (Mich. 1997) (same); *Steves v. Robie*, 31 A.2d 797, 799 (Me. 1943) (same).

Here, the indirect purchaser-Plaintiffs have pursued, in Count IV, the very remedies provided for in the *Illinois Brick*-repealer statutes. Plaintiffs' Count IV is therefore either disallowed by state law, or duplicative of Count III. Either way, it should be dismissed in its entirety.[9]

---

[9]  Even if Plaintiffs' equitable claim could circumvent *Illinois Brick*, Plaintiffs could not proceed under the common law of all states. Under well-established choice of law principles, the law of New Jersey or New York governs Plaintiffs' unjust enrichment claim. In determining the applicable law, the court must "evaluate the governmental policies underlying the applicable conflicting laws and . . . determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988) (internal quotations omitted) (applying the Restatement (Second) of Conflict of Laws' modified governmental interest analysis). Where, as here, "the claim for restitution does not stem from any relationship between the parties, the place where the benefit or enrichment was received 'will usually be [the contact] of greatest importance with respect to most issues.'" *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 341 (S.D.N.Y. 2005) (applying New Jersey law to unjust enrichment claim and granting summary judgment dismissing such claim where there was no direct connection between plaintiffs and defendants, and New Jersey-based defendant allegedly received enrichment and created allegedly deceptive communications in New Jersey); *see also Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.*, 295 F. Supp. 2d 430, 434-35 (D. Del. 2003) (applying California law where restitution claim did not stem from any

(Continued…)

## III.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE CONSUMER PROTECTION LAW OF NEW YORK

Plaintiffs allege that Defendants' license and supply agreements violate New York's consumer protection statute, N.Y. Gen. Bus. Law §§ 349, *et seq*.  (*See* Am. Compl. ¶ 97(i).) Plaintiffs, however, have not alleged that Defendants' agreements were in any manner deceitful or misleading.  Absent some allegation of deceit, New York's consumer protection act simply does not provide Plaintiffs a basis for relief.

On its face, New York's consumer protection act prohibits "*[d]eceptive* acts or practices in the conduct of any business."  N.Y. Gen. Bus. Law § 349(a).  To state a claim under the Act, a plaintiff must allege "that [a] defendant is engaging in an act or practice that is deceptive or misleading in a material way."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995).[10]

Therefore, "[a]n antitrust violation may violate section 349, but *only if it is deceptive*." *In re New Motor Vehicles*, 350 F. Supp. 2d at 197 (citing *Oswego*, 647 N.E.2d at 744) (dismissing New York consumer protection claim where plaintiffs failed to allege "any practice that could be considered deceptive or likely to mislead a reasonable consumer under section 349"); *Leider v. Ralfe*, 387 F. Supp. 2d 283 (S.D.N.Y. 2003) (stating that any claim asserted

---

relationship between the parties and the alleged benefit was received, and defendant's principal place of business was located, in California); Restatement (Second) of Conflict of Laws § 221, cmt. d.

10    *See also Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002) (requiring an allegation of materially deceptive or misleading acts to state a prima facie case); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000) (requiring plaintiffs to prove that the challenged act was "misleading in a material way" and "likely to mislead a reasonable consumer acting reasonably under the circumstances"); *Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218, 219 (N.Y. 1993) (dismissing claim because defendants' alleged actions, even if improper, "did not mislead plaintiffs in any material way and did not constitute 'deceptive acts' within the meaning of the [consumer protection laws]"); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 52 (N.Y. App. Div. 2004) (noting that "[a] deceptive act or practice is not 'the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer'").

under section 349 "must necessarily incorporate an element of mendacity. . . . Mere anticompetitive conduct alone will not suffice" to state a claim). Clearly then, under New York law, "anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute." *Leider*, 387 F. Supp. 2d at 295.

Plaintiffs here do not allege ***any*** act of deception on the part of the Defendants — in New York or elsewhere. Nor do Plaintiffs allege that the Defendants' license and supply agreements deceived or misled the public. Rather, Plaintiffs attempt to pigeonhole an alleged antitrust violation into a consumer protection claim by baldly asserting that Defendants' conduct was "unfair, unlawful, deceptive, unconscionable, an unlawful restraint of trade and/or an unfair method of competition." (Am. Compl. ¶ 98.)

Plaintiffs thus offer nothing more than a ***bare legal conclusion***. But such bald assertion is insufficient to satisfy either Federal Rule of Civil Procedure 8(a) or the requirements of New York law. *See In re Newbridge Networks Secs. Litig.*, 926 F. Supp. 1163, 1168 (D.D.C. 1996) (in considering a motion to dismiss, the court need not "accept legal conclusions cast in the form of factual allegations"); *see also Qualls v. Rumsfeld*, 412 F. Supp. 2d 40, 42-43 (D.D.C. 2006) (the "Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint"); *Nw. Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62, 65 (S.D.N.Y. 1996) (dismissing defendant's Section 349 counterclaim because the defendants failed to plead "specific allegations of an impact on consumers at large, or that Plaintiff employed deceptive practices"); *see also USAlliance Fed. Credit Union v. CUMIS Ins. Soc., Inc.*, 346 F. Supp. 2d 468, 472 (S.D.N.Y. 2004) ("[C]onclusory allegations … are not sufficient to state a claim under Section 349 . . . .").

Because Plaintiffs' Amended Class Action Complaint is utterly devoid of factual allegations that could constitute deceit, Plaintiffs' consumer protection claim fails to state a claim under New York law and must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Count III of Plaintiffs' Amended Class Action Complaint should be dismissed to the extent it purports to assert claims under the laws of states other than New York and California, and that Count IV should be dismissed in its entirety. Finally, Plaintiffs' claims pursuant to N.Y. Gen. Bus. Law §§ 349, *et seq.* should be dismissed.

Date:   May 5, 2006                          Respectfully submitted,


| /s/ Peter C. Thomas | /s/ Karen N. Walker |
|---|---|
| Peter C. Thomas (D.C. Bar # 495928) | Karen N. Walker (D.C. Bar # 412137) |
| SIMPSON THACHER & BARTLETT LLP | Mark L. Kovner (D.C. Bar #  430431) |
| 555 11th Street, N.W. | Chong S. Park (D.C. Bar # 463050) |
| Suite 725 | KIRKLAND & ELLIS LLP |
| Washington, D.C.  20004 | 655 Fifteenth Street, N.W. |
| (202) 220-7700 | Washington, District of Columbia  20005 |
| (202) 270-7702 (fax) | (202) 879-5000 |
|  | (202) 879-5200 (fax) |

Charles E. Koob, *pro hac vice*
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017-3954
(212) 455-2000
(212) 455-2502 (fax)

*Counsel for Warner Chilcott Holdings*          *Counsel for Barr Pharmaceuticals, Inc.*
*Company III, Ltd., Warner Chilcott*
*Corporation, Warner Chilcott (US) Inc.,*
*Warner Chilcott Company, Inc., and Galen*
*(Chemicals), Ltd.*

18