# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEPHANIE COHEN** | : | |
| and | : | |
| **SUNDA CROONQUIST,** | : | |
| **individually and on behalf of all others** | : | |
| **similarly situated,** | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **WARNER CHILCOTT PUBLIC LIMITED** | : | |
| **COMPANY; WARNER CHILCOTT** | : | **1:06-cv-00401-CKK** |
| **HOLDINGS COMPANY III, LTD.;** | : | |
| **WARNER CHILCOTT CORPORATION;** | : | **Judge Colleen Kollar-Kotelly** |
| **WARNER CHILCOTT (US) INC.;** | : | |
| **WARNER CHILCOTT COMPANY, INC.;** | : | |
| **GALEN (CHEMICALS), LTD.;** | : | |
| and | : | |
| **BARR PHARMACEUTICALS, INC.,** | : | |
| **Defendants.** | : | |

## CONSUMER CLASS PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION…………………………………………………………….……………2

ARGUMENT………………………………………………………………………….…..3

    I.    DEFENDANTS' MOTION TO DISMISS CONFLATES
        THE CONSTITUTIONAL STANDING REQUIREMENTS OF
        ARTICLE III WITH THE CLASS CERTIFICATION
        STANDARDS OF RULE 23……………………………………………….………..3

        A.  DEFENDANTS LARGELY IGNORE  THE U.S. SUPREME
            COURT'S SEMINAL DECISION IN *ORTIZ V. FIBREBOARD*……………3

        B.  SEVERAL COURTS HAVE INTERPRETED SUPREME
            COURT PRECEDENT TO DIRECT CONSIDERATION OF CLASS
            CERTIFICATION ISSUES BEFORE THOSE OF STANDING……………5

                1.  THE RESTRICTIVE APPROACH……………………………………5

                2.  THE NUANCED APPROACH………………………...…………6

                3.  THE NINTH AND ELEVENTH CIRCUITS………………………7

        C.  CLASS CERTIFICATION ISSUES MUST BE ADDRESSED
            PRIOR TO THOSE OF STANDING………………………….…………8

    II.    IN THE EVENT THIS COURT ADDRESSES DEFENDANTS'
        NO-STANDING ARGUMENT, IT MUST BE DENIED AS
        UNSUPPORTED BY ANY REASONED AUTHORITY…………………11

    III.  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' UNJUST
        ENRICHMENT CLAIMS IS MERITLESS………...……………...…………14

    IV.  DEFENDANTS' ARGUMENT THAT PLAINTIFFS FAIL TO
        STATE A CLAIM UNDER NEW YORK'S CONSUMER
        PROTECTION LAW IS BASELESS…………...……………………16

CONCLUSION………………………………………………...………………19

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Pages(s)**

*Acton Constr. Co. v. State,*
 383 N.W.2d 416 (Minn.App.1986)…………………………………..……………....16

*Amchem Products, Inc. v. Windsor,*
 521 U.S. 591 (1997)……………………………………………….……3, 4, 6, 7, 10

*Bowen v. First Family Fin. Servs., Inc.*
 223 F.3d 1331 (11th Cir. 2000)…………………….…………………………12, 13

*Browning v. Clinton,*
 292 F.3d 235 (D.C.Cir.2002)……………………….……………………………16, 17

*Califano v. Yamasaki,*
 442 U.S. 682 (1979)…………………………………………………...………………10

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,*
 295 F.Supp.2d 430 (D.Del.2003)………………………………………...……………14

*Clark v. McDonald's Corp.,*
 213 F.R.D. 198 (D.N.J.2003)………………………………………………………..5, 7

*Conley v. Gibson,*
 355 U.S. 41 (1957)…………………………………………...………………………16

**Cox v. Microsoft Corp.,*
 8 A.D.3d 39 (2004)…………………………………………………...………………18

*Easter v. Am. West Fin.,*
 381 F.3d 948 (9th Cir. 2004)…………………………………………………………8

*Gratz v. Bollinger,*
 539 U.S. 244 (2003)……………………………………………………...……………10

*Griffin v. Dugger,*
 823 F.2d 1476 (11th Cir.1987)…………………………….…………………..8, 13

*Haas v. Pittsburgh National Bank,*
 526 F.2d 1083 (3rd Cir. 1975)………………………………………………...………6

*Holy Land Found. for Relief & Development v. Ashcroft,*
 333 F.3d 156 (D.C.Cir.2003)…………………………………………...…………17

*Illinois Brick Company v. State of Illinois,*
 431 U.S. 720 (1977)……………………………………..…………………2, 14

*In re Buspirone Patent Litig.,*
 185 F.Supp.2d 363 (S.D.N.Y.2002)…………………………….…………..……………5

*In re Cardizem CD Antitrust Litigation,*
    105 F.Supp.2d 618 (E.D.MI. 2000)………………………..………………………15, 16

