## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

STEPHANIE COHEN and SUNDA
CROONQUIST, individually and on behalf of all
others similarly situated,

               Plaintiffs,

    v.

WARNER CHILCOTT PUBLIC LIMITED
COMPANY, WARNER CHILCOTT HOLDINGS
COMPANY III, LTD., WARNER CHILCOTT
CORPORATION, WARNER CHILCOTT (US)
INC., WARNER CHILCOTT COMPANY, INC.,
GALEN (CHEMICALS), LTD., and BARR
PHARMACEUTICALS, INC.,

               Defendants.

Civil Action No. 1:06-CV-00401-CKK

Judge Colleen Kollar-Kotelly

## DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION
## COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT.........................................................................................................1

    I.      PLAINTIFFS LACK STANDING TO MAINTAIN CLAIMS ON
          BEHALF OF  RESIDENTS OF OTHER STATES ................................................1

    II.     PLAINTIFFS' ALLEGATIONS OF "UNJUST ENRICHMENT"
          PROVIDE NO BASIS FOR RELIEF....................................................................8

    III.    PLAINTIFFS HAVE NO CLAIM UNDER THE CONSUMER
          PROTECTION LAW OF NEW YORK ...............................................................11

CONCLUSION.....................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Aikens v. Microsoft,*
    159 F. App'x 471 (4th Cir. 2005) ............................................................... 9, 10

*Allen v. Wright,*
    468 U.S. 737 (1984) ..................................................................................... 6

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ................................................................................... 3, 7

*Caranci v. Blue Cross & Blue Shield of R.I.,*
    194 F.R.D. 27 (D.R.I. 2000) ......................................................................... 5

*Cox v. Microsoft Corp.,*
    8 A.D.3d 39 (N.Y. App. Div. 2004) ........................................................... 12

*Dash v. FirstPlus Home Loan Owner Trust,*
    248 F. Supp. 2d 489 (M.D.N.C. 2003) ......................................................... 5

*Doe v. Unocal Corp.,*
    67 F. Supp. 2d 1140 (C.D. Cal. 1999) .......................................................... 5

*Excellus Health Plan, Inc. v. Tran,*
    287 F. Supp. 2d 167 (W.D.N.Y. 2003) ....................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ..................................................................................... 6

*FTC v. Mylan Labs., Inc.,*
    62 F. Supp. 2d 25 (D.D.C. 1999) ............................................................ 8, 10

*Goshen v. Mut. Life Ins. Co.,*
    774 N.E.2d 1190 (N.Y. 2002) ..................................................................... 12

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) ..................................................................................... 6

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977) ................................................................................. 8, 14

*In re Buspirone Patent Litig.,*
    185 F. Supp. 2d 363 (S.D.N.Y. 2002) .......................................................... 6

*In re Cardizem CD Antitrust Litig.,*
    105 F. Supp. 2d 618 ............................................................................... 9

*In re Eaton Vance Corp. Secs. Litig.,*
    220 F.R.D. 162 (D. Mass. 2004) ....................................................... 5, 7

*In re K-Dur Antitrust Litig.,*
    338 F. Supp. 2d 517 (D.N.J. 2004) ..................................................... 9

*In re Lorazepam & Clorazepate Antitrust Litig.,*
    289 F.3d 98 (D.C. Cir. 2002) .............................................................. 5

*In re Microsoft Corp. Antitrust Litig.,*
    241 F. Supp. 2d 563 (D. Md. 2003) .................................................. 10

*In re Microsoft Corp. Antitrust Litig.,*
    401 F. Supp. 2d 461 (D. Md. 2005) .................................................. 10

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
    350 F. Supp. 2d 160 (D. Me. 2004) ............................................... 8, 11

*In re Relafen Antitrust Litig.,*
    221 F.R.D. 260 (D. Mass. 2004) ........................................................ 5

*In re Terazosin Hydrochloride Antitrust Litig.,*
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................................... 4, 8, 9, 10

*In re Vitamins Antitrust Litig.,*
    No. 99-197, MDL 1285, 2001 WL 34088807 (D.D.C. Mar. 13, 2001) ........... 10

