IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**STEPHANIE COHEN and SUNDA CROONQUIST, individually and on behalf of all others similarly situated,**

**Plaintiffs,**

v.

**WARNER CHILCOTT PUBLIC LIMITED COMPANY, WARNER CHILCOTT HOLDINGS COIMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC.,**

**Defendants.**

---

Civil Action No: 1:06CV00401 (CKK)

Jury Trial Demanded

### DECLARATION OF ORRAN L. BROWN

1.   *Personal Information.*  My name is Orran L. Brown.  I am the Chairman and a founding partner of BrownGreer PLC, located at 115 S. 15th Street, Suite 400, Richmond, Virginia.

2.   *Personal Knowledge.*  The matters set forth in this Declaration are based upon my personal knowledge, based upon my experience and training, and based upon information received by my firm as the Notice Administrator for the Ovcon 35 Consumer Settlement.

3.   *General Description of Firm.*  BrownGreer PLC is a firm that specializes in the legal and administrative aspects of the design, approval, and implementation of claims facilities to provide damages payments, medical monitoring, or other benefits for the

resolution of mass claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicle.

4. *Education.* I received a Bachelor of Arts degree in Government and Foreign Affairs *summa cum laude* from Hampden-Sydney College in Hampden Sydney, Virginia, in 1978. I received my J. D. degree from Harvard Law School in Cambridge, Massachusetts, *cum laude*, in 1981.

5. *Professional Experience.* From 1981-82 I served as the law clerk to the Hon. Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, in Richmond, Virginia. From there, I practiced in Houston, Texas, from 1982 until February 1986, first with Liddell, Sapp, Zively, Brown & LaBoon, and then with Miller, Keeton, Bristow & Brown, where I handled general litigation matters, including working on the *Pennzoil v. Texaco* suit arising from Texaco's acquisition of Getty Oil. From February 1986 until January 1995, I was first an associate and then a partner at Christian & Barton, a law firm in Richmond, Virginia. There, I handled securities for all class actions, employment, products liability, and other commercial litigation in state and federal courts in Virginia and elsewhere, and served as an arbitrator for the America Arbitration Association for securities fraud and construction cases. From January 1995 through June 1999, I was the primary outside general counsel to the Dalkon Shield Claimants Trust in Richmond, Virginia, which is described in more detail below. From June 1999 through September 16, 2002, I was the Director of the Mass Claims Resolution Group in the Richmond, Virginia office of the Minneapolis law firm of Bowman and Brooke, where I specialized in legal and administrative aspects of mass claims resolution. On September 16, 2002, my partner, Lynn Greer, and I founded the firm BrownGreer PLC, in Richmond, Virginia, and we have operated it continuously since then.

6. *Teaching Experience.* From 2001 through 2004, I taught an upper-level course at the University of Richmond School of Law in Complex Litigation, including the notice and other legal aspects of class actions under Fed.R.Civ.P. 23 and state law equivalents. Before that time,

beginning in the fall semester of 1997, each semester I taught a trial practice and appellate practice course at the University of Richmond School of Law to second-year students.

   7.   ***Primary Projects in the Mass Claim Area.***  I have practiced in this field since 1989.  I provide here a summary of my primary engagements in this area:

   (a)   **Dalkon Shield Claims:**  Beginning in December 1989, I was outside counsel to the three trust funds created in the Chapter 11 proceeding of the A. H. Robins Company to handle over 500,000 personal injury claims arising from the Dalkon Shield IUD, the Dalkon Shield Claimants Trust, the Dalkon Shield Other Claimants Trust, and the Breland Insurance Trust.  I served in that role until we secured court approval to close the last of the three trust facilities on April 30, 2000.  In that role, I advised the Trust's management, trustees, inside counsel, and other outside counsel in the United States and other countries on the legal and managerial aspects of the Trust's fiduciary duties, operations (including employment issues and the Trust's lease, banking, investment and other contractual relationships), claims processing arrangements, notices of deadlines, communication to claimants regarding processing and filing deadlines and coordination and design of Alternative Dispute Resolution, arbitration, and trial proceedings on Dalkon Shield Claims.  I handled the judicial proceedings arising out of implementing the bankruptcy Plan, leading to over 170 decisions by the United States District Court and the United States Bankruptcy Court for the Eastern District of Virginia and over sixty-five rulings from the Court of Appeals for the Fourth Circuit affecting various legal and operational aspects of the three trust funds.

