UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE COHEN and SUNDA CROONQUIST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT PUBLIC LIMITED COMPANY, WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC.,<br><br>Defendants. | Civil Action No: 1:06CV00401 (CKK)<br><br>Jury Trial Demanded |

**DECLARATION OF ROBERT W. SINK IN SUPPORT OF
JOINT MOTION FOR FINAL APPROVAL OF THE SETTLEMENT**

**Robert W. Sink declares as follows:**

1. I am principal of the Law Offices of Robert W. Sink. I have successfully served as lead or co-lead counsel in several class actions, including *Davidson v. AIG WarrantyGuard, Inc. and Best Buy, Inc.* (National class settlement); *Grant v. Bridgestone/Firestone, Inc.; Schaeffer v. County of Berks, et al.* (State class settlement); *Sochin v. Master Lock Company* (National class settlement); and *Garelick v. NERO, et al.* (National class settlement pending final approval). Moreover, I am a member of the Executive Committee on behalf of consumer plaintiffs in the Provigil Antitrust Litigation (*Langan*

1

*v. Cephalon, Inc., et al.*) pending in the U.S. District Court for the Eastern District of Pennsylvania, which is very similar to this action. Additionally, I am one of less than 500 lawyers nationwide who have received a Masters in Trial Advocacy. I have obtained several multimillion-dollar verdicts and recoveries for plaintiffs, and have been recognized as achieving one of the top 50 verdicts in Pennsylvania in 1999 and 2005. My achievements have been recognized in *The National Law Journal, Pennsylvania Law Weekly* and *The Legal Intelligencer.* The other lawyers who worked for the firm on this case were John Mason, Thomas Gibson and Robert Gibson. John Mason served as law clerk to Associate Justice William H. Rehnquist (OT 1975) and Fourth Circuit Judge J. Braxton Craven (1974-75), and later as Worldwide Antitrust Counsel for the Campbell Soup Company. Thomas Gibson served as law clerk to Eastern District of Pennsylvania Chief Judge John Lord (1966-67) and later as General Counsel for Bell-Atlantic, Pennsylvania. Robert Gibson has a Masters in Trial Advocacy and has served as co-counsel in other class action cases.

2. The Law Offices of Robert Sink have been appointed Class Counsel in this case, and I have overall supervisory responsibility for the prosecution of this Consumer Action. I also had primary responsibility for the negotiation of the settlement with Defendants. I have actively participated in all material aspects of this litigation, including personally participating in approximately twenty depositions, reviewing voluminous documents and electronic data, working with economic experts and consultants, researching and briefing the issues, as well as overseeing three attorneys from my office who worked on all aspects of the case.

3. After purchasing large amounts of data from IMS Health and obtaining large amounts of data from Defendants, reviewing this data, and consulting with economist Edward Heiden, Ph.D. of Heiden & Associates, we were able to calculate top-end single damages to consumers of $12 million, assuming that all consumers from each indirect-purchaser state enumerated in the Complaint were certified as members of the Class.

4. Consumer Plaintiffs faced the defense that, due to the continuation of heavy, free sampling of Ovcon by Warner Chilcott, the agreements were not anti-competitive. Defendants alleged that consumers would have paid more for generic Ovcon than for the sampled branded Ovcon. To support this contention, Defendants provided the expert testimony and analyses by Drs. Sumanth Addanki, Gregory Bell, Henry Grabowski, John Hauser and Jerry Hausman. Specifically, Defendants alleged that if a generic version of Ovcon had entered the market, Warner Chilcott would have stopped distributing free samples to physicians. Defendants' experts opined that the savings to consumers from free samples given before a generic entered the market resulted in a lower price for the branded product than consumers would have received when a generic entered the market and sampling ceased. Defendants also alleged, and supported by economist Henry Grabowski, Ph.D., that as a result of sampling consumers were not harmed by the Agreement. If Defendants' sampling argument was accepted, a jury could have found that no violation of the antitrust laws had occurred, or that even if a violation had occurred, Plaintiffs' total damages would be zero.

5. Based on the formidable defenses enumerated above, there was a substantial risk that a finder of fact would find in favor of Defendants or, alternatively, find in favor of Plaintiffs yet still award no damages.

6. After hotly contested arms-length settlement discussions spanning several months, Class Counsel negotiated a $6 million fund on behalf of consumers.

7. Although no data is available to precisely calculate the exact number of consumers in the Class, we have estimated there to be two million Class Members.

8. Since the value of the consumer fund was $6 million, and there were two million Class Members, it became clear that the cost of administering individual claims and the cost to consumers to obtain required records and proof of claims would swallow any individual recoveries.

9. Since individual distributions were not economically feasible, it became evident that a resolution involving a product donation to universities, health clinics, physicians who do not receive free samples, and charitable organizations was the most viable way to indirectly benefit female consumers of reproductive age.

10. After negotiating the $6 million dollar fund on behalf of consumers, Class Counsel separately negotiated with Defendants regarding attorneys' fees, expenses, incentive awards, and who should bear the costs of notice. Following these subsequent arms-length negotiations, the parties agreed that Defendants would create a $2 million fund for attorneys' fees, expenses and incentive awards, subject to Court approval, and a $300,000 fund for notice publication costs. The funds for attorneys' fees, expenses and incentive awards and for notice publication costs have been paid separately by Defendants and in no way diminish the $6 million recovery on behalf of the Class.

11. This settlement provides for a Product Donation with a retail value of $6 million. Additionally, Defendants have escrowed a $2 million fund for attorneys' fees, expenses and incentive awards, and a $300,000 fund for notice publication costs. In calculating

the total value of a settlement, it is appropriate to regard fees paid by the Defendants as comprising part of the constructive common fund. *See In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839, at * 9 (D.D.C. July 16, 2001). Thus, the total value of the settlement here is $8.3 million.

12. This settlement has a value that exceeds 75 percent of the Class Counsel's highest estimate of single damages.

13. Based upon my training, experience, and knowledge of the facts of this case, I believe that this settlement is an excellent result, and certainly is fair, reasonable and adequate. I am aware of numerous other cases where settlements with dramatically smaller percentages of single damages have been approved. *See, e.g., In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *14-*15 (E.D.Pa. June 2, 2004) (collecting cases in which courts have approved settlements of 5.35% to 28% of estimated single damages in complex antitrust actions).

14. This same type of product donation settlement was approved by Judge Huvelle, with the assistance of Magistrate Judge Kay, of this Court in *Puleo v. Perrigo Company, et al.*, 1:04-cv-01474 (ESH) (consolidated under *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, 1:04-mc-0535 (ESH)).

15. This settlement indirectly benefits consumers by donating $6 million worth of free oral contraceptive products to universities, health clinics, physicians who do not receive free samples, and charitable organizations for distribution to women. Recently, the *Wall Street Journal* reported that drug companies have stopped offering discounts for birth control pills to university health services, and that "[h]ealth professionals say it's particularly critical for college women to have access to cheap contraception." *College*

*Students Face Rising Birth-Control Prices*, Wall St. J., July 26, 2007, at D1. That the proposed settlement allows for Warner Chilcott and Barr to provide samples to university health centers demonstrates one clear way in which the settlement, though not a direct distribution to consumers, is designed to and will inure to the benefit of Ovcon consumers.

16. Following the publication of notice to the Class, I received numerous telephone calls from Class Members who expressed that they were pleased with the product donation giving women free access to birth control.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.


October 2, 2007                                             /s/ Robert W. Sink
                                                                 Robert W. Sink