# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br><br>**STEPHANIE COHEN and SUNDA** )<br>**CROONQUIST, individually and on behalf of** )<br>**all others similarly situated,** )<br> )<br>**Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**WARNER CHILCOTT PUBLIC LIMITED** )<br>**COMPANY, WARNER CHILCOTT** )<br>**HOLDINGS COMPANY III, LTD.,** )<br>**WARNER CHILCOTT CORPORATION,** )<br>**WARNER CHILCOTT (US) INC., WARNER** )<br>**CHILCOTT COMPANY, INC., GALEN** )<br>**(CHEMICALS), LTD., and BARR** )<br>**PHARMACEUTICALS, INC.,** )<br> )<br>**Defendants.** )<br>_____ ) | Civil Action No: 1:06CV00401 (CKK)<br><br>Jury Trial Demanded |

---

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES, AND AUTHORIZATION TO DISTRIBUTE THE REMAINING FUNDS IN THE NOTICE ACCOUNT TO CHARITY

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................ii

I.     INTRODUCTION .............................................................................................2

II     HISTORY OF THE LITIGATION ..................................................................4

III.   THE FEE REQUEST IS FAIR AND REASONABLE .....................................5

       A.     Methods Used by Courts to Assess
              the Reasonableness of Attorneys' Fees ..................................................5

       B.     The Percentage of Recovery Method is Required for
              Constructive Common Fund Cases ..........................................................5

       C.     Determining the Amount of the "Constructive Common Fund" ..............6

       D.     The Requested Fee Award is Fair and Reasonable ..................................7

              1.     The Excellent Result Obtained .....................................................8

              2.     Risk of Nonpayment .....................................................................9

              3.     Skill and efficiency of Class Counsel ........................................11

              4.     Absence of substantial objections by members of the Class .....11

              5.     Complexity and duration of the litigation ..................................12

              6.     Fee awards in similar cases ........................................................13

       E.     A Lodestar Analysis Confirms the Reasonableness of the Fee .............15

IV.    REIMBURSEMENT OF CLASS COUNSEL'S EXPENSES ..........................16

V.     INCENTIVE AWARDS TO NAMED PLAINTIFFS ....................................16

VI.    CHARITABLE DONATION FROM NOTICE FUND ..................................18

VII.   CONCLUSION ...............................................................................................18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045 (2d Cir. 1973) ............... 4, 19

*Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd,* 899 F.2d 21 (11th Cir. 1990) ) ............... 10

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) ............... 9

*Hawaii* v. *Standard Oil Co.,* 405 U.S. 251 (1972) ............... 17

*In re Baan Co. Sec. Litig.,* 284 F. Supp. 2d 62 (D.D.C. 2003) ............... 12

*In re Baan Securities Litig.,* 288 F. Supp. 2d 14 (D.D.C. 2003) ............... 15

*In re Buspirone Antitrust Litig,* No. 01-CV-7951 (JGK) (S.D.N.Y. Apr. 11, 2003) ............... 14

*In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 26, 2002) ............... 14

*In re Childrens' Ibuprofen Oral Suspension*, Misc. No. 1:04-mc-0535 (ESH)
    (D.D.C. Dec. 11, 2006) ............... 9

*In re Linerboard Antitrust Litig.,* MDL No. 1261,
    2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ............... 3, 9, 11

*In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369 (D.D.C. 2002) ............... 17

*In re Lorazepam & Clorazepate Antitrust Litig.,* MDL Docket No. 1290,
    2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003) ............... 11, 14, 16, 17

*In re Newbridge Networks Sec. Litig.,* 1998 WL 765724 (D.D.C. 1998) ............... 12

*In re Motorports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329 (N.D. Ga. 2000) ............... 12

*In re Relafen Antitrust Litig.,* No. 01-12239-WGY (D. Mass. Apr. 9, 2004) ............... 14

*In re Remeron Direct Purchaser Antitrust Litig.,*
    Master Docket No. O3-CV-0O85 (FSH) (D.N.J. Nov. 9, 2005) ............... 13

