## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **STEPHANIE COHEN and SUNDA CROONQUIST, individually and on behalf of all others similarly situated,** | ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) Civil Action No: 1:06CV00401 (CKK) ) ) Jury Trial Demanded |
| **WARNER CHILCOTT PUBLIC LIMITED COMPANY, WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC.,** | ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) |

---

## DECLARATION OF ROBERT W. SINK IN SUPPORT OF CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES, AND AUTHORIZATION TO DISTRIBUTE THE REMAINING FUNDS IN THE NOTICE ACCOUNT TO CHARITY

---

**Robert W. Sink declares as follows:**

1.    I am principal of the Law Offices of Robert W. Sink. I have successfully served as lead or co-lead counsel in several class actions, including *Davidson v. AIG WarrantyGuard, Inc. and Best Buy, Inc.* (National class settlement); *Grant v. Bridgestone/Firestone, Inc.; Schaeffer v. County of Berks, et al.* (State class settlement)*; Sochin v. Master Lock Company* (National class settlement); and *Garelick v. NERO, et al.* (National class

settlement pending final approval).  Moreover, I am a member of the Executive
Committee on behalf of consumer plaintiffs in the Provigil Antitrust Litigation (*Langan
v. Cephalon, Inc., et al.*) pending in the U.S. District Court for the Eastern District of
Pennsylvania, which is very similar to this action.  Additionally, I am one of less than
500 lawyers nationwide who have received a Masters in Trial Advocacy.  I have obtained
several multimillion-dollar verdicts and recoveries for plaintiffs, and have been
recognized as achieving one of the top 50 verdicts in Pennsylvania in 1999 and 2005.
My achievements have been recognized in *The National Law Journal, Pennsylvania Law
Weekly* and *The Legal Intelligencer.*  The other lawyers who worked for the firm on this
case were John Mason, Thomas Gibson and Robert Gibson.  John Mason served as law
clerk to Associate Justice William H. Rehnquist (OT 1975) and Fourth Circuit Judge J.
Braxton Craven (1974-75), and later as Worldwide Antitrust Counsel for the Campbell
Soup Company.  Thomas Gibson served as law clerk to Eastern District of Pennsylvania
Chief Judge John Lord (1966-67) and later as General Counsel for Bell-Atlantic,
Pennsylvania.  Robert Gibson has a Masters in Trial Advocacy and has served as co-
counsel in other class action cases.

2.     The Law Offices of Robert Sink has been appointed Class Counsel in this case, and I
have overall supervisory responsibility for the prosecution of this Consumer Action.  I
also had primary responsibility for the negotiation of the settlement with Defendants.  I
have actively participated in all material aspects of this litigation, including personally
participating in approximately twenty lengthy depositions, reviewing voluminous
documents and electronic data, working with economic experts and consultants,

researching and briefing the issues, as well as overseeing three attorneys from my office who worked on all aspects of the case.

3.    This antitrust class action involved a myriad of complex issues and required substantial work and resources.  Class counsel spent over 3,600 hours working on this case, which included obtaining and reviewing tremendous amounts of data from Defendants, as well as purchasing significant amounts of data IMS Health, a service that provides electronic data on prescription drugs and the pharmaceutical industry.  Class Counsel reviewed this data, retained and consulted with an expert economist and other economic consultants, and obtained an expert report on class certification.  Moreover, Class Counsel reviewed over one million documents produced during discovery and attended and actively participated in approximately twenty depositions in New York, Los Angeles, Washington, D.C. and New Jersey.  Many of these depositions were two days in length.  Furthermore, multiple complex issues were researched and briefed.  Briefing included Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss, Plaintiffs' Response to Order to Show Cause, and Plaintiffs' Motion for Class Certification.  Additionally, in response to Defendants' sampling argument, Class Counsel spent a significant amount of time researching and investigating these issues, examining the data, reviewing nine lengthy and complicated expert reports in the related Government actions, and conferring with economic expert Edward Heiden, Ph.D. and his associate, Stephen McGonegal.  Only after the filing of Plaintiffs' Motion for Class Certification and several months of arms-length negotiations with the assistance of Magistrate Judge Kay was the Settlement Agreement reached.

