UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE COHEN and <br> SUNDA CROONQUIST, <br> Individually and on Behalf of Others <br> Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT PUBLIC <br> LIMITED COMPANY, ET AL., <br><br> Defendants. | CIVIL ACTION NO. 1:06cv00401 (CKK) |

**REPLY IN SUPPORT OF OBJECTION TO CLASS
SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

Rita R. Morales ("Objector"), through the undersigned Counsel, files this Reply in Support of her Objection to Class Settlement and Application for Attorneys' Fees and Expenses.

**I.**

Instead of addressing the objections to the settlement, class counsel has instead chosen to make an *ad hominem* attack on Ms. Morales' counsel. The other objections that have been filed by the undersigned are separate matters that should not bear on this Court's analysis. Contrary to class counsel's suggestion, Ms. Morales' counsel is not seeking an award of attorneys' fees, without an improvement to this settlement. That has not yet been accomplished and that is the sole purpose of lodging this objection. Class counsel appears to believe that only novices should file objections; that lawyers who have filed more than one objection should somehow be disqualified. If that were the case, it would open the door to sophisticated class action plaintiffs' lawyers dealing only with unsophisticated objectors' counsel during the objection and fairness

process. That would work contrary to the purpose of having a mandated objection and fairness process to protect unnamed class members from class counsel who simply want to see a settlement approved. Ms. Morales' counsel is not suggesting any nefarious intent by class counsel here, but believes only the fairness process is not served by these sorts of *ad hominem* attacks. Moreover, without taking the bait, so to speak, Ms. Morales' counsel strenuously disagrees with the statements made by class counsel concerning the circumstances and resolution of previous objections filed by the undersigned. But to be clear, without an improvement to this settlement, Ms. Morales' counsel will not seek an award of attorneys' fees from this Court.

## II.

One fact remains unchallenged: no distribution of anything of value is being provided to consumers of the overpriced product at issue. Other indirect purchaser class actions have been settled with direct remuneration to consumers. For example, in the indirect purchaser antitrust settlements involving U.S.T. and smokeless tobacco, coupons were distributed to consumers to help compensate for the antitrust injury suffered by this class. Exhibit A. Without opining about the validity of those smokeless tobacco settlements, it is clear that if it feasible to distribute coupons to users of smokeless tobacco, it is feasible to distribute coupons for birth control pills. The Court should not be satisfied with the conclusory, self-serving statements about feasibility. It is common-sense that, at a minimum, coupons could have been distributed to Ovcon consumers. Without *something* of value going to the class of Ovcon birth control consumers, Objector does not believe the settlement should be approved.

WHEREFORE, PREMISES CONSIDERED, Objector respectfully requests the Court grant these objections to the class settlement and attorneys' fees and deny the parties' request to approve their proposed settlement.

Respectfully submitted,


By: _____/s/ John E. Carpenter_____
Mr. John E. Carpenter, Esq.
Bar No. 420756
910 17th Street NW  Suite 800
Washington, D.C.  20006
(202) 887-5445  Telephone
(202) 293-3596 Telecopier
Jecindc1@aol.com


Christopher A. Bandas
State Bar No. 00787637
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78411
(361) 698-5200 Telephone
(361) 698-5222 Telecopier

ATTORNEYS-IN-CHARGE FOR OBJECTOR

## CERTIFICATE OF SERVICE

On this the 12th day of October, 2007, a true and correct copy of the above and foregoing instrument was duly served by certified mail, return receipt requested upon the following counsel of record:

Robert W. Sink
319 West Front Street
Media, PA 19063

Ovcon Notice Administrator
P.O. Box 85006
Richmond, VA 23285-5006

/s/ John E. Carpenter
Mr. John E. Carpenter

Table of Contents

UST Inc.
**NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS (continued)**

*Smokeless Tobacco Litigation*

The Company is named in certain actions in West Virginia brought on behalf of individual plaintiffs against cigarette manufacturers, smokeless tobacco manufacturers, and other organizations seeking damages and other relief in connection with injuries allegedly sustained as a result of tobacco usage, including smokeless tobacco products. Included among the plaintiffs are three individuals alleging use of the Company's smokeless tobacco products and alleging the types of injuries claimed to be associated with the use of smokeless tobacco products. These individuals also allege the use of other tobacco products.