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    289 F.3d 98 (D.C. Cir. 2002)……………………………………………………..7

*In re K-Dur Antitrust Litigation,*
    338 F.Supp.2d 517 (D.N.J. 2004)…………………………………….…...……14

*In re Pharmaceutical Industry Average Wholesale Price Litig.,*
    263 F.Supp.2d 172 (D.Mass.2003)………………………………………………5

*In re Relafen Antitrust Litigation,*
    221 F.R.D. 260 (D.Mass. 2004)………………………..….….………………*passim*

*In re Terazosin Hydrochloride Antitrust Litigation,*
    160 F.Supp.2d 1365 (S.D.Fla.2001)………………………...…………………7, 13

*Kingman Park Civic Ass'n v. Williams,*
    348 F.3d 1033 (D.C.Cir.2003)……………………........…………………..16, 17

*Krieger v. Fadely,*
    211 F.3d 134 (D.C.Cir.2000)................................................................17

*Lewis v. Casey,*
    518 U.S. 343 (1996)…………………………...…………………………12

*Luck's Music Library, Inc. v. Ashcroft,*
    321 F.Supp.2d 107 (D.D.C. 2004)………………...…………………………16

*Macharia v. United States,*
    334 F.3d 61 (D.C.Cir.2003)…………………………………………………17

*Marcella v. ARP Films, Inc.,*
    778 F.2d 112 (2d Cir.1985)……………………………..………………13

*Miller v. French,*
    530 U.S. 327 (2000)…………………………………..…………………14

*Mowbray v. Waste Management Holdings, Inc.,*
    189 F.R.D. 194 (D.Mass.1999) ………………………………………………5

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) …………………………………………………..12

*Ortiz v. Fibreboard Corporation,*
    527 U.S. 815 (1999) …………………………………….………………*passim*

*Paschall's Inc. v. Dozier,*
    407 S.W.2d 150 (1966) ……………………………….…………………………16

*\*Payton v. County of Kane,*
    308 F.3d at 673 (7th Cir.2002) …………………….………………………6, 8, 9

*Prado-Steiman ex rel. Prado v. Bush,*
    221 F.3d 1266 (11th Cir.2000) ……………………………..…………………8

*\*Rivera v. Wyeth-Ayerst Labs,*
    283 U.S. 315 (5th Cir. 2002) ………………………………..…………4, 6

*Sosna v. Iowa,*
    419 U.S. 393 (1975) ……………………………………………………9

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998). ……………………………………………………3

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) …………………………………………………17

*U.S. v. Kensington Hosp.,*
    760 F.Supp. 1120 (E.D.Pa.1991) …………………………………………14

*United States Parole Comm'n v. Geraghty,*
    445 U.S. 388, 404 (1980) ………………………………..……………………9

*Warren v. District of Columbia,*
    353 F.3d 36 (D.C.Cir.2004) …………………………………………………17

*Waste Management Holdings, Inc. v. Mowbray,*
    208 F.3d 288 (1st Cir.2000) …………………………………..………………5

*Watts v. Watts,*
    137 Wis.2d 506 405 N.W.2d 303 (1987) ……………………..…………………15

*Zurakov v Register.Com, Inc.,*
    304 AD2d 176 (2003) …………………………………………..…………………18

**Statutes**
N.Y. Gen. Bus. Law §§ 349 et seq………………………………………..…………………16

**Other Authorities**

Jean Wegman Burns, *Standing and Mootness in Class Actions: A Search for Consistency,* 22 U.C. Davis L.Rev. 1239, 1240 (1989)…………………………9, 10

Linda S. Mullenix, *Standing,* Nat'l L.J., June 16, 2003,……………………………6

**Rules**
Fed. R. Civ. P. 8(a)………………………………………………………………16

Plaintiffs, Stephanie Cohen and Sunda Croonquist, on behalf of themselves and all others similarly situated, hereby submit their Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' Amended Complaint.  For the reasons set forth below, Defendants' Joint Motion to Dismiss must be denied.

## INTRODUCTION

In their Amended Complaint, Plaintiffs allege that Defendants entered into an illegal and anticompetitive agreement to prevent generic Ovcon from reaching the market.  Specifically, Plaintiffs allege that Defendants violated the Sherman Act § § 1 and 2 (injunctive relief only), and make claims for violation of the antitrust and/or consumer protection statutes of the indirect purchaser states and for unjust enrichment.

Defendants moved to dismiss Plaintiffs' Amended Complaint arguing that Plaintiffs (1) lack standing to assert claims in indirect purchaser states where they do not reside and did not purchase Ovcon, (2) are barred from asserting their unjust enrichment claims pursuant to *Illinois Brick*, and (3) fail to state a claim under New York's consumer protection law.