*Landmann v. Bann-Cor,*
    No. 01-CV-00417-DRH, 2004 WL 1944789, at *5 (S.D. Ill. Feb. 26, 2004) ............... 5, 6

*Lewis v. Casey,*
    518 U.S. 343 (1996) ............................................................................ 2

*Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.,*
    775 N.Y.S.2d 59 (N.Y. App. Div. 2004) ........................................... 12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................ 5

*Matte v. Sunshine Mobile Homes, Inc.,*
    270 F. Supp. 2d 805 (W.D. La. 2003) ............................................... 5

*Miller v. French,*
    530 U.S. 327 (2000) ............................................................................ 8

*Miller v. Pac. Shore Funding,*
    224 F. Supp. 2d 977 (D. Md. 2002) .................................................................. 5

*Mull v. Alliance Mortgage Banking Corp.,*
    219 F. Supp. 2d 895 (W.D. Tenn. 2002).......................................................... 5

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999)................................................................................. 4, 5, 7

*Payton v. County of Kane,*
    308 F.3d 673 (7th Cir. 2002) ........................................................................ 7

*Prado-Steiman v. Bush,*
    221 F.3d 1266 (11th Cir. 2000) ................................................................. 3, 5

*Rivera v. Wyeth-Ayerst Labs.,*
    283 F.3d 315 (5th Cir. 2002) ..................................................................... 5, 6

*Sands v. Ticketmaster-New York, Inc.,*
    207 A.D.2d 687 (N.Y. App. Div. 1994) ...................................................... 12

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976)........................................................................................ 5

*Solomon v. Bell Atl. Corp.,*
    9 A.D.3d 49 (N.Y. App. Div. 2004) ........................................................... 12

*Sosna v. Iowa,*
    419 U.S. 393 (1975)...................................................................................... 6

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998).................................................................................... 2, 5

*Stutman v. Chem. Bank,*
    731 N.E.2d 608 (N.Y. 2000)................................................................... 11, 12

*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980)...................................................................................... 6

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,*
    529 U.S. 765 (2000)...................................................................................... 2

**Other Authorities**

N.Y. Gen. Bus. Law §§ 349, *et seq.*................................................................ 13, 14

**INTRODUCTION**

Nothing in Plaintiffs' Opposition alters the conclusion that virtually all of Count III and all of Count IV of the Amended Class Action Complaint fails as a matter of law and should be dismissed. First, Plaintiffs fail to meet the most basic constitutional standing requirements in their sweeping attempt to assert phantom antitrust or consumer protection claims in states where no named plaintiff resides, where no named plaintiff is alleged to have purchased any Ovcon, and where even the named Plaintiffs themselves would lack standing to bring any of these claims. Second, Plaintiffs fail to state a claim under New York's consumer protection act because they simply do not allege that Defendants have done anything to deceive or mislead any New York consumers. Finally, Plaintiffs' generalized equitable claim for "restitution" based on a theory of "unjust enrichment" is a thinly-veiled attempt to recover damages on behalf of indirect purchasers and is therefore barred by the Supreme Court's direct purchaser rule set forth in *Illinois Brick*.[1]

**ARGUMENT**

**I.    PLAINTIFFS LACK STANDING TO MAINTAIN CLAIMS ON BEHALF OF RESIDENTS OF OTHER STATES**

Plaintiffs have asserted claims under numerous states' laws for which there is no named plaintiff who has incurred an alleged injury under those state laws.[2] Plaintiffs could not bring a cause of action on behalf of themselves under those states' laws. It thus makes absolutely no sense to allow them to come into this Court and assert a cause of action on behalf of the residents of those other states.

---

[1]    Unless otherwise noted, all ***emphasis*** is added and internal citations and punctuation have been omitted.

[2]    In addition to plaintiffs' home states, New York and California, plaintiffs assert claims on behalf of citizens of Arizona, Florida, Kansas, Maine, Michigan, Minnesota, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, and West Virginia.