   (b)   **Diet Drug Litigation:**  Since December 1999, I have represented Wyeth (formerly known as American Home Products Corporation) as its Liaison Counsel to the AHP Settlement Trust created pursuant to the Nationwide Class Action Settlement Agreement resolving the claims of a nationwide class of persons who used Wyeth's prescription diet medications, Pondimin® and Redux™.  The Settlement Agreement, dated November 18, 1999, was approved by the United States District Court for the Eastern District of Pennsylvania in Pretrial Order No. 1415, on August 28, 2000, in the proceedings known as *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, MDL Docket No. 1203 (E.D.Pa.).  The Settlement Agreement created a $1 billion fund to provide medical monitoring, research, drug refunds, and other benefits to persons who ingested the diet drugs, and a $2.55 billion fund to pay compensation to persons with certain medical conditions associated with use of the diet drugs.  As Liaison Counsel, I and my firm handle countless legal and administrative issues arising in the implementation of the Settlement Agreement, including notices to the class and hearings before the supervisory court on such matters.

   (c)   **Sulzer Settlement:**  Since March 2002, our firm has provided full service claims administration services to the court-appointed Claims Administrator to implement

3

      the $1 billion nationwide Class Action Settlement Agreement approved by the United States District Court for the Northern District of Ohio to resolve the claims of 27,000 class members against the parent and subsidiary companies of U.S. and Swiss defendants Sulzer, Sulzer Medica, Sulzer AG, and Sulzer Orthopedics US. The disputed claims include allegations of defective hip and knee prostheses manufactured over several years. We assisted in designing claims forms, drafting the court-approved notice to class members, and designing the claims administration processes for reviewing claims and scheduling payment. We receive and maintain an inventory of claim submissions. We designed and maintain the database to track and assist with the processing of those claims. We also staff a call center with carefully trained operators who respond to class member and attorney inquiries.

**(d)** **<u>Special Rates Litigation:</u>** From 2003 until 2006, I served as the sole Trustee of the administration of a class action settlement of certain federal employee wage claims in the United States Court of Federal Claims, *National Treasury Employees Union, et al. v. United States of America*, No. 02-128C (Special Rates Litigation). As Trustee of the $180,000,000 Special Rates Settlement Trust, I monitored the implementation of the Settlement by the claims administration firm handling the claims, the investment banking institution responsible for the Trust's funds, and the adjudication of disputed claims by a national dispute resolution firm engaged for that purpose. I also participated in the drafting and design of notices to the class on claims processing deadlines and other matters affecting the implementation of the Settlement.

    **8.** *Examples of Experience with Notice Programs.* My work as a lawyer and claims administrator regularly involves drafting the text of notices to known and unknown claimants or members of a class, designing the appearance of such notices to make them clear and understandable, and designing and implementing the method of distributing such notices in the best practicable manner to the persons or entities affected by them. On countless occasions, I have also drafted and overseen the implementation of specific campaigns to certain groups of claimants before an existing claims facility, to accelerate the disposition of stall claims, alert claimants to information and materials needed to complete their claims to be reviewed for eligibility terminations, and to advise claimants of the results of processing steps on their claims. In these matters, I have advised and participated in the implementation of notice programs to known and unknown potential claimants or class members, assessed the reasonableness and sufficiency of such notice programs, from both practical and legal perspectives, and worked with

consultants to place public notice in written and broadcast media. As a regular part of my practice, I advise companies and claims administrators and draft individual group notices to conform to applicable legal requirements and to make the text and instructions provided in such notices comprehensible and as simple as possible. In particular, I have worked on these major notice campaigns:

(a) **Notice of Final Dalkon Shield Claim Filing Deadline:** I drafted the notices and designed the entire notice campaign issued by the Dalkon Shield Claimants Trust to provide public notice of the final deadline for the submission of any claim relating to the Dalkon Shield device to the claims facility. This campaign included a publication in mid-April 1994, in sixty-eight newspapers in the United States and internationally, of a quarter-page notice explaining the final claims deadline and the steps necessary to submit a claim before the deadline. The supervisory court found this notice to be sufficient to advise potential claimants, whose identities could not be determined through due diligence, of the deadline and the opportunity to receive compensation through the claims resolution process. *See In re A.H. Robins Co. (Smith v. Dalkon Shield Claimants Trust)*, 197 B.R 495 (E.D. Va.1995); *In re A.H. Robins Co. (Allen v. Dalkon Shield Claimants Trust)*, 197 B.R 501 (E.D. Va. 1995); *In re A.H. Robins Co. (Warren v. Dalkon Shield Claimants Trust)*, 197 B.R 503 (E.D. Va. 1995); *In re A.H. Robins Co. (Rothbard v. Dalkon Shield Claimants Trust)*, 197 B.R 509 (E.D. Va. 1996); *In re A.H. Robins Co. (Bennett v. Dalkon Shield Claimants Trust)*, 204 B.R 194 (E.D. Va. 1996).

(b) **Dalkon Shield Claims Materials Deadline:** I drafted the text of and designed the mailing to provide actual notice to known Dalkon Shield claimants who had failed to complete their claims by the August 1, 1994 materials deadline to submit materials for consideration. We mailed this notice to approximately 7,000 such claimants. The supervisory court endorsed the legal sufficiency and the adequacy of this actual notice in *In re A.H. Robins Co. (Hamilton v. Dalkon Shield Claimants Trust)*, 197 B.R 505 (E.D. Va. 1995).