*In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839
    (D.D.C. July 16, 2001) ............... *passim*

*Jones v. Diamond,* 636 F.2d 1364 (5th Cir. 1981) ............... 9

*Kahan* v. *Rosenstiel,* 424 F.2d 161 (3d Cir. 1970) ........................................................... 17

*North Shore Hematology-Oncology Associates, P. C. v. Bristol-Myers Squibb Co.*,
    No. 1:04cv248 (EGS) (D.D.C. Nov. 30, 2004) ........................................................... 13

*Oncology & Radiation Associates, P. A. v. Bristol-Myers Squibb Co.,*
    No. l:01CV02313 (EGS) (D.D.C. Sept. 3, 2003) ........................................................ 14

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C.Cir.1993) ..................................... 5, 7, 15

## I.    INTRODUCTION

This hotly-contested and extensively-litigated Consumer Action[1] was handled on a purely contingent basis by one law firm with four lawyers.  The attorneys, Robert Sink, John Mason, Thomas Gibson, and Robert Gibson, spent in excess of 3,600 hours, without any compensation whatsoever, litigating this case to a successful resolution on behalf of consumers.  Unlike actions brought on behalf of direct purchasers and third-party payors, which had numerous firms to divide-up work and share expenses, Class Counsel handled all of the work and bore all of the expenses of the Consumer Action alone.  The over 3,600 hours spent litigating this case included obtaining and reviewing tremendous amounts of data from Defendants, as well as purchasing significant amounts of data from IMS Health (a recognized industry source of data in the pharmaceutical industry).  Class Counsel reviewed this data, retained and consulted with an expert economist and other economic consultants, and obtained an expert report on class certification.  Class Counsel reviewed over one million documents produced during discovery, and participated in approximately twenty depositions in New York, Los Angeles, Washington, D.C., and New Jersey.  Class Counsel also drafted numerous briefs, including Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss, Plaintiffs' Response to Order to Show Cause, and Plaintiffs' Motion for Class Certification.

As a result of Class Counsel's efforts, and following several months of arms-length settlement discussions that included the assistance of Magistrate Judge Kay, Class Counsel negotiated a settlement pursuant to which Warner Chilcott and Barr will each

---

[1] Unless otherwise noted, capitalized terms are used herein as defined in the Consumer Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Preliminary Approval of the Settlement, filed with the Court on June 5, 2007 ("Plaintiffs' Preliminary Approval Memo"), or in the Settlement Agreement Between Consumer Plaintiffs and Defendants, signed on May 16, 2007 and appended as Exhibit A to Plaintiffs' Preliminary Approval Memo.

donate $3 million worth of combined hormonal contraceptive products, for a total

product donation worth $6 million at retail value.  Warner Chilcott and Barr have also

paid $1 million each, for a total of $2 million, into a fund which, subject to Court

approval, will be used to pay reasonable attorneys' fees and expenses incurred by

Plaintiffs' counsel and any incentive awards to the named Plaintiffs.  Additionally,

Warner Chilcott and Barr paid $150,000 each into a fund that was used to provide notice

to the Settlement Class and pay for notice administration expenses.  The funds for

attorneys' fees, expenses and incentive awards and for notice publication costs have been

escrowed separately and in no way diminish the $6 million Class recovery.  In calculating

the total value of the settlement, it is appropriate to regard fees and expenses paid by the

Defendants as comprising part of the settlement fund.  *See, e.g., In re Vitamins Antitrust*

*Litig.*, MDL No. 1285, 2001 WL 34312839, at * 9 (D.D.C. July 16, 2001).  Thus, the

total value of this settlement is $8.3 million.