4.    After hotly-contested arms-length settlement discussions spanning several months, Class Counsel negotiated a $6 million Product Donation fund on behalf of consumers.

5.    After negotiating the $6 million dollar fund on behalf of consumers, Class Counsel separately negotiated with Defendants regarding attorneys' fees, expenses, incentive awards, and who should bear the costs of notice.  Following these subsequent arms-length negotiations, the parties agreed that Defendants would create a $2 million fund for attorneys' fees, expenses and incentive awards, subject to Court approval, and a $300,000 fund for notice publication costs.  The funds for attorneys' fees, expenses and incentive awards and for notice publication costs have been paid separately by Defendants and in no way diminish the $6 million recovery on behalf of the Class.

6.    This settlement provides for a Product Donation with a retail value of $6 million.  Additionally, Defendants have escrowed a $2 million fund for attorneys' fees, expenses and incentive awards, and a $300,000 fund for notice publication costs.  In calculating the total value of a settlement, it is appropriate to regard fees paid by the Defendants as comprising part of the constructive common fund.  *See In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839, at * 9 (D.D.C. July 16, 2001).  Thus, the total value of the settlement here is $8.3 million.

7.    This settlement has a value that exceeds 75 percent of the Class Counsel's highest estimate of single damages.

8.    Based upon my training, experience, and knowledge of the facts of this case, I believe that this settlement is an excellent result, and certainly is fair, reasonable and adequate.  I am aware of numerous other cases where settlements with dramatically smaller percentages of single damages have been approved.  *See, e.g., In re Linerboard Antitrust*

*Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *14-*15 (E.D.Pa. June 2, 2004) (collecting cases in which courts have approved settlements of 5.35% to 28% of estimated single damages in complex antitrust actions).

9.    Following the publication of notice to the Class, I received numerous telephone calls from Class Members who expressed that they were pleased with the product donation giving women free access to birth control.

10.    Class Counsel's compensation for the services rendered in this case was wholly contingent upon the success of the litigation and was totally at risk.

11.    The hourly rates utilized by Class Counsel in computing its lodestar are the usual and customary hourly rates charged for antitrust and other complex litigation.  No upward adjustment in billing rate was made, notwithstanding the contingency and risk of the matters involved, the opposition encountered, the preclusion of other employment, the delay in payment, or other factors present in this case that would justify a higher rate of compensation.

12.    The time and services provided by Class Counsel for which fees are sought in this petition are reflected in comtemporaneously-maintained records of Class Counsel.  All of the services performed by Class Counsel in connection with this litigation were reasonable and necessary in the prosecution of this case and were conducted efficiently and economically to avoid unnecessary expenditures of time and expense.

13.    Class Counsel expended an aggregate of 3,653.7 hours prosecuting this complex, contingent litigation resulting in a lodestar of $2,006,231.50 calculated at current rates. Notably, these figures do not include the time that will be expended in preparing for, traveling to, and appearing at the final fairness hearing.

14.   Class Counsel have expended a total of $104,706.87 in unreimbursed expenses in

connection with the prosecution of this litigation.  These expenses, from inception to

date, are categorized in the following chart:

| Category | Amount |
|---|---|
| Filing fee and service | $465.00 |
| Experts and consultants | $52,169.50 |
| Deposition transcripts | $12,176.50 |
| IMS Health Data | $2,375.00 |
| Scanning, copies and record retrieval | $22,016.83 |
| Electronic service and depository (SecureDealRoom) | $5,330.64 |
| Travel | $9,953.40 |
| Courier services | $220.00 |
| **Total** | **$104,706.87** |

15.   The expenses paid by Class Counsel for which reimbursement is sought in the petition

are reflected in the books and records of Class Counsel.  These books and records are

prepared from checks, bills, and expense vouchers that are regularly kept and maintained

by the firm and accurately reflect the expenses incurred.  Counsel expects to incur

additional expenses that will not be reimbursed, such as additional charges for the

electronic service and document depository (SecureDealRoom).

16.   Following distributions from the Notice Fund, there remains a balance of $9,097.21.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct.

October 2, 2007                                    /s/ Robert W. Sink
                                                   Robert W. Sink