The Company is named in an action in Florida by an individual plaintiff against various smokeless tobacco manufacturers including the Company for personal injuries, including cancer, oral lesions, leukoplakia, gum loss and other injuries allegedly resulting from the use of the Company's smokeless tobacco products. The plaintiff also claims nicotine "addiction" and seeks unspecified compensatory damages and certain equitable and other relief, including, but not limited to, medical monitoring.

The Company has been named in an action in Connecticut brought by a plaintiff individually, as executrix and fiduciary of her deceased husband's estate and on behalf of their minor children for injuries, including "squamous cell carcinoma of the tongue," allegedly sustained by decedent as a result of his use of the Company's smokeless tobacco products. The Complaint also alleges "addiction" to smokeless tobacco. The Complaint seeks compensatory and punitive damages in excess of $15 thousand and other relief.

The Company believes, and has been so advised by counsel handling these cases, that it has a number of meritorious defenses to all such pending litigation. Except as to the Company's willingness to consider alternative solutions for resolving litigation issues, all such cases are, and will continue to be, vigorously defended. The Company believes that the ultimate outcome of such pending litigation will not have a material adverse effect on its consolidated financial results or its consolidated financial position, although if plaintiffs were to prevail, the effect of any judgment or settlement could have a material adverse impact on its consolidated financial results in the particular reporting period in which resolved and, depending on the size of any such judgment or settlement, a material adverse effect on its consolidated financial position. Notwithstanding the Company's assessment of the potential financial impact of these cases, the Company is not able to estimate with any certainty the amount of loss, if any, which would be associated with an adverse resolution.

*Antitrust Litigation*

Following a previous antitrust action brought against the Company by a competitor, Conwood Company L.P, the Company was named as a defendant in certain actions brought by indirect purchasers (consumers and retailers) in a number of jurisdictions. As indirect purchasers of the Company's smokeless tobacco products during various periods of time ranging from January 1990 to the date of certification or potential certification of the proposed class, plaintiffs in those actions allege, individually and on behalf of putative class members in a particular state or individually and on behalf of class members in the applicable states, that the Company has violated the antitrust laws, unfair and deceptive trade practices statutes and/or common law of those states. In connection with these actions, plaintiffs sought to recover compensatory and statutory damages in an amount not to exceed $75 thousand per purported class member or per class member, and certain other relief. The indirect purchaser actions, as filed, were similar in all material respects.

16



Table of Contents

## UST Inc.
## NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS (continued)

Prior to 2007, actions in all but four of the jurisdictions were resolved, either through court-approved settlements or dismissals, including a dismissal in the New Hampshire action that is currently on appeal by the plaintiffs. Pursuant to the settlements, adult consumers received coupons redeemable on future purchases of the Company's moist smokeless tobacco products, and the Company agreed to pay all related administrative costs and plaintiffs' attorneys' fees.

In May 2007, the Company entered into a Memorandum of Understanding to resolve the California class action and a Settlement Agreement to resolve the Wisconsin class action. The Wisconsin Settlement Agreement has been preliminarily approved by the court. For additional details on the resolution of the Wisconsin class action, see "Item 1. Legal Proceedings" in Part II. In connection with the resolution of the Wisconsin and California class actions, the Company recorded a $122.1 million pre-tax charge in the first quarter of 2007 related to the estimated costs to resolve these actions, subject to respective court approval. Approximately $28.5 million of this charge relates to settlement of the Wisconsin action resulting from court-ordered mediation in April 2007. The charge reflects costs attributable to coupons that will be distributed to consumers, which will be redeemable on future purchases of the Company's moist smokeless tobacco products. Also reflected in the Wisconsin charge are plaintiffs' attorneys' fees and other administrative costs of the settlement. The remaining $93.6 million of the first quarter 2007 charge relates to settlement of the California action in May 2007, as a result of court-ordered mediation. This charge brings the total recognized liability for the California action to $96 million, which reflects the cost of cash payments to be made to the benefit of class members, as well as plaintiffs' attorneys' fees and other administrative costs of the settlement.

The liability associated with the Company's estimated costs to resolve all indirect purchaser actions increased to approximately $130.9 million at June 30, 2007, from $12.9 million at December 31, 2006, primarily as a result of the charge recognized for the Wisconsin and California settlements, partially offset by actual coupon redemption and payments of administrative costs related to previous settlements.