As demonstrated below, the issue of standing cannot be considered prior to class certification in this case.  Moreover, *Illinois Brick* does not bar Plaintiffs' unjust enrichment claims, and Plaintiffs' Amended Complaint clearly states a cause of action under New York's consumer protection statute.  Accordingly, for the reasons discussed below, Defendants' Joint Motion to Dismiss must be denied.

## ARGUMENT

I.    **DEFENDANTS' MOTION TO DISMISS CONFLATES THE CONSTITUTIONAL STANDING REQUIREMENTS OF ARTICLE III WITH THE CLASS CERTIFICATION STANDARDS OF RULE 23**

Defendants' argument that Plaintiffs' claims under the laws of twelve exemplar states must be dismissed because "Plaintiffs have no constitutional standing to assert claims under the laws of states where no named [P]laintiff resides"[1] is without merit.  Defendants' Motion to Dismiss conflates the constitutional standing requirements of Article III with the class certification standards of Federal Rule of Civil Procedure 23.

A.    **DEFENDANTS LARGELY IGNORE  THE U.S. SUPREME COURT'S SEMINAL DECISION IN *ORTIZ V. FIBREBOARD***

As a threshold matter, Defendants ask this Court to decide the issue of standing prior to the issue of class certification.  (Defs.' Motion to Dismiss, p. 10, fn. 6).  Conspicuously absent from Defendants' argument (with the exception of a brief and misguided analysis buried in a footnote) is any meaningful discussion of the U.S. Supreme Court's decision in *Ortiz v. Fibreboard Corporation*, 527 U.S. 815, 119 S.Ct. 2295 (1999).  This is troubling, since *Ortiz* is the seminal decision regarding the proposition that class certification issues are "logically antecedent" to Article III concerns.  In *Ortiz,* the Supreme Court held:

> Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). But the class certification issues are, as they were in *Amchem,* "logically antecedent" to Article III concerns, 521 U.S., at 612, 117 S.Ct. 2231, and themselves pertain to statutory standing, which may properly be treated before Article III standing, see *Steel Co., supra,* at 92, 118 S.Ct. 1003.  Thus the

---

[1] Defendants' Joint Motion to Dismiss, p. 7

issue about Rule 23 certification should be treated first, "mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints…." *Amchem, supra,* at 612-613, 117 S.Ct. 2231.

*Id.* at 831.

Defendants' apparent motive in burying the *Ortiz* opinion in a footnote is obvious:  *Ortiz* plainly states that class certification issues are "logically antecedent" to Article III concerns – the exact opposite conclusion from the one Defendants ask this Court to draw.  Moreover, Defendants attempt to mislead this Court by arguing in footnote 6 that *Ortiz* created a "limited exception."  This is only *one* view, which was adopted by the Fifth Circuit in *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315 (5th Cir. 2002).[2]  Indeed, several district and circuit courts have adopted the plain precedent of *Ortiz* that directs consideration of class certification issues before those of standing.  See Section B(1), *infra.*   In addition, Defendants' disingenuous arguments that decisions from the Ninth and Eleventh Circuits must be followed by this Court, while simultaneously arguing that decisions from courts in other districts or circuits are "neither persuasive nor controlling," further muddy the waters.  Against this backdrop, Plaintiffs will map out the positions of the various circuit and district courts with respect to *Ortiz.*

---

[2]     Even under the approach in *Rivera, supra,* this Court must defer consideration of Defendants' standing challenge until after certification of the end payor class.  See Section B(2), *infra* and *In re Relafen Antitrust Litigation,* 221 F.R.D. 260 (D.Mass. 2004).

**B. SEVERAL COURTS HAVE INTERPRETED SUPREME COURT PRECEDENT TO DIRECT CONSIDERATION OF CLASS CERTIFICATION ISSUES BEFORE THOSE OF STANDING**

**1. THE RESTRICTIVE APPROACH**

Several courts have interpreted the Supreme Court precedent in *Ortiz* to direct consideration of class certification issues before those of standing.  Indeed, in *Mowbray v. Waste Management Holdings, Inc.,* 189 F.R.D. 194 (D.Mass.1999), the district court concluded that a single named plaintiff with a contract claim arising under the law of Illinois could adequately represent class members with similar claims arising under the laws of California, Georgia, Pennsylvania, Maryland, Michigan, New York, Texas, Virginia, and Wisconsin.  *Mowbray,* 189 F.R.D. at 195, 199, 202.  The First Circuit subsequently affirmed the certification order.  *See Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d 288, 299 (1st Cir.2000).