Plaintiffs purport to justify their overreaching by arguing that because they seek to act "as proposed representatives for a class of Ovcon consumer purchasers similarly situated, *i.e.*, with substantially identical state antitrust claims as residents of 12 other states," the Court can disregard jurisdictional limits and ignore Plaintiffs' lack of standing until class certification. (Pls.' Opp'n at 11.)  Plaintiffs, however, have fundamentally misstated the law.[3]

Indeed, under well-established Supreme Court precedent, Plaintiffs do not have standing to assert claims under various states' laws where they do not reside.  The Supreme Court has never adopted the broad exception to jurisdictional requirements — allowing a named plaintiff to borrow standing of unnamed putative class members — advanced by Plaintiffs here.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("[N]one of [the exceptions to the general rule that a court must address issues of standing first] even approaches approval of a doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt."); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000) (stating that, as a general rule, questions of jurisdiction must be considered before the merits "since if there is no jurisdiction there is no authority to sit in judgment of anything else").

In fact, the Supreme Court has repeatedly cautioned that plaintiffs can pursue only those claims for which they have standing to bring in their own right.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross. . . . [A] plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary

---

[3]  Plaintiffs' assertion that Defendants "conflate[] the constitutional standing requirements of Article III with the class certification standards of Federal Rule of Civil Procedure 23" is simply wrong. (Pls.' Opp'n at 3.)  In fact, Defendants argue the exact opposite: that the issue of standing must be addressed ***prior to*** and ***independently of*** any determination of class certification.  It is Plaintiffs who conflate constitutional standing requirements and class certification standards by arguing that standing requirements are met simply by alleging in their Complaint that "all of the class action prerequisites under Rule 23, FRCP, are satisfied, including typicality . . . ." (*Id.* at 11.)

stake in litigating conduct of another kind, although similar, to which he has not been subject."); *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982) (warning that named plaintiffs cannot merely allege that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent").

A federal court's jurisdiction to adjudicate "cases" and "controversies" pursuant to Article III of the Constitution requires more from Plaintiffs than a mere statement that "all of the class action prerequisites under Rule 23, FRCP, are satisfied, including typicality . . . ." (Pls.' Opp'n at 11.) Plaintiffs must establish standing for *each claim* asserted on behalf of each class or subclass they purport to represent. *See Prado-Steiman v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000). Thus, in order to bring an action on behalf of a subclass of consumer purchasers under the laws of fourteen different states, the named Plaintiffs must establish standing for each individual legal claim, for "[w]ithout individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." *Id.*

Here, Plaintiffs fail to allege any conduct occurring in any state.[4] Simply stating that the named Plaintiffs bring the same type of claim as that of absent class members residing in different states is not sufficient to establish standing for themselves under the laws of those states. *See Blum*, 457 U.S. at 999 (explaining that "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject").

---

[4]    Plaintiffs falsely state that "Defendants concede that the named Plaintiffs, in Count III, have established the requisite case or controversy in this Court for Article III purposes . . . ." (Pls.' Opp'n at 12.) *Nowhere* in Defendants' opening brief do Defendants "concede" that Plaintiffs have suffered cognizable injury or have standing to assert any claim. Defendants simply have not challenged Plaintiffs' standing under New York or California law at the motion to dismiss stage.

*In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001) is instructive.  In that case, the court dismissed claims brought on behalf of indirect purchasers under the laws of states where named plaintiffs did not reside or suffer personal injury.  In support of its holding, the court rejected the proposition that the named plaintiffs could bring "dozens of state law claims in federal court without personally having standing to assert them." *Id.* at 1371.  It follows, then, that Plaintiffs have failed to establish standing to assert claims under the laws of any state but those in which they reside and have suffered personal injury.

Plaintiffs purport to justify their overreaching by arguing that because this is a putative class action, this Court can disregard jurisdictional limits and ignore Plaintiffs' lack of standing until class certification.  (Pls.' Opp'n at 8-11.)  The Supreme Court disagrees.