(c) **Initial Notice of Diet Drug Settlement:** As counsel to Wyeth, I participated in the implementation of the notice campaign to provide notice of the preliminary approval of the national class action settlement of the diet drug litigation. This campaign included a television commercial broadcast 106 times over a period of five weeks on network television and 781 times, for six consecutive weeks, on various cable networks. It also included a summary notice that appeared repeatedly in several magazines between January and March 2000, and as a one-third page black and white advertisement in four national newspapers, 77 local newspapers, three newspapers distributed throughout the United States territories and four newspapers targeted to the Hispanic market. This summary notice was also published in a variety of publications targeted to health care providers and pharmacists. The notice was mailed to all pharmacists in the United States,

        physicians who were likely to have prescribed the diet drug to patients, and to a mailing list of known diet drug users. The actual notice was an extensive packet of materials that included an Official Court Notice, a simpler Guide to Class Members, and claim forms. The mailing vendor selected by the parties for this notice mailed over 1,175,750 notices to known class members. This notice campaign was approved by the supervisory court as sufficient in *Brown v. American Home Products Corporation,* (*In re Diet Drugs Products Liability Litigation)*, MDL No.1203, 2000 WL 1222042 (E.D. Pa. 2000).

**(d)** **Notice of Final Judicial Approval of the Diet Drug Settlement:** As required by the Settlement Agreement in the diet drug litigation, I, along with Class Counsel and other parties, drafted the Official Court Notice mailed in February 2002 to over 830,500 persons on the official notice list, of the final judicial approval of the settlement, the claims filing and medical diagnosis deadline dates affected by the date of final approval, the terms of the Settlement Agreement and benefits available, the steps required to seek benefits or opt out of the settlement, and the consequences of failing to act by the deadlines.

**(e)** **Notice of Claims Deadline in the Diet Drug Settlement:** In December 2002 through January 2003, as counsel to Wyeth, I, Class Counsel, and other counsel drafted the Official Court Notice of the May 3, 2003 diagnosis and claims filing deadline established by the diet drug Settlement Agreement. This notice again described the terms of the settlement and benefits available, and the actions required to register for benefits before the final May 3, 2003 deadline. The Trust mailed these notices January – February 2003 to over 743,200 class members on the official Notice List.

**(f)** **Notice Administrator of Nextel Communications Settlement:** In January of 2004 I served as an expert witness and advisor to the court on the adequacy of notification procedures in a large consumer class action involving improper monthly billing by Nextel Communications. The notice campaign reached nearly five million class members.

**(g)** **Notice of Seventh Amendment to the Diet Drug Settlement:** In June 2004 through September 2004, as counsel to Wyeth, I, Class Counsel, and other counsel drafted the Official Court Notice of the Seventh Amendment to the Settlement Agreement. This notice described the terms of the Seventh Amendment, explained what benefits were available to class members under the agreement and provided direction to class members intending to object to or opt out of the new agreement. BrownGreer mailed these notices from September – November 2004 to over 525,000 class members in the Trust database.

**(h)** **Notice Administrator of Children's Ibuprofen Oral Suspension ("CIOS) Settlement:** In 2006 I served as Notice Administrator in a class action settlement that resulted in charitable donations to resolve claims of antitrust activities by two drug producers in the sale of Children's Ibuprofen. I oversaw the dissemination of the notice in multiple national publications and designed and implemented an

6

internet notification campaign while also creating and maintaining a website for class member communications. The notice campaign reached nearly 10,000 potential class members via internet and newspaper publication.

9. *Materials Reviewed in Connection with this Declaration.* I reviewed the following materials to report on the administration of the Notice Program and the distribution of the Notice Fund:

    (a) Preliminary Approval Order for Ovcon Settlement;

    (b) Short and Long Form Notices of the Settlement;

    (c) Proof of Publication affidavit from *USA Today*;

    (d) Official website for the Ovcon Settlement;

    (e) Advertising reports from Gorilla Nation Women's Channel, iVillage, and Punch Inc.; and

    (f) Records of mail and telephone calls received by the Notice Administrator.

10. *Publication of Notice by Newspaper.* As approved by the Court in the Preliminary Approval Order, the Short Form Notice ran in the weekend edition of USA Today from Friday, August 3, 2007, through Sunday, August 5, 2007. A copy of the Notice as published in USA Today is attached as Exhibit A. Proof of publication in the form of an Affidavit from USA Today is attached as Exhibit B. Running the publication in a national newspaper provided an estimated circulation of 2.5 million and estimated readers of 5.2 million.