     This is an excellent result, and represents 75 percent of single damages, as

estimated by Class Counsel.  By comparison, courts have routinely approved settlements

of 5.35 to 28 percent of estimated single damages in other complex antitrust actions.  *In*

*re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *14-*15

(E.D.Pa. June 2, 2004) (collecting cases in which courts have approved settlements of

5.35 to 28 percent of estimated single damages in complex antitrust actions).  The result

achieved in this case is even more impressive in light of the formidable defenses raised

by Defendants, which pose a substantial risk that a jury could find that Consumer

Plaintiffs' total damages were nominal or zero.  If not for Class Counsel's efforts, there

would be no recovery for consumers at all.  Class Counsel – a small firm – bore

incredible risk by devoting over 3,600 hours of time and incurring over $100,000 in expenses while facing the very real prospect that they would receive nothing at all. Indeed, no other firm chose to take on a Consumer Action with its attendant risks.

Accordingly, Class Counsel respectfully request attorneys' fees of $1,880,293.13 – approximately twenty three percent of the value of the recovery – even though markedly higher percentages have been awarded in antitrust class action cases involving less work, less risk, and less successful results. Class Counsel also respectfully requests reimbursement of expenses totaling $104,706.87, and incentive awards of $7,500 to each of the Class Representatives. Defendants do not oppose these requests and have paid $2 million into a separate escrow account pending final approval. Fee awards of the type requested here encourage and support meritorious class actions and thereby promote private enforcement of, and compliance with, antitrust laws. The circumstances of this case underscore the critical notion that "[i]n the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced…" *Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973).


## II.    HISTORY OF THE LITIGATION

The history of this litigation is detailed in the parties' Memorandum of Law in Support of Joint Motion for Final Approval of the Settlement, and in the interest of judicial economy, are incorporated herein and will not be repeated.

III.     **THE FEE REQUEST IS FAIR AND REASONABLE**

   A.  **Methods Used by Courts to Assess the Reasonableness of Attorneys' Fees.**

   A majority of courts utilize one of two approaches to assess the reasonableness of
requests for attorneys' fees:  the percentage-of-recovery method or the lodestar method.
See *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839, at * 2 (D.D.C.
July 16, 2001).  In common fund cases, courts typically employ the percentage-of-
recovery method.  *Id.*  In statutory fee-shifting cases, courts frequently employ the
lodestar method.  *Id.*  As explained below, the instant settlement is a constructive
common fund.  The percentage-of-recovery method to calculate the reasonableness of
Class Counsel's fee is appropriate in constructive common fund cases and should be
applied here.  *Id.*  Nonetheless, under either the percentage-of-recovery method or the
lodestar method, Class Counsel's fee request is fair and reasonable.


   B.  **The Percentage of Recovery Method is Required for Constructive**
       **Common Fund Cases.**

   "Under the percentage of recovery method, a court assesses the reasonableness of
the attorneys' fees based upon the percentage of the settlement fund that the fee
comprises."  *Vitamins,* 2001 WL 34312839, at *3.  "A growing number of courts,
including those in this Circuit, have embraced the percentage-of-recovery method in
common fund cases."  *Id. citing Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1267
(D.C.Cir.1993).  Moreover, Chief Judge Hogan has held that the percentage of recovery
method is required when a settlement, like this one, is a constructive common fund.  *Id*. at
*2.

"In a true common fund case, the attorneys' fees would be taken from a fund shared in common with class plaintiffs; therefore, the amount recovered by plaintiffs is reduced by the amount awarded in attorneys' fees." *Id*. at *4. But when a settlement has separate funds for class recovery and attorneys' fees, it is labeled a "constructive common fund." *Id*. Here, a $6 million fund was negotiated on behalf of consumers. Since the value of the consumer fund was $6 million, and there were two million Class Members, it became clear that the cost of administering individual claims and the cost to consumers to obtain required records and proof of claims would swallow any individual recoveries. Since individual distributions were not economically feasible, it became evident that a resolution involving a product donation to universities, health clinics, physicians who do not presently receive free samples from Defendants, and charitable organizations was the most viable way to indirectly benefit female consumers of reproductive age. Thus, a Product Donation with a value of $6 million for the indirect benefit of consumers was agreed upon and recovered. Separate funds were negotiated, and escrow accounts were created, for attorneys' fees and costs. Since the settlement provides a fund for Class recovery and separate funds for attorneys' fees and costs, it is a constructive common fund. Accordingly, the percentage-of-recovery method should be applied here to assess the reasonableness of the attorney's fees. *See Vitamins*, 2001 WL 34312839, at *3.