To date, indirect purchaser actions in almost all of the jurisdictions have been resolved, including those subject to court approval, leaving two unresolved actions in the States of Pennsylvania and Massachusetts. In the Pennsylvania action, which is before a federal court in Pennsylvania, the Third Circuit Court of Appeals has accepted the Company's appeal of the trial court's denial of the Company's motion to dismiss the complaint. The Company continues to believe there is insufficient basis for plaintiffs' complaint. The Company also believes the facts and circumstances in the Massachusetts class action will continue to support its defenses. The Company believes, and has been so advised by counsel handling these actions, that it has meritorious defenses in this regard, and they are and will continue to be vigorously defended. The Company believes that the ultimate outcome of these actions will not have a material adverse effect on its consolidated financial results or its consolidated financial position, although if plaintiffs were to prevail, beyond the amounts accrued, the effect of any judgment or settlement could have a material adverse impact on its consolidated financial results in the particular reporting period in which resolved and, depending on the size of any such judgment or settlement, a material adverse effect on its consolidated financial position. Notwithstanding the Company's assessment of the financial impact of these actions, management is not able to estimate the amount of loss, if any, beyond the amounts accrued, which could be associated with an adverse resolution.

Also, two additional matters remain outstanding in connection with indirect purchaser actions.

Counsel for plaintiffs in the settlement of the Kansas and New York actions filed a motion for an additional amount of approximately $8.5 million in attorneys' fees, expenses and costs, plus interest, beyond the

17

Table of Contents

## UST Inc.
### NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS (continued)

previously agreed-upon amounts already paid by the Company. An evidentiary hearing on plaintiffs' motion was held in April 2006. To date, the court has not ruled on the motion. The Company believes, and has been so advised by counsel handling this case, that it has meritorious defenses in this regard, and will continue to vigorously defend against this motion. As such, the Company has not recognized a liability for the additional amounts sought in this motion.

The Company has been served with a purported class action complaint filed in federal court in West Virginia, attempting to challenge certain aspects of a prior settlement approved by the Tennessee state court and seeking additional amounts purportedly consistent with subsequent settlements of similar actions, estimated by plaintiffs to be between $8.9 million and $214.2 million, as well as punitive damages and attorneys' fees. The Company believes, and has been so advised by counsel handling this case, that it has meritorious defenses in this regard, and will continue to vigorously defend against this complaint. As such, the Company has not recognized a liability for the additional amounts sought in this complaint.

The Company believes that the ultimate outcome of these two matters will not have a material adverse effect on its consolidated financial results or its consolidated financial position, although if plaintiffs were to prevail, the effect of an adverse resolution could have a material adverse impact on its consolidated financial results in the particular reporting period in which resolved and, depending on the size of any such resolution, a material adverse effect on its consolidated financial position. Notwithstanding the Company's assessment of the financial impact of these actions, management is not able to estimate the amount of loss, if any, which could be associated with an adverse resolution.

*Other Litigation*

The Company has been named in an action in California brought by the People of the State of California, in the name of the Attorney General of the State of California, alleging that the Company's sponsorship relating to the National Hot Rod Association violates various provisions of the Smokeless Tobacco Master Settlement Agreement ("STMSA") and the related Consent Decree entered in connection with the STMSA (see Note 15, "Other Matters" for additional information regarding the STMSA). The complaint seeks declaratory and injunctive relief, unspecified monetary sanctions, attorneys' fees and costs, and a finding of civil contempt. In July 2007, the parties reached a non-binding agreement in principle to resolve this matter. In connection with such agreement, a charge was recognized during the second quarter of 2007. The proceedings have been stayed pending the parties' drafting and negotiation of a stipulation and final judgment. For additional details see "Item 1. Legal Proceedings" in Part II.

In the event the parties do not reach an agreement as to the terms of the stipulation and judgment referenced above, the foregoing case will continue to be vigorously defended. In this regard, the Company believes, and has been so advised by counsel handling the foregoing case, that it has a number of meritorious defenses.

## 15 - OTHER MATTERS

On October 22, 2004, the "Fair and Equitable Tobacco Reform Act of 2004" (the "Tobacco Reform Act") was enacted in connection with a comprehensive federal corporate reform and jobs creation bill. Under the Tobacco Reform Act, the Secretary of Agriculture imposes quarterly assessments on tobacco manufacturers and importers used to fund a trust to compensate tobacco quota farmers. The Company does not believe that the assessments imposed under the Tobacco Reform Act will have a material adverse impact on its

18