In *In re Buspirone Patent Litig.,* 185 F.Supp.2d 363, 377 (S.D.N.Y.2002), a New York district court declined to consider a standing challenge on the defendant's motion to dismiss prior to class certification, based on *Ortiz.*  The defendant, Bristol-Myers Squibb Co., argued that certain "End-Payor" plaintiffs lacked standing to assert state law antitrust and unfair competition claims against the defendants on behalf of Buspar purchasers nationwide, because the plaintiffs only alleged to have purchased Buspar in 15 states.  The court nonetheless declined to consider the standing challenge prior to class certification.  *Id.  See Clark v. McDonald's Corp.,* 213 F.R.D. 198, 204-05 (D.N.J.2003); *In re Pharmaceutical Industry Average Wholesale Price Litig.,* 263 F.Supp.2d 172,

193-94 (D.Mass.2003)(noting that the Supreme Court's decision in *Ortiz* created an exception to ordinary jurisdictional principles for circumstances in which class certification is "logically antecedent to Article III concerns" and therefore "should be treated first." *Ortiz,* 527 U.S. at 831, 119 S.Ct. 2295 (quoting *Amchem,* 521 U.S. at 612, 117 S.Ct. 2231) (internal quotation marks omitted)).[3]

### 2. THE NUANCED APPROACH

The Fifth and Seventh Circuits have interpreted *Ortiz* to favor a "nuanced approach" for consideration of standing challenges.[4]  In *Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315 (5th Cir.2002), the Fifth Circuit described the *Ortiz* exception as applicable where class certification creates the jurisdictional issue. *Id.* at 319 n. 6.  Where, however, "the standing question would exist whether [the class representative] filed her claim alone or as part of a class," the court "must decide standing first." *Id.* at 319 & n. 6; *accord Payton v. County of Kane,* 308 F.3d 673, 680, 682 (7th Cir.2002) (noting that where "putative representatives were personally injured," *Ortiz* directs courts to "consider issues of class certification prior to issues of standing").

Here, under the nuanced approach of the Fifth and Seventh Circuits, this Court would defer consideration of Defendants' standing challenge until after certification of the end payor class.  See *In re Relafen Antitrust Litigation,* 221 F.R.D. 260 (D.Mass. 2004).  Certification is in this case is "logically antecedent"

---

[3]    *See also Haas v. Pittsburgh National Bank,* 526 F.2d 1083, 1088 (3rd Cir. 1975) (Third Circuit held that "[e]ven though Haas herself does not have standing to challenge the service charge rate imposed on commercial transactions by Mellon Bank, summary judgment is inappropriate if Haas may represent a class of plaintiffs who do have standing.")

[4]    *See* Linda S. Mullenix, *Standing,* Nat'l L.J., June 16, 2003, at 43, col. 1

because Defendants' challenge would not arise but for the proposed certification. *Amchem,* 521 U.S. at 612, 117 S.Ct. 2231.  Specifically, Defendants did not challenge the representatives' standing to assert personal claims under the laws of states in which they resided or purchased medication.  *See* Defs.' Joint Motion to Dismiss at 10, 18.  Rather, Defendants argued that "Plaintiffs here cannot demonstrate that an actual case or controversy exists under the laws of twelve (12) states, *i.e.*, states where Plaintiffs neither reside nor purchase (*sic*) Ovcon." *Id.* at 8.   Accordingly, application of the *Ortiz* exception would defer consideration of Defendants' standing challenge and allow this Court to address the remaining issues of certification first.  *See Rivera,* 283 F.3d at 319 n. 6 (explaining that the *Ortiz* exception applies only when class certification "create[s] the jurisdictional issue"); *Clark,* 213 F.R.D. at 204-05 (deferring consideration of the argument that the plaintiff lacked standing to assert claims on behalf of class members regarding restaurants or states that he had not visited).  See also *In re Relafen Antitrust Litigation,* 221 F.R.D. 260 (D.Mass. 2004).[5]

### 3.  THE NINTH AND ELEVENTH CIRCUITS

In support of their standing challenge, Defendants cited *In re Terazosin Hydrochloride Antitrust Litigation,* 160 F.Supp.2d 1365 (S.D.Fla.2001), an antitrust action involving allegations of delayed generic entry.  There, the United States District Court for the Southern District of Florida allowed the defendants'

---

[5]     Defendants' reliance upon *In re Lorazepam & Clorazepate Antitrust Litig.,* 289 F.3d 98 (D.C. Cir. 2002) for the proposition that standing is a prerequisite to class certification is unpersuasive, as the court did not directly address this issue and this statement was dicta that is not binding upon this Court.  Indeed, the court in *Lorazepam,* which looked to other circuits for guidance, did not have the benefit of more recent cases such as *Payton, supra* and *In re Relafen, supra,* which clearly reject Defendants' minority view.

motion to dismiss claims arising under the laws of states in which no named plaintiffs resided or purchased the branded drug. *Id.* at 1372. In doing so, the court explained that under Eleventh Circuit precedent, "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id.* (quoting *Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir.1987)); *accord Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir.2000).[6] Defendants also cite to *Easter v. Am. West Fin.*, 381 F.3d 948 (9th Cir. 2004), which, as a lone Circuit, holds that *Ortiz* only applies in the context of a global settlement class. *Id* at 963. The approach of the Eleventh Circuit was specifically rejected by the district court in *In re Relafen Antitrust Litigation,* 221 F.R.D. 260 (D.Mass. 2004). Moreover, the rationale of the Ninth Circuit does not appear to have been adopted by any other court. In sum, the approaches of the Ninth and Eleventh Circuits are at odds not only amongst themselves, but with the approaches set forth by the First, Third, Fifth and Seventh Circuits, as well as the District Courts for the District of Massachusetts, New Jersey and the Southern District of New York.