Although "[o]rdinarily, [any] Article III court must be sure of its own jurisdiction before getting to the merits," *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), Plaintiffs insist that this Court address the issue of class certification *before* addressing any issue of standing.  (*See* Pls.' Opp'n at 8-9.)  In support of this proposition, Plaintiffs mistakenly rely on *Ortiz*, in which the Supreme Court held that a court could determine class certification before addressing Article III standing in the "unique" context of a "settlement of potential future claims for asbestos related injuries that had not manifested themselves at the time the action was even filed or even

4

settled," *Landmann v. Bann-Cor*, No. 01-CV-00417-DRH, 2004 WL 1944789, at *5 (S.D. Ill.

Feb. 26, 2004).[5]

Representing *Ortiz*'s holding as anything other than a "limited exception" to the general

rule is misguided and inappropriate.   The Supreme Court has repeatedly made clear that

"standing is to be determined as of the commencement of suit," *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 571 n.5 (1992), and that the requirements of Article III are "inflexible and without

exception," *Steel Co.*, 523 U.S. at 95, because "[n]o principle is more fundamental to the

judiciary's proper role in our system of government than the constitutional limitation of federal-

court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426

U.S. 26, 37 (1976); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108

(D.C. Cir. 2002) (observing that "[t]he question of constitutional standing [] is a prerequisite to

Rule 23 class certification" and should be addressed by a court in a motion to dismiss and not be

deferred until class certification "because it goes to the court's jurisdiction"); *Prado-Stieman*,

221 F.3d at 1279 ("[I]t is well-settled that prior to the certification of a class, and technically

---

[5]    Plaintiffs assert that "numerous other district and circuit courts" have held that issues of constitutional standing may be deferred until class certification. Plaintiffs repeatedly cite *In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004), in support of this proposition, yet refrain from any discussion of this case. (Pls.' Opp'n at 6, 7, 8, 10.) Plaintiffs' reluctance to explicate this case is not surprising as it stands in direct conflict with other cases from within this Circuit and the District of Massachusetts which have reasoned that standing issues should be resolved at the motion to dismiss stage, and not deferred until class certification. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002); *In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) ("[T]his Court cannot put aside the requirements of Article III simply because a plaintiff decides to file a motion seeking to represent a class."). In addition, as discussed in Defendants' opening brief, *In re Relafen* rests on an incorrect interpretation of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). There, the Supreme Court established a "limited exception" to the general rule that standing may be addressed before class certification where the absent class members lack constitutional standing and class certification issues are dispositive of the whole case. *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002). Indeed, *In re Relafen* stands in conflict with numerous post-*Ortiz* courts that have addressed Article III standing ***before*** analyzing class certification issues. *See, e.g., Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 822-23 (W.D. La. 2003); *Dash v. FirstPlus Home Loan Owner Trust*, 248 F. Supp. 2d 489, 503-04 (M.D.N.C. 2003); *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 995-96 (D. Md. 2002); *Mull v. Alliance Mortgage Banking Corp.*, 219 F. Supp. 2d 895, 909 n.10 (W.D. Tenn. 2002); *Caranci v. Blue Cross & Blue Shield of R.I.*, 194 F.R.D. 27, 32 (D.R.I. 2000); *Doe v. Unocal Corp.*, 67 F. Supp. 2d 1140, 1142 (C.D. Cal. 1999).

speaking before undertaking any formal typicality or commonality review, the district court must

determine that at least one named class representative has Article III standing to raise each class

subclaim"); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (stating that

"[s]tanding is an inherent prerequisite to the class certification inquiry," and that *Ortiz* merely

states a "limited exception" to that general rule); *Landmann*, 2004 WL 1944789, at *5 (stating

that the narrow exception set forth in *Ortiz* did not apply and that it "[saw] no reason why simply

framing a lawsuit as a class action removes the Named Plaintiffs' burden to demonstrate standing

. . .").[6]

Thus, Plaintiffs' reliance on *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363 (S.D.N.Y.