11. *Publication of the Notice through the Internet.*

    (a) **Summary**: In addition to the newspaper publication, the notice plan also included an internet strategy to increase the likelihood that class members would be notified of the settlement.

        (1) **Gorilla Nation Women's Channel:** An advertisement for the notice and settlement website ran as a banner ad on the Gorilla Nation Women's Channel

7

network of websites from August 3, 2007, through August 30, 2007. A copy of the banner ad on the Gorilla Nation's websites is attached as Exhibit C. The advertisement was available to be viewed 38,196,524 times during the notice period.

 **(2)**   **iVillage:** An advertisement for the notice and settlement website also ran as a banner ad on the iVillage network of websites from August 3, 2007, through August 30, 2007. A copy of the banner ad on the iVillage websites is attached as Exhibit D. The advertisement was available to be viewed 5,253,089 times during the notice period.

 **(3)**   **Internet Service Provider Banner Ads:** An advertisement for the notice and settlement website appeared as a banner ad on the home pages of the Internet Service Providers America Online, MSN and Comcast from August 3, 2007, through August 30, 2007. On America Online, the ad was available to be viewed 3,333,928 times. On MSN, the ad was available 11,060,995 times. On Comcast, the ad was available 5,007,769 times. An example of the banner ad on an Internet Service Provider's website is attached as Exhibit E.

 **(4)**   **Google Adwords and Yahoo Keywords:** The internet strategy included 20 keyword searches on the Google and Yahoo search engines. When a user entered any of these 20 keywords, the website for the Ovcon settlement appeared as a sponsored link. Through Google and Yahoo searches, users were able to view the link for the settlement website 322,424 times. A screenshot showing the Ovcon settlement website as a sponsored link on Google and Yahoo is attached as Exhibit F.

 **(5)**   **PR Newswire:** On August 3, 2007, a press release was issued through PR Newswire Service (US1), reaching over 4,000 newspapers, magazines, national wire

services, and broadcast networks that are located in all 50 states and the District of Columbia. In addition, PR Newswire US1 distributes notices to 3,600 computer on-line databases, where the notices are automatically displayed on websites. A copy of the press release issued by PR Newswire is attached as Exhibit G.

12. ***Toll-Free Telephone Number and Settlement Website:*** The official website for the Ovcon settlement is located at www.ovcon35settlement.com. A copy of the website is attached as Exhibit H. The website was active and available to internet users beginning on August 3, 2007. The website contains a brief description of the settlement, contact information for Class Counsel, a copy of the Short Form Notice, a copy of the Long Form Notice, and a copy of the Settlement Agreement between the parties.

Beginning August 3, 2007, the office of the Notice Administrator started receiving calls on the toll-free telephone line of 866-866-1729 reserved for class members of the Ovcon settlement. Twenty persons left messages for the office of the Notice Administrator indicating they saw the internet or print notice and inquiring further about the Ovcon settlement. In their messages, callers identified their usage of Ovcon and requested information about the settlement. In every instance but one, representatives from the office of the Notice Administrator provided the requested information either by speaking directly to the person who called or leaving a detailed message and did so within a reasonable amount of time. In the one instance where a message was not returned, a return call to the phone number given by a potential class member was not answered and no messaging service was available for a representative from the office of the Notice Administrator to leave a message.

13. ***Mail Received by the Notice Administrator.*** The deadline for Class Members to seek exclusion from the Settlement was September 17, 2007. No Class Members

9

contacted the Notice Administrator to opt out or seek exclusion from the Settlement. On September 21, 2007, the office of the Notice Administrator did receive an objection to the settlement, which was promptly forwarded to Class Counsel. This objection did not bear a postmark. It was in a metered envelope with no date on the metered postage.

14. *Accounting of the Notice Fund*. The amounts spent from the Notice Fund are as follows:

| | **Distributions from the Notice Fund** | |
|---|---|---|
| | **Distribution Type** | **Dollar Amount** |
| 1. | **Spurrier Media Group:** Placement of Notice in USA Today | $46,800 |
| 2. | **Gorilla Nation Women's Channel:** Placement of banner advertisement for Notice and Settlement on websites | $94,500 |
| 3. | **iVillage:** Placement of banner advertisement for Notice and Settlement on websites | $63,000 |
| 4. | **Punch:** Placement of banner advertisement for Notice and Settlement on websites | $65,038.77 |
| 5. | Keyword searches and sponsored results on **Google** search engine and **Yahoo** search engine | $140.02 |
| 6. | **PR Newswire:** Press release including settlement Notice | $1,385 |
| 7. | **BrownGreer PLC:** Fees and expenses as Notice Administrator | $20,000 |
| 8. | **Total Disbursements** | $290,863.79 |
| 9. | **Remaining Balance in Notice Fund** | $9,136.21 |

I, Orran L. Brown, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on this 2nd day of October, 2007.

_____
Orran L. Brown