### C.  Determining the Amount of the "Constructive Common Fund."

After determining that the percentage of recovery method is appropriate, the court must establish the amount of the constructive common fund. *Vitamins*, 2001 WL

34312839, at *7.  Here, the Product Donation has a retail value of $6 million.

Additionally, Defendants have each deposited $1 million into an escrow account from

which, with Court approval, attorneys' fees, expenses and incentive awards will be paid.

Defendants also each deposited $150,000 into a fund for notice publication costs.  In

*Vitamins*, Chief Judge Hogan held that attorneys' fees should be regarded as comprising

part of a constructive common fund.  *Id*. at *9 (further observing that it has been

"…recognized that in constructive common fund cases, where attorneys' fees are borne

by defendants and not plaintiffs, that the attorneys' fees nonetheless are a valuable part of

the settlement and thus fairly characterized as part of the common fund").  Thus, the total

value of the constructive common fund is $8.3 million.


### D.  The Requested Fee Award is Fair and Reasonable.

This Circuit has not "…developed a formal list of factors to be considered in

evaluating fee requests." *Vitamins*, 2001 WL 34312839, at *11.  Trial courts enjoy

"…substantial discretion in making reasonable fee determinations."  *Swedish Hosp.*

*Corp.,* 1 F.3d at 1271.  Courts in this Circuit have looked to a number of factors,

including those addressed below.  *See, e.g., Vitamins,* 2001 WL 34312839, at *11.

(listing factors commonly considered).  Class Counsel submit that numerous factors -

including the excellent result obtained, the substantial risk of nonpayment, the skill and

efficiency of Class Counsel, the absence of substantial objections by members of the

Class, the complexity and duration of the litigation, and fee awards in similar cases  - all

weigh firmly in favor of the requested fee.

### 1.    The excellent result obtained.

An important factor to be considered in assessing the reasonableness of a fee request is "…the amount involved and the results obtained."  *Vitamins*, 2001 WL 34312839, at *11.  Here, the value of the constructive common fund created on behalf of consumers is $8.3 million.  Consumer Plaintiffs, who retained economist Edward Heiden, Ph.D., calculated top-end single damages of approximately $12 million, assuming that consumers in all of the indirect purchaser states were certified as a Class.  Thus, Class Counsel have achieved a settlement with a value exceeding 75 percent of their estimated single damages.  Declaration of Robert W. Sink (Exhibit A) ("Sink Decl."), ¶ 7.

This result is even more impressive in light of the fact that Consumer Plaintiffs faced the formidable defense that, due to the continuation of substantial free sampling of Ovcon by Warner Chilcott, the agreements were not anti-competitive.  Defendants' experts opined that the savings to consumers from free samples given before a generic entered the market resulted in a lower price for the branded product than consumers would have received when a generic entered the market and sampling ceased.  Warner Chilcott's expert, Henry Grabowski, Ph.D., opined that, as a result of sampling, the Agreement between Warner Chilcott and Barr provided consumers with substantial benefits and that both consumer and total surplus were higher as a result of the agreement than they would have been had a generic version of Ovcon entered the market.  Thus, Consumer Plaintiffs faced the very real possibility that, even if they overcame the daunting task of proving an antitrust violation at trial, they would recover minimal or no damages.  Nonetheless, Class Counsel, through their hard work, were able to secure a recovery of approximately 75 percent of their estimated single damages.  Moreover, that

estimate does not take into account the potential impact of Defendants' free sample

defense both on the ability of Consumer Plaintiffs to prove liability and the amount of

any single damage recovery; accordingly, the recovery secured by Class Counsel is

substantially greater than 75% when the potential effect of free samples is considered.[2]