### C. CLASS CERTIFICATION ISSUES MUST BE ADDRESSED PRIOR TO THOSE OF STANDING

Based on the foregoing, this Court should follow the precedent in *Ortiz* to direct consideration of class certification issues before those of standing, as numerous other district and circuit courts have done. However, should this Court face the choice between the conflicting approaches of the Eleventh and Ninth Circuits on the one hand, and the Fifth and Seventh Circuits on the other, this

---

[6] In Section II, *infra*, we show that the Florida federal court's reliance on *Griffin v. Dugger, supra,* was entirely misplaced.

Court should adopt the latter, since it is more consistent with the policies of *Ortiz,* other Supreme Court decisions, and the class action rule.  In *Payton,* the Seventh Circuit explained that *Ortiz* "rest[s] on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs." *Payton,* 308 F.3d at 680.

   *Ortiz* thus builds upon the reasoning reflected in certain, but not all, of the Supreme Court's prior determinations of standing in class actions.  *See* Jean Wegman Burns, *Standing and Mootness in Class Actions: A Search for Consistency,* 22 U.C. Davis L.Rev. 1239, 1240 (1989).  In *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), for example, the Supreme Court established that an Article III controversy "may exist ... between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Sosna,* 419 U.S. at 402, 95 S.Ct. 553; *accord United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 404, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).  The flexible inquiry described in *Sosna* and *Geraghty* acknowledges that in the "nontraditional" context of class actions, the purpose of the standing requirement--"limiting judicial power to disputes capable of judicial resolution" (that is, disputes involving "sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions")--may be served even absent a personal stake held by the named plaintiff.  *Geraghty,* 445 U.S. at 396, 403, 100 S.Ct. 1202.  The assurance of vigorous advocacy may be provided instead by

the collective interest of the class, advanced by the named representative serving as a sort of "private attorney general." *See id.* at 403, 100 S.Ct. 1202. "The focus of the standing inquiry is therefore appropriately directed toward the class rather than its representative." *In re Relafen Antitrust Litigation,* 221 F.R.D. 260 (D.Mass. 2004).

This flexible, functional standing inquiry also proves consistent with the policies served by class action procedure. *See* Burns, *supra,* at 1287- 88 (urging the Supreme Court "to acknowledge that the peculiar class-action beast requires a different, and more flexible, standing-and-mootness analysis"). The approach suggested by Defendants under the Eleventh Circuit's interpretation would require class counsel to identify representatives from each state involved in a multistate class action, would render class actions considerably more cumbersome to initiate, and in turn, less effective in overcoming a lack of incentives to prosecute individual rights and in "achiev[ing] economies of time, effort, and expense." *Amchem,* 521 U.S. at 615-17, 117 S.Ct. 2231 (quoting Fed.R.Civ.P. 23 Advisory Committee's Note); *see also Gratz v. Bollinger,* 539 U.S. 244, 268 & n. 17, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003) (observing that the challenged class action, which involved a named representative with an arguably different claim but the "same set of concerns" as the members of the class, "save[d] the resources of both the courts and the parties") (alteration in original) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)); *Payton,* 308 F.3d at 681 (permitting named representatives to represent plaintiffs from other counties in part because "the class action device

10

may be superior to 19, or 102, different cases in each Illinois county challenging the effects of the same state statute").  Accordingly, this Court must address the issue of class certification prior to any issue of standing.

## II. IN THE EVENT THIS COURT ADDRESSES DEFENDANTS' NO-STANDING ARGUMENT, IT MUST BE DENIED AS UNSUPPORTED BY ANY REASONED AUTHORITY

Defendants assert that the named Plaintiffs lack Article III standing to seek recovery of antitrust damages based on Defendants' violations of indirect purchaser state statutes in states other than California and New York, where named Plaintiffs, respectively, reside and purchased Ovcon. Had Plaintiffs filed an action only on their own behalf seeking to recover under a state law that did not apply to their purchases, of course they would lack standing to raise and litigate Defendants' illegal conduct in that state.  But the action before the Court in Count III is one in which Plaintiffs sue on behalf of themselves, as to their individual New York and California state antitrust claims, *and* as proposed representatives for a class of Ovcon consumer purchasers similarly situated, *i.e.*, with substantially identical state antitrust claims as residents of 12 other states. To that end, Plaintiffs' amended complaint alleges that all of the class action prerequisites under Rule 23, FRCP, are satisfied, including typicality: their claims and those of proposed class members are identical in that all arise from defendants' illegal conduct in the named states producing the same injury in the form of artificially inflated Ovcon consumer prices. (Am. Compl. ¶65, *et seq.*)