2002), is unpersuasive. Nowhere did the *Buspirone* court discuss — much less distinguish —

this Supreme Court precedent. The *Buspirone* court explained that it did not need to analyze the

named plaintiffs' standing because "[i]f certification is granted, the proposed class would contain

plaintiffs who have personal standing to raise claims under the laws governing purchases in all of

the fifty states." *Id.* at 377. That, of course, is not true here. Moreover, this reasoning conflicts

---

[6]  Plaintiffs cite the Supreme Court's decisions in *Sosna v. Iowa*, 419 U.S. 393 (1975) and *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) for the proposition that the Court exercises a "flexible inquiry" in its determination of standing in the context of class actions. In so doing, however, Plaintiffs confuse Article III standing doctrine with Article III mootness doctrine. In *Sosna*, the Court held that mootness of the named plaintiff's individual claim *after* a class had been certified did not render the action itself moot. 419 U.S. at 399. In *Geraghty*, the Court held that "an action brought on behalf of a class does not necessarily become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied," since the named plaintiff "retains a 'personal stake' in obtaining class certification sufficient to assure that Article III values are not undermined." *Id.* at 404. As explained in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000), "[t]he Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins both our standing and our mootness jurisprudence, but the two inquiries differ . . . ." *Id.* at 180.

Plaintiffs' citation to *Gratz v. Bollinger*, 539 U.S. 244, 263 (2003), is also inapposite. In *Gratz*, the Supreme Court declined to decide whether a variation in an undergraduate versus a transfer admissions policy was an issue of standing or propriety of class certification, because the plaintiffs had clearly satisfied both requirements. In any regard, a court's interest in judicial economy can hardly be considered more significant than a court's responsibility to ensure it has the authority to hear a case or controversy, for "[t]he several doctrines that have grown up to elaborate that requirement are founded in concern about the proper — and properly limited — role of the courts in a democratic society." *Allen v. Wright*, 468 U.S. 737, 750 (1984).

directly with the Supreme Court's holding that plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Blum*, 457 U.S. at 1001 n.13. The *Buspirone* court's holding is therefore questionable, at best. This Court should not follow it.[7]

Furthermore, courts have noted that the Supreme Court's statements in *Ortiz* must be considered against the case's distinctive factual backdrop: the "extremely unique and complex problems associated with asbestos-related class actions," the fact that "the certification of a class [] included . . . individuals who had been exposed to asbestos, but had not yet become sick," and a global settlement agreement that depended on certification of the class. *In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 166 (D. Mass. 2004). None of these factual elements are present here and *Ortiz* is thus inapplicable. Plaintiffs' standing (or more appropriately, their lack thereof) must therefore be addressed in a motion to dismiss and cannot be deferred until class certification.

In sum, because Plaintiffs' opposition presents no authority permitting the named Plaintiffs to acquire constitutional standing by virtue of the hypothetical claims of absent

---

[7]  Plaintiffs' reliance on *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), is also misplaced. (Pls.' Opp'n at 6.) In *Payton*, the court — relying on an overly expansive reading of *Ortiz*, 527 U.S. 815 (*see* note 5, *infra*) — held that the named plaintiffs had standing to represent unnamed plaintiffs who suffered similar injuries as the named plaintiffs but who were injured at the hands of other defendants. But, unlike the Plaintiffs here, the named plaintiffs "were personally injured by the operation of the *very same statute* that caused injuries to all other members of the proposed class." *Payton*, 308 F.3d at 681. Thus, the court distinguished the case before it from one like the case at bar, noting:

> This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. That, of course, would be impermissible, in light of the fact that a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs . . .

*Id.* at 682. Here, Plaintiffs attempt to establish standing under various state laws (other than New York and California) based on the alleged injuries of unnamed class members. Thus, as the *Payton* court observed, Plaintiffs simply attempt to "piggy-back" the alleged injuries of unnamed plaintiffs. As such, Plaintiffs lack standing.

Plaintiffs, Count III of Plaintiffs' Second Amended Class Action Complaint should be dismissed to the extent it purports to assert claims under the laws of any state but New York or California, because the Court does not have jurisdiction over such claims.

## II.    PLAINTIFFS' ALLEGATIONS OF "UNJUST ENRICHMENT" PROVIDE NO BASIS FOR RELIEF

Regardless of the label, Plaintiffs' unjust enrichment claim boils down to nothing more than a claim for damages for an alleged antitrust violation.  It is therefore  exactly the type of claim that the Supreme Court disallowed under the antitrust laws over a quarter century ago.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977).