This settlement reflects an excellent result and is considerably higher than

recoveries in other complex antitrust class action cases.  *See, e.g. In re Childrens'*

*Ibuprofen Oral Suspension*, Misc. No. 1:04-mc-0535 (ESH) (D.D.C. Dec. 11, 2006)

(approximately 25 percent of total damages approved); *In re Linerboard Antitrust Litig.*,

MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *14-*15 (E.D.Pa. June 2, 2004)

(collecting cases in which courts have approved settlements of 5.35 to 28 percent of

estimated single damages in complex antitrust actions).  The size of the settlement in

relation to estimated single damages reflects an excellent and hard-won result that weighs

heavily in favor of granting the requested fee.


      **2.**       **Risk of nonpayment.**

Another factor in assessing the reasonableness of a fee is the risk of nonpayment.

*Vitamins,* 2001 WL 34312839, at *11.  Indeed, many courts emphasize that attorneys'

risk is "perhaps the foremost factor" in determining an appropriate fee award.

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 54 (2d Cir. 2000); *See also Jones v.*

*Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981) (Lawyers who are to be compensated only

in the event of victory are entitled to be paid more when successful than those who are

---

[2]     As set forth in the Memorandum of Law in Support of Joint Motion for Final Approval of the
Settlement at pp. 9-12, the Consumer Plaintiffs faced substantial additional risks in establishing liability,
including the difficulty of proving factually that the relevant product market for antitrust purposes is limited
to branded Ovcon 35 and the generic version that Barr might have introduced and does not include the
more than 80 combined hormonal contraceptives that are equally efficacious means of birth control.

assured of compensation regardless of result). Here, the risk of nonpayment was substantial.

Class Counsel handled this case on a purely contingent basis. Class Counsel bore incredible risk by devoting over 3,600 hours of time, without pay, and incurring over $100,000 in out-of-pocket expenses while facing the substantial prospect that they would receive nothing at all. Unlike actions brought by direct purchasers and third-party payors, which had numerous firms to spread the risk, Class Counsel bore the entire risk of this Consumer Action alone. Moreover, Consumer Plaintiffs faced numerous defenses raised by Defendants, and faced a substantial risk that, even if they overcame the daunting task of proving an antitrust violation at trial, they would recover minimal or no damages.

To date, Class Counsel have not received any compensation, despite working over 3,600 hours and incurring over $100,000 in out-of-pocket expenses. In *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990), the Court noted that:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.… A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* (citations omitted).

Here, the contingent nature of this case and the substantial risk borne by Class Counsel weigh heavily in support of the requested fee of twenty-three percent.

### 3.    Skill and efficiency of Class Counsel.

Class Counsel is highly skilled at trying complex cases to verdict, and have obtained several extraordinary and newsworthy recoveries. Class Counsel is actively engaged in other antitrust litigation in the pharmaceutical industry and in other complex class action cases. Sink Decl., ¶ 1. Despite this, "[t]he result achieved is the clearest reflection of petitioners' skill and expertise." *Linerboard,* 2004 U.S. Dist. LEXIS 10532, at *19. As fully described above, the excellent result here fully supports the requested fee.

Moreover, Defendants' counsel are highly experienced antitrust attorneys who regularly represent clients in complex antitrust matters. Throughout this litigation, Defendants' counsel have vigorously advocated their clients' position and undoubtedly would have lodged a formidable defense at trial. This, too, supports the reasonableness of Class Counsel's fee request. *See Vitamins,* 2001 WL 34312839, at *11 ("experience, skill and professionalism of counsel and the performance and quality of opposing counsel all weigh in favor of the requested fee"); *Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *29-*30 (approving fee award of 30 percent of settlement fund where Defendants mounted an "aggressive and vigorous defense," and class counsel were "experienced antitrust litigators").