Defendants base their Article III challenge on the proposition that since the named Plaintiffs suffered no injury outside of New York and California, claims of

injury in the other Indirect Purchaser States must be dismissed absent *additional class representatives* joining this action as named plaintiffs, one from each of the other states.

Defendants concede that the named Plaintiffs, in Count III, have established the requisite case or controversy in this Court for Article III purposes, namely, their respective claims as indirect purchasers under California and New York laws. Defs.' Motion to Dismiss, p. 8. They do not dispute, nor could they at this motion stage, that Plaintiffs' claims are in substance identical to those of the proposed class members in the other 12 states. Defendants' claim that Article III requires 12 more plaintiffs is, not surprisingly, bereft of any supporting Article III standing case from the Supreme Court or from this Circuit or the other Circuits.

In *O'Shea v. Littleton*, 414 U.S. 488 (1974), which Defendants cite, the Article III defect was the absence of *any* case or controversy with the named plaintiffs: "None of the named plaintiffs is identified as himself having suffered any injury in the manner specified." *Id.* at 495.  In *Lewis v. Casey,* 518 U.S. 343 (1996), the setting was the scope of injunctive relief afforded prisoners with respect to their access to legal materials in aide of seeking post-conviction relief. The Court cited and applied the established rule that a plaintiff, as class representative, must have suffered the kind of injury he seeks to remedy by classwide injunction, *e.g,*, an English-speaking inmate/class representative, wrongfully denied access to the prison law library, cannot also litigate on behalf of non-English-speaking inmates the issue of their asserted denial of access to a translator.  *Id.*  In *Bowen v. First Family Fin. Servs., Inc.* 223 F.3d 1331 (11th Cir.

2000), the Eleventh Circuit addressed the issue whether the named plaintiffs consumer/borrowers, who were found to have Article III standing to litigate the issue whether the lender violated federal law by requiring the borrowers to agree to an arbitration clause, also had standing to seek injunctive relief blocking lender's enforcement of the arbitration clause. The circuit court, noting that the lender had not even threatened to invoke the clause, found there was not an Article III case or controversy on that issue, and thus the borrowers had no standing to seek injunctive relief either individually or as class representatives.[7] None of the foregoing cases supports Defendants' startling "class representative of every state" Article III standing requirement.[8] Accordingly, their motion must be denied.

---

[7] *Bowen*, at 1339 n.6, cited and quoted from an earlier Eleventh Circuit opinion, on which defendants also rely, *Griffin v. Dugger,* 823 F.2d 1476 (11th Cir. 1987). *Griffin* ruled that the then-prevailing practice of issuing "across-the-board" injunctive relief in Title VII race discrimination class actions must be discarded in favor of a more exacting requirement that at least one class representative claim injury from the particular kind of discrimination for which classwide injunctive relief was sought, *e.g.,* alleged discrimination in defendant's hiring practices can be litigated only by a class plaintiff who alleges he or she was not hired because of race; a class plaintiff injured by discriminatory promotion practices, who necessarily does not personally meet the standing requirements of a discriminatory failure to hire, lacks standing to represent a class of injured applicants. *See id.* at 1483-84, 1486-87, 1490-91. It is clear that nothing in *Bowen* or *Griffin* avails Defendants' position.

[8] Defendants also rely on a single Florida district court opinion, *In re Terazosin, supra,* which held that there must be a class representative for each indirect purchaser state. That court, however, mistakenly cited *Griffin* as controlling precedent on that issue and thus ruled, incorrectly, that the named plaintiffs lacked standing with respect to claims arising under states of which they were not resident. The district court's reliance on *Griffin* was obviously misplaced: *Griffin* addressed only the problem of *different kinds* of injury within an employer's racially discriminatory employment practices, just as the Supreme Court in *Lewis* addressed *different kinds* of injury in a prison system's alleged failure to afford access to the legal system as to post-conviction remedies. The court in *In re Terazosin,* and Defendants here, failed to apprehend that the *same kind* of injury, for standing purposes, is alleged in Count III to have occurred to the named plaintiffs and to all unnamed consumers/residents of the 12 indirect purchaser states. Thus, *every proposed member* of the class will have suffered a single injury under Count III that is identical in substance to the injury sustained by the named plaintiffs.