Clearly, Plaintiffs' claims in those states that follow the direct purchaser rule of *Illinois Brick* are barred whether brought under the antitrust laws or some undefined theory of common law "unjust enrichment" or "restitution." *See FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 42-43 (D.D.C. 1999), *modified on other grounds*, 99 F. Supp. 2d 1 (D.D.C. 1999) (holding that plaintiffs "should not be allowed to circumvent *Illinois Brick*" by seeking common law disgorgement rather than damages on behalf of indirect purchasers "***absent express authority for such relief under state law***"); *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004) ("Certainly no restitutionary remedy can escape the limitations the United States Supreme Court imposed on federal antitrust recovery in *Illinois Brick*."); *In re Terazosin*, 160 F. Supp. 2d at 1379-80 (rejecting indirect purchaser-plaintiffs' unjust enrichment claim under the common law of the fifty states with respect to each state that did not allow indirect purchasers to sue under that state's antitrust laws).[8]

---

[8]    Plaintiffs' citation to *Miller v. French*, 530 U.S. 327, 340 (2000), a case involving the Prison Litigation Reform Act, is inapposite.  (*See id.* at 341 (holding that equitable powers to lift automatic stays were abrogated by the Prison Litigation Reform Act).  *Miller* does not address the inability of indirect purchasers to bring unjust enrichment claims in light of the Supreme Court's longstanding precedent in *Illinois Brick*.

Plaintiffs dismiss the applicability of *Illinois Brick* and simply ignore applicable precedent. Plaintiffs' opposition instead relies on a District of New Jersey case and an Eastern District of Michigan case, neither of which addressed the effect of *Illinois Brick* on plaintiffs' claims, instead analyzing the sufficiency of their claims under general principles of unjust enrichment. *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 543-46 (D.N.J. 2004) (permitting plaintiffs to plead unjust enrichment as an alternative theory of recovery); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 668-71 (allowing plaintiffs to bring claims of unjust enrichment). In any event, the analysis in these cases is inapposite. The issue is not whether there exists an adequate legal remedy, but whether Plaintiffs are precluded from recovery of ***any*** remedy absent express state authority. *See, e.g., In re Terazosin*, 160 F. Supp. 2d 1365, 1380 ("The *Federal Rules* generally provide that 'relief in the alternative . . . may be demanded,' but they do not authorize end runs around state laws.") (dismissing claims for unjust enrichment under the common law of all 50 states and the District of Columbia absent specific authority under each jurisdiction allowing indirect purchasers to recover overcharges); *see also Aikens v. Microsoft*, 159 F. App'x 471, 477 (4th Cir. 2005) ("[T]he unjust enrichment remedy is 'subsidiary' in nature and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule. Indeed where there is a rule of law directed to the issue, [an unjust enrichment claim] must not be allowed to defeat the purpose of said rule.").

In addition, and equally important here, because Plaintiffs seek to recover alleged overcharges, "[t]he end payors' unjust enrichment claim raises *identical* concerns" as those identified by the Supreme Court in *Illinois Brick*, including concerns regarding "complex apportionment disputes among injured parties" and "expos[ing] defendants to the risk of multiple liability." *In re Terazosin*, 160 F. Supp. 2d at 1380. Thus, contrary to the courts' findings in *In*

*re K-Dur* and *In re Cardizem*, the policies underlying the direct purchaser rule of *Illinois Brick* are clearly implicated here. Thus, to the extent these two cases suggest that unjust enrichment claims could be brought in addition to claims based on state antitrust laws, they conflict with *Mylan Labs.*, *In re Terazosin*, and numerous other courts to have addressed the issue.[9] In short, neither *In re K-Dur* nor *In re Cardizem* are persuasive authority on this issue.