### 4.    Absence of substantial objections by members of the Class.

Another factor in considering the reasonableness of a fee is the absence of substantial objections by members of the Class. *Vitamins,* 2001 WL 34312839, at *11. Here, no one opted-out, and there was one objection out of approximately two million

consumers.  As fully discussed in Consumer Plaintiffs' Response to Objection to Class

Settlement and Application for Attorneys' Fees and Expenses, this sole objection is

without merit and evidences no understanding of the complex issues in this case.  Indeed,

following publication of notice to the Class, Class Counsel received numerous telephone

calls from Class Members who expressed that they were pleased with the terms of the

settlement.  Sink Decl. ¶ 9.  The fact that there was only one objection and no opt-outs

from a class of approximately two million raises a strong inference that Class Members

are satisfied with the result.  *In re Baan Sec. Litig.,* 284 F. Supp. 2d 62, 66 (D.D.C. 2003)

*citing In re Newbridge Networks Sec. Litig.,* 1998 WL 765724 at *2 (D.D.C. 1998).  This

absence of substantial objections further supports the requested fee.


     **5.**       **Complexity and duration of the litigation.**

     Another factor that should be considered in assessing the reasonableness of a

requested fee is the complexity and duration of the litigation.  *Vitamins,* 2001 WL

34312839, at *11.  "An antitrust class action is arguably the most complex action to

prosecute."  *In re Motorports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1337

(N.D. Ga. 2000).  This antitrust class action involved myriad complex issues and required

substantial work and resources.  Class counsel spent over 3,600 hours working on this

case, which included obtaining and reviewing tremendous amounts of data from

Defendants, as well as purchasing significant amounts of data IMS Health (a recognized

industry source of data in the pharmaceutical industry).  Class Counsel reviewed this

data, retained and consulted with an expert economist and other economic consultants,

and obtained an expert report on class certification.  Moreover, Class Counsel reviewed

over one million documents produced during discovery and attended approximately twenty depositions in New York, Los Angeles, Washington, D.C., and New Jersey. Furthermore, multiple complex issues were researched and briefed. Briefing included Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss, Plaintiffs' Response to Order to Show Cause, and Plaintiffs' Motion for Class Certification. Additionally, in response to Defendants' sampling argument, Class Counsel spent a significant amount of time researching and investigating these issues, examining the data, and conferring with economic expert Edward Heiden, Ph.D. and his associate, Stephen McGonegal. Only after the filing of Plaintiffs' Motion for Class Certification and several months of arms-length negotiations with the assistance of Magistrate Judge Kay was the Settlement Agreement reached. As demonstrated above, this was not an instance where a settlement was reached shortly after the initiation of proceedings. Based upon the complexity, duration and substantial work involved in this case, the requested fee should be approved.

**6.    Fee awards in similar cases.**

Finally, fee awards in similar cases should be considered to assess the reasonableness of a fee request. *Vitamins,* 2001 WL 34312839, at *11. The twenty-three percent fee requested here is markedly lower than those frequently awarded by courts in other comparably complex pharmaceutical antitrust actions. *See In re Remeron Direct Purchaser Antitrust Litig.,* Master Docket No. O3-CV-0O85 (FSH) (D.N.J. Nov. 9, 2005) (awarding 33⅓ percent); *North Shore Hematology-Oncology Associates, P. C. v. Bristol-Myers Squibb Co.*, No. 1:04cv248 (EGS) (D.D.C. Nov. 30, 2004) (awarding 33⅓ percent

fee); *In re Relafen Antitrust Litig.,* No. 01-12239-WGY (D. Mass. Apr. 9, 2004)

(awarding 33⅓ percent fee); *Oncology & Radiation Associates, P. A. v. Bristol-Myers*

*Squibb Co.,* No. l:01CV02313 (EGS) (D.D.C. Sept. 3, 2003) (awarding 30 percent); *In re*

*Lorazepam & Clorazepate Antitrust Litig.,* 2003 U.S. Dist. LEXIS 12344 (D.D.C. June

16, 2003) (awarding 30 percent fee); *In re Buspirone Antitrust Litig.,* No. 01-CV-7951

(JGK) (S.D.N.Y. Apr. 11, 2003) (awarding 33⅓ percent fee); *In re Cardizem CD*

*Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 26, 2002) (awarding 30 percent fee).