### III.    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' UNJUST ENRICHMENT CLAIMS IS MERITLESS

Defendants' motion to dismiss Plaintiffs' unjust enrichment claims is equally meritless.  Specifically, Defendants' argument that *Illinois Brick Company v. State of Illinois,* 431 U.S. 720, 97 S.Ct. 2061 (1977) bars Plaintiffs' claims for unjust enrichment ignores case law directly to the contrary.  First, *nowhere* in *Illinois Brick*, which addressed issues concerning private antitrust enforcement under the Clayton Act, is there *anything* suggesting that common law equity claims should be displaced.  *See also Miller v. French*, 530 U.S. 327, 340 (2000) (Court should not construe a statute to displace courts' traditional equitable authority absent the "clearest command" or an "inescapable inference" to the contrary).  Indeed, in *In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517 (D.N.J. 2004), the court rejected the defendants' contention that equitable remedies such as unjust enrichment could not be granted where an adequate remedy at law exists.  *Id.* at 544.  Specifically, the court held as follows:

> Plaintiffs, however, are clearly permitted to plead alternative theories of recovery. Consequently, it would be premature at this stage of the proceedings to dismiss the Indirect Purchasers' and the Commonwealth's unjust enrichment claims on this basis. *See U.S. v. Kensington Hosp.,* 760 F.Supp. 1120, 1135 (E.D.Pa.1991) (finding dismissal of unjust enrichment claim premature where federal rules allow pleading alternative theories of recovery) (citing *Marcella v. ARP Films, Inc.,* 778 F.2d 112, 117 (2d Cir.1985)); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,* 295 F.Supp.2d 430, 437 (D.Del.2003) (finding that even if unjust enrichment claim was preempted by plaintiff's alleged federal causes of action, claim would stand as an alternative basis of recovery).
>
> *Id.*

Moreover, the instant case is on all fours with *In re Cardizem CD Antitrust Litigation,* 105 F.Supp.2d 618 (E.D.MI. 2000), a similar suit against the manufacturer of a brand name drug and the manufacturer of a cheaper generic version challenging an agreement under which the manufacturer of the generic version agreed to delay introduction of its product in return for cash payments from the brand name manufacturer. Plaintiffs' claims included, *inter alia*, violations under the Sherman Act, violations of state antitrust and consumer protection statutes, and unjust enrichment. Those defendants argued that plaintiffs could not state common law unjust enrichment claims because, to the extent they succeeded on their statutory claims, they would have an adequate remedy at law. The court, however, concluded that the state law plaintiffs' common law claims of unjust enrichment must survive the defendants' motions to dismiss. Specifically, the court noted that defendants' argument "confuses [p]laintiffs' right to recover an equitable remedy under a common law claim based upon principles of unjust enrichment with its right to recover a remedy at law for an alleged violation of a state's antitrust laws." *Id.* at 669. In support of its conclusion, the court held:

> . . . Defendants . . . fail[] to support their position that the success of Plaintiffs' common law unjust enrichment claims necessarily depends upon the success of their statutory claims. To the contrary, the courts often award equitable remedies under common law claims for unjust enrichment in circumstances where claims based upon contract or other state law violations prove unsuccessful. *See e.g., Watts v. Watts,* 137 Wis.2d 506, 530, 405 N.W.2d 303, 313 (1987) ("[A] claim of unjust enrichment does not arise out of an agreement entered into by the parties. Rather, an action for recovery based upon unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust"). *Accord*

> *Acton Constr. Co. v. State,* 383 N.W.2d 416, 417 (Minn.App.1986); *Paschall's Inc. v. Dozier,* 219 Tenn. 45, 57-58, 407 S.W.2d 150, 155-56 (1966).

> *Id.*

Accordingly, for the reasons set forth in *K-Dur* and *Cardizem CD*, *supra*, Defendants' motion to dismiss Plaintiffs' claims for unjust enrichment must be denied.

### IV.    DEFENDANTS' ARGUMENT THAT PLAINTIFFS FAIL TO STATE A CLAIM UNDER NEW YORK'S CONSUMER PROTECTION LAW IS BASELESS

Defendants' argument that Plaintiffs fail to state a claim under New York's consumer protection statute[9] is baseless.  Specifically, Defendants argument that Plaintiffs "do not allege any acts of deception on the part of the Defendants"[10] ignores Plaintiffs' Amended Complaint and the relevant case law.  Indeed, the law is clear that a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED R. CIV. P. 8(a)(2).

*In Luck's Music Library, Inc. v. Ashcroft*, 321 F.Supp.2d 107 (D.D.C. 2004), this Court held:

> A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C.Cir.2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C.Cir.2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley,* 355 U.S. at 47-48, 78 S.Ct. 99 (internal

---

[9]    N.Y. Gen. Bus. Law § § 349 *et seq.*
[10]   Defs.' Motion to Dismiss, p. 17.