Similarly, Plaintiffs' claim that they can bring unjust enrichment claims for those states that do not follow *Illinois Brick* ignores the Court's decision in *Mylan* and fails to address state law holding that general equitable remedies such as restitution and disgorgement are foreclosed by the specific requirements of a state's statutory scheme. (*See* Defs.' Mot. to Dismiss at 15 (citing cases).) As the *Mylan* court reasoned, even in those states that do not follow *Illinois Brick*, Plaintiffs' exclusive remedy should lie in the state antitrust laws, ***not*** in some undefined and unsupported claim for unjust enrichment. *See Mylan*, 62 F. Supp. 2d at 44-53 (permitting disgorgement claims only if expressly allowed under state antitrust laws, ***not*** under general unjust enrichment principles); *see also In re Vitamins Antitrust Litig.*, No. 99-197, MDL 1285, 2001 WL 34088807 (D.D.C. Mar. 13, 2001) (dismissing claim for unjust enrichment under Alabama law because the Alabama antitrust statute was limited to actual damages). Because the consumer Plaintiffs have pursued the very remedies provided for in the *Illinois-Brick*-repealer statutes, Plaintiffs' common law claim is either disallowed by state law, or duplicative of Count IV. Plaintiffs offer no persuasive authority to the contrary. Thus, Plaintiffs' common law claim

---

[9] *See also In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) ("[T]he specific bar on indirect purchaser recovery incorporated into South Carolina's antitrust statutes prohibits Plaintiff's general common-law [unjust enrichment] claim."); *Aikens v. Microsoft*, 159 F.App'x 471, 477 (4th Cir. 2005) ("[T]o the extent that the plaintiffs cannot sue for monetary damages under Louisiana antitrust law, they cannot employ a subsidiary unjust enrichment claim to circumvent this rule."); *In re Microsoft Corp. Antitrust Litig.*, 241 F. Supp. 2d 563, 565 (D. Md. 2003) ("[A] claim for damages for antitrust violations cannot be asserted under the Kentucky Consumer Protection Act where they cannot be asserted under Kentucky's version of the Sherman Act. This same reasoning equally applies to a common law claim for unjust enrichment arising from antitrust violations.").

for unjust enrichment (Count IV) must be dismissed in its entirety, or, at a minimum, must be dismissed to the extent it purports to state claims under the common law of states that adhere to the direct purchaser rule of *Illinois Brick*.

## III.    PLAINTIFFS HAVE NO CLAIM UNDER THE CONSUMER PROTECTION LAW OF NEW YORK

Plaintiffs do not dispute that anticompetitive conduct may violate New York's consumer protection law "*only if it is deceptive.*" (Defs.' Mot. to Dismiss at 16 (quoting *In re New Motor Vehicles Canadian Export Antitrust Litig.,* 350 F. Supp. 2d 160, 197 (D. Me. 2003)).) Nor do they take issue with the mountain of case law dismissing New York consumer protection act claims in the absence of such allegations. Defs.' Mot. to Dismiss at 16-17, & n.10 (citing cases). Instead, Plaintiffs argue, first, that their Complaint "clearly alleges acts of deception on the part of Defendants, *i.e.*, that Warner Chilcott deceptively induced Ovcon customers to switch to a chewable form of Ovcon . . ." and, second, that their Complaint alleges a material omission, *i.e.*, that "Warner Chilcott and Barr signed a Letter of Intent to enter into a non-compete agreement." (Pls.' Opp'n at 18.) Neither, however, constitutes an act or omission, let alone an act or omission "likely to *mislead* a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chem. Bank,* 731 N.E.2d 608, 611-12 (N.Y. 2000); *compare Excellus Health Plan, Inc. v. Tran,* 287 F. Supp. 2d 167, 179-80 (W.D.N.Y. 2003) (noting that the allegations of a group boycott and other antitrust violations included claims of misleading statements made with an intent to deceive).