These awards reflect the courts' judgments that the skill and success of counsel

should be rewarded with an appropriate fee in light of the inherent risk and substantial

investments required in prosecuting the complex cases in this field.  The fact that many

such settlements resulted in a higher recovery than this case does not cut in favor of a

reduced fee; to the contrary, the economies of scale involved in higher recoveries mean

that, if anything, a higher recovery may lead to a lower percentage of the fund.  *See*

*Vitamins,* 2001 U.S. Dist. LEXIS 25067, at *65 (noting general principle that "as the

recovery amount *increases* the percentage award of fees *decreases*") (emphasis added).

In this case, potential damages were substantially smaller than in the above-mentioned

pharmaceutical antitrust class actions because sales of Ovcon 35 were dramatically less

than sales of other "blockbuster" prescription drugs that have been the subject of antitrust

litigation.  Nonetheless, Class Counsel faced the same risks and complex issues as

attorneys in cases where the potential for recovery was greater simply because a larger

volume of purchases was at issue.  This limited potential for recovery made this case an

even riskier prospect for Class Counsel.  Tellingly, no other firm chose to take on a

Consumer Action with its attendant risks.  Thus, although a fee of at least thirty percent

or greater would be justified for the result here, Class Counsel are instead requesting a far more modest fee of twenty-three percent. Indeed, in *Vitamins*, Chief Judge Hogan found a one-third attorneys' fee recovery to be reasonable "[s]ince the percentage of recovery method is meant to simulate awards that would otherwise prevail in the market." *Vitamins*, 2001 WL 34312839, at *12. Considering fee awards in similar cases and the significant work, substantial risk, and excellent recovery in this case, Class Counsel's request for a fee of twenty-three percent is reasonable.

**E.   A Lodestar Anaylsis Confirms the Reasonableness of the Fee.**

Finally, although a lodestar approach to analyzing common fund cases may be disfavored in the D.C. Circuit, *see Swedish Hospital Corp.*, 1 F.3d at 1261 (criticizing lodestar approach in common fund cases because it, *inter alia*, "encourages significant elements of inefficiency"), Class Counsel note that the requested fee award is also reasonable when analyzed in light of a lodestar cross-check. Class Counsel expended a total of 3,653.7 hours for a lodestar of $2,006,231.50. Sink Decl., ¶ 13. Additionally, a multiplier of 2.0 is appropriate in a complex case such as this. *See, e.g., In re Baan Sec. Litig.*, 288 F. Supp. 2d 14, 19-20 (D.D.C. 2003) (finding that a multiplier of 2.0 or less falls well within a range that is fair and reasonable and citing cases with multipliers ranging between 1.15 and 8.5). Here, Class Counsel is requesting attorneys' fees of $1,880,293.18, which is less Class Counsel's lodestar without any multiplier. This is further evidence that the requested fee of twenty-three percent is reasonable.

**IV.    REIMBURSEMENT OF CLASS COUNSEL'S EXPENSES**

"With regard to expenses, '[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of … reasonable litigation expenses from that fund.'" *Vitamins,* 2001 WL 34312839, at *13. (citation omitted).  "Courts have routinely awarded expenses for which counsel would normally directly bill their client." *Id.* (citation omitted).  The expenses incurred in this litigation, totaling $104,706.87 are described in Sink Decl., ¶ 14.  These are the types of expenses that counsel would normally directly bill to paying clients in the marketplace and were reasonable and necessary for the prosecution of this lawsuit.  Indeed, "…the fact that Class Counsel were willing to expend their own money, as an investment whose reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *33.  Accordingly, Class Counsel respectfully request reimbursement of expenses of $104,706.87.