> quotation marks omitted). It is not necessary for the plaintiff to
> plead all elements of his prima facie case in the complaint,
> *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-14, 122 S.Ct. 992,
> 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element
> of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136
> (D.C.Cir.2000) (internal quotation marks and citation omitted).
>
> Accordingly, "the accepted rule in every type of case" is that a court
> should not dismiss a complaint for failure to state a claim unless the
> defendant can show beyond doubt that the plaintiff can prove no
> set of facts in support of his claim that would entitle him to relief.
> *Warren v. District of Columbia,* 353 F.3d 36, 37 (D.C.Cir.2004);
> *Kingman Park,* 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6)
> motion, the court must treat the complaint's factual allegations-
> including mixed questions of law and fact-as true and draw all
> reasonable inferences therefrom in the plaintiff's favor. *112
> *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy
> Land Found. for Relief & Development v. Ashcroft,* 333 F.3d 156,
> 165 (D.C.Cir.2003); *Browning,* 292 F.3d at 242. . . .
>
> *Id.*

Even upon a cursory review of Plaintiffs' Amended Complaint, it is plain that

Defendants cannot show beyond doubt that Plaintiffs "can prove no set of facts in

support of their claims that would entitle them to relief." *Id.* Indeed, with regard

to Defendants' bald allegation that Plaintiffs "do not allege any act of deception

on the part of the Defendants," Plaintiffs point out the following averments in their

Amended Complaint:

> 40.    Barr intended to sell its generic version of Ovcon at a price
> approximately 30% below the price Warner Chilcott charged for
> Ovcon.
>
> 41.    Warner Chilcott expected Barr to price its generic Ovcon at
> approximately 30% below the price Warner Chilcott charged for
> Ovcon.
>
> 44.    To forestall this competitive threat and to protect its Ovcon
> revenues, Warner Chilcott embarked on a strategy to convert
> Ovcon customers to a chewable form of the product (Ovcon
> Chewable) and to stop selling branded Ovcon before entry of the

generic equivalent. Prescriptions for Ovcon Chewable would not be able to be filled with Barr's generic Ovcon because Barr's generic version of non-chewable Ovcon would not be AB-rated to Ovcon Chewable.

**45.    The switch to a chewable form of Ovcon would have no real benefits to patients and was sought by Warner Chilcott to preserve its monopoly profits on Ovcon.**  (Emphasis added).

Am. Compl. ¶¶ 40, 41, 44 and 45.

Contrary to Defendants' assertion, Plaintiffs' Amended Complaint clearly alleges

acts of deception on the part of Defendants, *i.e.,* that Warner Chilcott deceptively

induced Ovcon customers to switch a chewable form of Ovcon **not because it**

**had any real benefits for patients, but to preserve its monopoly rights.**

Moreover, Plaintiffs aver that "Warner Chilcott and Barr signed a Letter of Intent

to enter into a non-compete agreement," (Am. Compl. ¶50), a material omission

which belies Defendants' assertion that "[n]or do Plaintiffs allege that the

Defendants' license and supply agreements deceived or misled the public."

(Defs.' Motion to Dismiss, p. 17).  Indeed, in *Cox v. Microsoft Corp.,* 8 A.D.3d 39,

40 (2004), the Supreme Court of New York held:

> A cause of action under General Business Law § 349 is stated by plaintiffs' allegations that Microsoft engaged in purposeful, deceptive monopolistic business practices, including entering into secret agreements with computer manufacturers and distributors to inhibit competition and technological development, and creating an "applications barrier" in its Windows software that, unbeknownst to consumers, rejected competitors' Intel-compatible PC operating systems, and that such practices resulted in artificially inflated prices for defendant's products and denial of consumer access to competitors' innovations, services and products (*see Zurakov v Register.Com, Inc.*, 304 AD2d 176, 180-182 [2003]).

Similarly, Plaintiffs here allege a cause of action under General Business Law §

349 by averring that "Defendants entered into their non-compete agreement" (Am.

Compl. ¶51) and that "Defendants' conduct [wa]s unfair, unlawful, deceptive, unconscionable, an unlawful restraint of trade and/or an unfair method of competition." (Am. Compl. ¶98). For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' claim under New York's consumer protection statute must be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to Dismiss Plaintiffs' Amended Complaint must be denied.

Respectfully submitted,

/s/ John M. Mason
John M. Mason, Esquire
DC Bar ID#: 193268
Of Counsel
**LAW OFFICES OF ROBERT W. SINK**
319 West Front Street
Media, PA 19063
Tel:    610-566-0800
Fax:   610-566-4408

Robert W. Sink, Esquire
*Pro Hac Vice*
**LAW OFFICES OF ROBERT W. SINK**
319 West Front Street
Media, PA 19063
Tel:    610-566-0800
Fax:   610-566-4408

***Attorneys for Plaintiffs***