First, Plaintiffs assert that Defendants' alleged business plans transform an antitrust action into a violation of New York's consumer protection act.[10] Yet it is impossible for plans

---

[10]   Plaintiffs belatedly assert that the following statements made in their Complaint were actually allegations of "acts of deception": (1) that Barr allegedly expected to sell a generic version of Ovcon at a discount to the brand price; (2) that Warner Chilcott allegedly expected a generic Ovcon to be priced below the brand price; (3) that

and expectations held solely by Defendants to "*mislead* a reasonable consumer" absent some act by Defendants taken to implement their plans. *See Stutman*, 731 N.E.2d at 611-12 (emphasis added). Indeed, as the New York Supreme Court has explained, deceptive acts are "not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002) (dismissing claims where scheme was hatched in New York, but misrepresentations were made out of state); *accord Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 52 (N.Y. App. Div. 2004). Consumers simply cannot be misled by alleged plans in and of themselves, and Plaintiffs offer no case law suggesting that they can.[11]

Second, Plaintiffs argue that the Letter of Intent signed by Defendants somehow constitutes a "material omission," relying on *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40 (N.Y. App. Div. 2004). (Pls.' Opp'n at 18.) However, Plaintiffs do not allege in their Complaint that either the agreements or any of their terms were not disclosed. Thus, unlike the lone case cited by Plaintiffs where defendants entered into "*secret agreements* . . . to inhibit competition and technological development," *Cox*, 8 A.D.3d at 40, consumers here do not claim that the terms of the agreements which serve as the basis of their Complaint were unknown. *See Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59, 61 (N.Y. App. Div. 2004) (Section 349 claim dismissed in part because the conduct complained of, automatically renewing lease terms, was fully disclosed); *see also Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687 (N.Y. App. Div. 1994) (plaintiffs could not be deceived by business practice of charging

---

Warner Chilcott developed a new product, Ovcon Chewable, that allegedly offered no real benefit to patients; and that (4) Warner Chilcott planned to convert customers from Ovcon to the Chewable product. (Pls.' Opp'n at 17-18.)

[11] Plaintiffs do not allege that Defendants actually implemented their plans. Moreover, Plaintiffs do not allege that Defendants *made* misrepresentations or omissions based upon these expectations or plans. None of the allegations upon which Plaintiffs rely constitute "acts" at all, let alone deceptive acts.

excessive fees for tickets where "practices [we]re *fully disclosed* prior to the sale") (emphasis in original).  Plaintiffs do not and cannot base their New York consumer protection act claim on facts hidden from the public; no such facts exist.[12]

Because the Amended Complaint lacks a single factual allegation that Defendants engaged in deceptive activity, Plaintiffs' claim under the New York consumer protection law, N.Y. Gen. Bus. Law §§ 349, *et seq.*, must be dismissed.

---

[12]  Because the challenged transaction was widely reported at the time, it is no wonder that Plaintiffs fail to make any such allegation.  It is not necessary, however, to refer to any news reports because Plaintiffs' failure to allege non-disclosure of the transaction is fatal to their claim.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' Opening Memorandum, Defendants respectfully submit that Count III of Plaintiffs' Amended Class Action Complaint should be dismissed to the extent it purports to assert claims under the laws of states other than New York and California because Plaintiffs have failed to adequately plead a cause of action or otherwise lack standing to assert claims under the state laws, and that Court IV should-be dismissed in its entirety because it is barred by the direct purchaser rule established by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Finally, Plaintiffs' claims pursuant to N.Y. Gen. Bus. Law §§ 349, *et seq.* should be dismissed.


Date:   June 1, 2006                                        Respectfully Submitted,


   /s/ Peter C. Thomas                                                     /s/ Karen N. Walker
Peter C. Thomas (D.C. Bar #495928)                Karen N. Walker (D.C. Bar #412137)
SIMPSON THACHER & BARTLETT LLP          Mark L. Kovner (D.C. Bar #430431)
555 11th Street, N.W., Suite 725                      Chong S. Park (D.C. Bar #463050)
Washington, D.C.  20004                                  KIRKLAND & ELLIS LLP
(202) 220-7700                                                655 Fifteenth Street, N.W., Suite 1200
(202) 220-7702 (fax)                                        Washington, D.C.  20005
                                                                      (202) 879-5000
Charles E. Koob, *pro hac vice*                         (202) 879-5200 (fax)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue                                       *Counsel for Barr Pharmaceuticals, Inc.*
New York, New York  10017-3954
(212) 455-2000
(212) 455-2502 (fax)


*Counsel for Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc. and Galen (Chemicals), Ltd.*