**V.    INCENTIVE AWARDS TO NAMED PLAINTIFFS**

Class Counsel respectfully request that this Court approve incentive awards in the amount of $7,500 to each of the named Plaintiffs, Stephanie Cohen and Sunda Croonquist.  The notice advised Class Members that an application for such an incentive award would be made.  No objections to the requested incentive award were received.

Ms. Cohen and Ms. Croonquist effectively fulfilled their obligations as representatives of the Class.  They fully complied with all demands placed upon them during this litigation and assisted in Class Counsel's investigation of this case.  Ms.

16

Cohen and Ms. Croonquist were willing to come forward and pursue the Class's interests by filing suit on behalf of members of the Class, and they undertook the responsibilities attendant to that position. Ms. Cohen and Ms. Croonquist provided documents and information to aid counsel, and each underwent several hours of intense cross-examination during their depositions.

In instituting this litigation, Ms. Cohen and Ms. Croonquist effectively acted as private attorneys general, seeking a remedy for what was alleged to be a public wrong. It is well recognized that private class action suits are a primary means for the effective enforcement of laws for the protection of the public. *See, e.g., Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262 (1972) (Supreme Court equating private antitrust plaintiffs to "private attorneys general"); *Kahan* v. *Rosenstiel,* 424 F.2d 161, 169 (3d Cir. 1970) (noting that effectiveness of the securities laws depends in large measure on application of the class action device).

Incentive awards to named plaintiffs "are not uncommon in class action litigation, particularly where a common fund has been created for the benefit of the entire class." *Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *34. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 400 (D.D.C. 2002) (internal quotation omitted). Accordingly, Class Counsel respectfully submit that the requested incentive awards for Ms. Cohen and Ms. Croonquist are appropriate and reasonable.

## VI.    <u>CHARITABLE DONATION FROM NOTICE FUND</u>

At the present time there remains $9,097.21 in unexpended funds in the Notice Fund. Sink Decl., ¶ 16. It is not anticipated that there will be any additional fees or costs related to giving notice. The Settlement Agreement is silent as to the use of unexpended funds. The parties agree that donating the funds to the National Women's Law Center in Washington, D.C. is an appropriate use for these excess funds.

## VI.    <u>CONCLUSION</u>

Class Counsel handled this hotly-contested and extensively-litigated Consumer Action on a purely contingent basis. Class Counsel – a small firm – bore incredible risk by devoting over 3,600 hours of time and incurring over $100,000 in expenses while facing the very real prospect that they would receive nothing at all. As a result of Class Counsels' tireless efforts, a settlement valued at $8.3 million was obtained on behalf of consumers. This was an excellent result, and represents approximately 75 percent of estimated single damages. By comparison, courts have routinely approved settlements of 5.35 to 28 percent of estimated single damages in other complex antitrust actions. This result is even more impressive in light of the formidable free sampling defense raised by Defendants, which posed a substantial risk that a jury could have found that Defendants were not liable and that Consumer Plaintiffs' total damages were in any event nominal or zero. If not for Class Counsel's efforts, there would be no recovery for consumers at all. Indeed, no other firm chose to take on a Consumer Action with its attendant risks. The circumstances of this case underscore the critical notion that "[i]n the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced…"

18

*Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973).

Accordingly, Class Counsel respectfully request that this Court approve the fee and

expense petition and enter an order awarding attorneys' fees to Class Counsel in the

amount of $1,880,293.13, reimbursement of Class Counsel's expenses of $104,706.87,

and incentive awards of $7,500 each to named Plaintiffs Stephanie Cohen and Sunda

Croonquist.

Respectfully submitted,


_____/s/_____

Robert W. Sink, Esquire, Bar No. PA0022
**LAW OFFICES OF ROBERT W. SINK**
319 West Front Street
Media, PA 19063
Tel:    610-566-0800
Fax:    610-566-4408

Dated:  October 2, 2007                    ***Attorneys for Plaintiffs***