UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHANIE COHEN and SUNDA
CROONQUIST, on behalf of themselves and
all others similarly situated,

    Plaintiffs,

     v.

WARNER CHILCOTT PUBLIC LIMITED
COMPANY, *et al.*,

    Defendants.

Civil Action No. 06-401 (CKK)

## MEMORANDUM OPINION
(November 15, 2007)

This matter comes before the Court on the parties' Joint Motion for Final Approval of the

Settlement in this putative class action. The parties previously moved for preliminary approval

of the settlement and conditional certification of the class, which the Court granted by Order

dated June 27, 2007. Thereafter, a sole objector filed a notice of objection to the settlement, to

which the parties responded. The parties filed their final motion for entry of judgment and

approval of the settlement, as well as their motion for attorneys' fees, expenses, and incentive

awards on October 2, 2007. Finally, on November 6, 2007, the Court held a fairness hearing, as

required by Federal Rule of Civil Procedure 23(e). The arguments and representations made on

the record during that fairness hearing are hereby expressly incorporated and made a part of this

Memorandum Opinion.

Upon a searching review of the parties' preliminary and final motions for approval of the

settlement and certification of the class, the filings submitted in connection with the sole

objection to the settlement, the arguments and representations made and the exhibits submitted at the fairness hearing, the relevant statutes and caselaw, and the entire record herein, the Court shall overrule the sole [91] Objection to the settlement, and shall deny the Objector's counsel's [92] motion for attorneys' fees and expenses. Furthermore, the Court shall grant the parties' [93] Joint Motion for Final Approval of the Settlement, and shall grant [95] Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Expenses, Incentive Awards to the Class Representatives, and Authorization to Distribute the Remaining Funds in the Notice Account to Charity.

## I: BACKGROUND

A.    *Factual and Procedural Background*

Plaintiffs, Stephanie Cohen and Sunda Croonquist, brought this putative class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a class of consumers who purchased Ovcon 35 during the period April 22, 2004 through June 27, 2007 (the date on which the Court entered its Order preliminarily approving the settlement in this action).[1] Plaintiffs named as Defendants to this action Warner Chilcott Public Limited Company, Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc., Galen (Chemicals) Ltd. (together "Warner Chilcott") and Barr Pharmaceuticals, Inc. ("Barr"). Plaintiffs filed their Amended Class Action Complaint on April 19, 2006, alleging that Defendants participated in an unlawful conspiracy to restrain trade, in which Barr agreed not to market a generic version of Warner Chilcott's Ovcon 35 in exchange

---

[1] In the interest of consistency with the parties' filings and the Settlement Agreement, the Court refers to the class of consumers at issue in this Memorandum Opinion as the "Settlement Class."

for payments from Warner Chilcott.  Am. Compl. ¶¶ 1-5.  Plaintiffs allege that Defendants'

agreement denied members of the Settlement Class the benefits of competition and of less-

expensive generic versions of Ovcon 35, such that members of the Settlement Class paid

artificially inflated prices for Ovcon 35.  *Id.* ¶ 6.  Plaintiffs further allege that Defendants'

conduct violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, the antitrust and/or

consumer protection statutes of certain states, and the unjust enrichment laws of the fifty states.

*Id.* ¶¶ 7-9.

On May 5, 2006, Defendants filed a Joint Motion to Dismiss Plaintiffs' Amended

Complaint, seeking to dismiss the majority of Plaintiffs' claims.  Defendants' Joint Motion to

Dismiss was fully briefed and pending before the Court at the time that the parties reached the

settlement in this action.  Mem. of P& A in Support of Joint Mot. for Final Approval of the

Settlement (hereinafter "Final Mem.") at 3.  In addition, Plaintiffs filed a Motion for Class

Certification on March 23, 2007, which included a declaration from their expert economist,

Edward J. Heiden, Ph.D.  *Id.* at 4.  The parties also engaged in extensive discovery in this action

pursuant to a scheduling order entered by the Court.  In particular, Plaintiffs' counsel "reviewed

approximately one million documents, attended approximately twenty depositions, and consulted

with" an expert, as well as reviewed the reports of Defendants' experts, which were served in

other related actions pending before this Court.  *Id.* at 3-4.  The Court initially referred this action

to Magistrate Judge Alan Kay on November 27, 2006.  *See* Order, Docket No. [66], Nov. 27,

2006.  Following months of negotiation, the parties executed the Settlement Agreement on May

16, 2007.  *See* Accompanying Order, Ex. A (Settlement Agreement).  On June 27, 2007, the

Court entered an order conditionally approving certification of the Settlement Class,

preliminarily approving the settlement and providing the form and manner of notice to the

Settlement Class.  In particular, the Court's June 27, 2007 Order defined the Settlement Class as:

> All persons who purchased Ovcon 35 for personal and household use in the
> United States at any time during the period from April 22, 2004 through the date
> of the Preliminary Approval Order.  Excluded from the Settlement Class are all
> governmental entities and the Defendants, their directors, officers and employees,
> and their respective subsidiaries and affiliates.

Order, Docket No. [89] at ¶ 2.

B.    *The Terms of the Settlement Agreement*

Pursuant to the Settlement Agreement, Warner Chilcott and Barr will each donate $3

million worth of combined hormonal contraceptive products throughout the United States to (1)

primary care physicians not currently receiving samples of the donated products who prescribe

combined hormonal contraceptives, (2) university health centers or clinics, or (3) charitable

organizations providing reproductive healthcare services to women, for a total product donation

worth $6 million at retail value.  In addition, Warner Chilcott and Barr agreed to pay $1 million

each, for a total value of $ 2 million, into a fund to be used to pay reasonable attorneys' fees and

expenses, as well as incentive awards to the named Plaintiffs.  Finally, Warner Chilcott and Barr

each paid $150,000, for a total value of $300,000, into a fund that was used to provide notice to

the Settlement Class and to pay for notice administration expenses.  Under the terms of the

Settlement Agreement, Plaintiffs and each member of the Settlement Class agree to release all

claims against Defendants relating to the prices paid for Ovcon 35 during the Class Period.

*See* Settlement Agreement ¶ 27; Final Mem. at 4.

C.    *Form and Manner of Notice to the Class*

The Court's June 27, 2007 Order approved Plaintiffs' proposed form and manner of

4

giving notice to the Class and found the publication of notice in the weekend edition of USA

Today and through an internet notice campaign to be the "best notice practicable under the

circumstances . . . in full compliance with the notice requirements of Rule 23 of the Federal

Rules of Civil Procedure and due process of law."  Order, Docket No. [89] at ¶ 7.  The Order

accompanying this Memorandum Opinion and the Declaration of Orran L. Brown filed in

support of the parties' Joint Motion for Final Approval describe in detail the manner in which

notice was actually provided to members of the Settlement Class.  *See* Final Mem. at 5-6, Ex. 1

(10/2/07 Brown Decl.) (hereinafter "Brown Decl.").  In particular, a Short Form Notice ran in the

weekend edition of USA Today and reached an estimated circulation of 2.5 million and estimated

readers of 5.2 million.  Brown Decl. ¶ 10.  Notice was also published via an internet notice

campaign targeted toward women of reproductive age.  *Id.* ¶ 11.  The notice clearly stated that

Class Members had until September 17, 2007 to opt-out of the settlement and set forth the

procedure for doing so.  No consumer chose to opt-out of the settlement.  *Id.*

The notice also clearly stated that Class Members had until September 17, 2007 to object

to the settlement and set forth the procedure for doing so.  On September 17, 2007, Rita R.

Morales filed an Objection to Class Settlement and Application for Attorneys' Fees and

Expenses.  At the Court's request, Plaintiffs filed a Response to the Objection on October 2,

2007, and Objector Morales filed her Reply on October 12, 2007.  The nature of the Objection is

discussed in greater detail below.

D.    *Joint Motion for Final Approval and Fairness Hearing*

On October 2, 2007, the parties filed their Joint Motion for Final Approval of the

Settlement, and Class Counsel filed their Petition for an Award of Attorneys' Fees,

Reimbursement of Expenses, Incentive Awards to the Class Representatives, and Authorization

to Distribute the Remaining Funds in the Notice Account to Charity. As required by Federal

Rule of Civil Procedure 23(e), the Court held a fairness hearing on the record on November 6,

2007. Counsel for all parties appeared at the hearing. No objectors appeared at the hearing,

despite being advised of their opportunity to do so via the notice campaign.

## II: LEGAL STANDARD

A class may be certified for settlement purposes only, and such "settlement-only" classes

have become increasingly prominent. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 618

(1997). Settlement-only class certification nevertheless obligates a Court to consider whether the

proposed class meets the requirements of Federal Rule of Civil Procedure 23, although the Court

need not determine whether the case, if tried, would present management problems. *Id.* at 620;

*Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998). As proponents of class certification,

Plaintiffs have the burden of establishing that each of the elements of Rule 23(a) are met and that

the class is maintainable pursuant to one of Rule 23(b)'s subdivisions. *Amchem*, 521 U.S. at 614;

Fed. R. Civ. P. 23; *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006). The

four prerequisites to a class action lawsuit under Rule 23(a) are: (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims and

defenses of the class; and (4) the representative parties will fairly and adequately protect the

interests of the class. *See* Fed. R. Civ. P. 23(a). These four requirements are referred to as

numerosity, commonality, typicality, and adequacy of representation. In addition, Plaintiffs must

demonstrate that the class is maintainable under Rule 23(b). In the instant case, Plaintiffs seek

certification under Rule 23(b)(3) and, as such, must show that "questions of law or fact common to the members of the class predominate over any questions only affecting individual members, and that class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as predominance and superiority.

Approval of a proposed class action settlement lies within the discretion of the District Court. *In re Vitamins Antitrust Litig.*, 305 F. Supp. 100, 103 (D.D.C. 2004) ("*Vitamins II*") (citing *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)). Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). In considering whether to approve a proposed class action settlement, the Court must strike a balance between a rubber stamp approval and "the detailed and thorough investigation that it would undertake if it were actually trying the case." *United States v. District of Columbia*, 933 F. Supp. at 47. Furthermore, there is a long-standing judicial attitude favoring class action settlements, and the Court's "discretion is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases." *Vitamins II*, 305 F. Supp. 2d at 103 (quoting *Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999); citing *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993)).

### III:  DISCUSSION

The Court first concludes that the Settlement Class meets the requirements for certification pursuant to Rule 23(a) and (b)(3), before turning to approval of the settlement

7

pursuant to Rule 23(e), and finally to Class Counsel's Petition for attorneys' fees, expenses, and incentive awards.

### A.    Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)1). The numerosity requirement "imposes no absolute limitations," but rather "requires examination of the specific facts of each case." *Gen. Tele. Co. of the NW v. EEOC*, 446 U.S. 318, 330 (1980). Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members. *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003); *Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd in part*, 139 F.3d 227 (D.C. Cir. 1998). A plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided. *Bynum*, 214 F.R.D. at 32-33; *Pigford*, 182 F.R.D. at 347. Here, Plaintiffs' counsel estimates that approximately 2,000,000 consumers purchased Ovcon 35 during the Class Period. Pls.' Mem. of P & A in Support of Their Mot. for Prelim. Approval of the Settlement (hereinafter "Prelim. Mem.") at 7; Final Mem., Ex. 2 (10/2/07 Decl. of Robert W. Sink) (hereinafter "Sink Decl.") ¶ 7. The Court therefore easily finds that joinder would be impracticable, and that the numerosity requirement of Rule 23(a)(1) is satisfied.

#### 2.    Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution

of which will affect all or a significant number of the putative class members." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) ("*Lorazepam I*") (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see also Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006). Significantly, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum*, 214 F.R.D. at 33. Plaintiffs' claims raise a number of common issues of law and fact, including: (1) whether Defendants combined, agreed, or conspired in restraint of trade; (2) whether Defendants' agreement was lawful; (3) whether Defendants monopolized and/or attempted to monopolize the market for Ovcon 35 and its generic equivalents; (4) whether Defendants' conduct caused members of the Settlement Class to pay more for Ovcon 35 than they would have paid absent Defendants' agreement; and (5) whether Defendants were unjustly enriched. Am. Compl. ¶ 63. The Court therefore concludes that the commonality requirement of Rule 23(a)(2) is met.

       *3.    Typicality*

       Rule 23(a)(3) requires a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement aims at ensuring "that the class representatives have suffered injuries in the same general fashion as absent class members." *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 260 (D.D.C. 2002) ("*Vitamins I*") (quoting *Thomas*, 139 F.3d at 238). The facts and claims of each class member do not have to be identical to support a finding of typicality, *see Thomas*, 139 F.3d at 238, rather "[t]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff," *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297,

304 (E.D. Mich. 2001). The typicality requirement is satisfied "if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Lorazepam I*, 202 F.R.D. at 27 (quoting *Pigford*, 182 F.R.D. at 349). Here, Plaintiffs' claims and those of absentee members of the Settlement Class arise from the same events, and involve the same legal theory and elements of proof. Prelim. Mem. at 8. Plaintiffs are consumers who purchased Ovcon 35 during the Class Period. As their claims can only be described as typical of the Settlement Class, the Court finds that the commonality requirement is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal quotation omitted). The Court has been presented with no evidence whatsoever that Plaintiffs' interests are in any way antagonistic to those of absentee members of the Settlement Class.[2] Rather, it appears that throughout this litigation, Plaintiffs and the absentee

---

[2] The Court notes that, as discussed below, pursuant to the Settlement Agreement and upon Court approval, the named Plaintiffs will receive incentive awards. No objections to these incentive awards have been raised, and the Court therefore concludes that the payment of the incentive awards does not, in and of itself, make Plaintiffs' interests antagonistic to those of absentee class members. In particular, the Court notes that it is within the Court's discretion to grant the incentive awards, and that Plaintiffs had no assurance of receiving such awards during the pendency of this litigation.

Class Members shared the identical objectives of establishing liability and obtaining damages.
Prelim. Mem.

With respect to the adequacy of class counsel, Plaintiffs' counsel has successfully served
as lead or co-lead counsel in several national class actions and class action settlements, as well as
other complex cases litigated on behalf of consumers. *See* Prelim. Mem. at 11-12, Ex. B (Law
Offices of Robert W. Sink, Atty Biogs). Plaintiffs' counsel devoted substantial time and energy
to litigating this action through settlement. *See* Mem. of P & A in Support of Class Counsel's
Pet. (hereinafter "Pet. Mem."), Ex. A (10/2/07 Decl. of Robert W. Sink in Support of Pet.)
(hereinafter "Sink Pet. Decl.") ¶ 3. The Court therefore appointed Plaintiffs' counsel to serve as
Class Counsel pursuant to Rule 23(g) in its Order of June 27, 2007. *See* Order, Docket No. [89]
¶ 4. The Court has no grounds for questioning the continued adequacy of class counsel. As
such, the Court concludes that the adequacy requirement of Rule 23(a)(4) has been satisfied.

### B.     Rule 23(b) Requirements

Plaintiffs seek to certify the proposed class pursuant to Federal Rule of Civil Procedure
23(b)(3). The Court therefore turns to considering whether common questions predominate over
non-common questions and whether class resolution is superior to other methods of adjudication.
Fed. R. Civ. P. 23(b)(3).

### 1.     Predominance

In order to satisfy Rule 23(b)(3), Plaintiffs must show that the common issues identified
by the Court above as sufficient under Rule 23(a)(2) predominate over any non-common issues.
*Vitamins I*, 209 F.R.D. at 262. Significantly, the common issues need only be predominant, not
dispositive of the litigation. *Lorazepam I*, 202 F.R.D. at 29 (citing *In re Potash Antitrust Litig.*,

159 F.R.D. 682, 693 (D. Minn. 1995)).  "There is no definitive test for determining whether

common issues predominate, however, in general, predominance is met 'when there exists

generalized evidence which proves or disproves an element on a simultaneous, class-wide basis,

since such proof obviates the need to examine each class members' individual position.'"

*Vitamins I*, 209 F.R.D. at 262 (citing *Potash*, 159 F.R.D. at 693).

Here, Plaintiffs assert claims under the federal antitrust laws, the antitrust and/or

consumer protection laws of certain states, and the unjust enrichment laws of the fifty states.

Antitrust actions involving allegations of price-fixing have frequently been found to meet the

predominance requirement in class certification analyses.  *Id.* at 263 (collecting cases);

*Lorazepam I*, 202 F.R.D. at 29.  Indeed, a number of courts have specifically found the

predominance requirement satisfied (and certified classes) in class actions alleging antitrust

injury in the form of overcharges resulting from delayed entry of a generic or lower-priced drug.

*See Lorazepam I*, 202 F.R.D. at 29-30; *J.D.B.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 225 F.R.D.

208, 217-19 (S.D. Ohio 2003); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343-46 (D. Mass.

2003); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 58 (S.D.N.Y. 2002); *Cardizem*, 200 F.R.D.

at 307-25.  Furthermore, "[u]nder both federal and state law, the essential elements of a private

antitrust action are the same . . . ."  *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass.

2004).  Although Plaintiffs assert claims under the unjust enrichment laws of the fifty states, such

claims may involve predominant common questions insofar as they all require a showing that

Defendants were unjustly enriched at the expense of the Class Members.  Moreover, the

existence of minor differences in state law does not preclude the certification of nationwide

classes.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir.

1998). Accordingly, the Court finds that the common issues of law and fact identified above predominate over non-common issues, such that the predominance test of Rule 23(b)(3) is met.

### 2. Superiority

Finally, the Court turns to the superiority requirement of Rule 23(b)(3), which is met when a court determines that a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures that resolution by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Amchem*, 521 U.S. at 615. Here, the class action clearly provides the superior method of adjudication, for reasons discussed above. In particular, the size of the Settlement Class, the uniformity of issues regarding Defendants' liability, and the fact that Class Members' individuals claims are minuscule in comparison to the cost of prosecuting this type of complex litigation, all weigh heavily in favor of class action adjudication. The Court therefore concludes that the superiority requirement of Rule 23(b)(3) is met.

### C. Rule 23(e) Requirements

Having concluded that final certification of the Settlement Class is appropriate pursuant to Rule 23(a) and (b), the Court now turns to considering whether the proposed settlement is "fair, adequate and reasonable and is not the product of collusion between the parties," as required by Rule 23(e). *Thomas*, 139 F.3d at 231; Fed. R. Civ. P. 23(e). There is no single test in this Circuit for determining whether a proposed class action settlement should be approved under Rule 23(e). *Pigford*, 184 F.R.D. at 98. However, in making such a determination, courts in this Circuit have considered the following factors, among others: (1) the status of the litigation

at the time of the settlement; (2) the likelihood and risks of establishing liability and damages; (3) the reaction of the class; (4) whether the settlement is the result of arm's-length negotiations; and (5) the opinion of experienced counsel. *Vitamins II*, 305 F. Supp. 3d at 104 (citing numerous cases); *In re Baan Company Secs. Litig.*, 284 F. Supp. 2d 62, 64-67 (D.D.C. 2003). The Court shall address these factors in the order the parties consider them in their Memorandum in support of their Joint Motion for Final Approval of the Settlement.

### 1.    The Status of the Litigation at the Time of Settlement

In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts "consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290 (TFH), 2003 WL 22037741, *4 (D.D.C. Jun. 16, 2003) ("*Lorazepam II*"). Here, the Court finds that the settlement does not "come too early to be suspicious nor too late to be a waste of resources" but is rather "at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation." *Vitamins II*, 305 F. Supp. 2d at 105. As noted above, settlement negotiations began after Class Counsel had reviewed approximately one million documents and participated in approximately twenty depositions. *See* Sink Pet. Decl. ¶ 3. Class counsel also reviewed purchased data, retained and consulted with an expert economist, and reviewed expert reports exchanged in related actions pending before this Court. *Id.* ¶¶ 2-3. The Court therefore concludes that, at the time settlement was reached, both parties possessed well-founded views of the merits of their respective positions and the potential for, and likely amount, of any recovery.

14

2.    *The Likelihood and Risks of Establishing Liability and Damages*

Plaintiffs admit that they faced significant risks in establishing both liability and damages

at trial in this action, and in particular that Defendants raised a number of defenses in this action

which, if accepted, might have precluded them from proving either liability or damages.  The

most significant of these defenses appears to be related to Defendants' evidence that Ovcon 35 is

a heavily sampled product and that between April 2004 and September 2006, free samples

accounted for 40% of the packs of Ovcon 35 distributed by Warner Chilcott.  Final Mem. at 10;

Expert Report of Henry G. Grabowski (submitted as Defs' Ex. 1 at the 11/6/07 Fairness Hrg.)[3]

(hereinafter "Grabowski Report") ¶ 6.; Sink Decl. ¶ 4.  This evidence presented a defense to both

liability and damages.  Specifically, Defendants argued–and their expert opined–that their

agreement was not anti-competitive because Warner Chilcott's extensive sampling provided a

discount of approximately 30% off of the price of Ovcon 35, with an effective price of $31 per

pack, while Barr's generic would have offered consumers an approximate discount of 9% and

have been priced at approximately $38 per pack.  Final Mem. at 10-11; Grabowski Report ¶¶ 24-

27.  Defendants and their expert maintained that Warner Chilcott would have stopped

distributing free samples upon entry of a generic version of Ovcon 35.  Final Mem. at 10;

Surrebuttal Expert Report of Henry G. Grabowski (submitted as Defs.' Ex. 2 at the 11/6/07

Fairness Hrg.) (hereinafter "Grabowski Surrebuttal Report") ¶¶ 12-15.  According to Defendants

and their expert, consumers actually saved more by receiving free samples than they would have

if a generic had been available, and as a result suffered only minimal or no damages due to

---

[3] At the Fairness Hearing, counsel presented the Court with both redacted and unredacted
versions of Dr. Grabowski's reports, as well as the Expert Report of Larry Karp, Ph.D.  The
Court has had no need to refer to unredacted materials.

Defendants' Agreement.  Final Mem. at 10-11; Grabowski Report ¶¶ 24-27.

Plaintiffs faced a second defense that Defendants entered into the agreement at issue in this action for legitimate business reasons, i.e., because Warner Chilcott was experiencing serious supply problems with its then supplier.  Final Mem. at 9.  Defendants offered contemporaneous evidence of Warner Chilcott's supply problem, as well as expert testimony that their agreement was the best way to ensure a steady, reliable supply of Ovcon 35 to Warner Chilcott.  *Id.*  Finally, Plaintiffs faced a third defense relating to the definition of the relevant market in this action, which Defendants argued included over 80 other brand-name and generic oral contraceptives, rather than solely Ovcon 35 and its generic equivalents.  *Id.* at 11.  Defendants produced documentary support for this position as well as testimony from a number of experts.  *Id.*  Plaintiffs admit that if the jury had accepted any of these three defenses, it could have found that no violation of the antitrust laws occurred or that Plaintiffs suffered no damages.

The specifics of the settlement are discussed in greater detail below, however it is obvious that Plaintiffs faced significant risks in establishing both liability and damages.  Even if Plaintiffs had prevailed over these obstacles at trial, it is likely that any verdict would have been followed by an appeal, which might have further delayed the final resolution of this case.  *Pigford*, 185 F.R.D. at 104-05.  "By contrast, the settlement negotiated by the parties provides for relatively prompt recovery."  *Id.*

### 3.    The Reaction of the Class

The Settlement Class' reaction to the settlement in this case appears to have been overwhelmingly positive, and is a factor which counsels in favor of approval.  *Lorazepam II*, 2003 WL 22037741, at *5.  As described above, notice was nationally disseminated through a

newspaper and internet campaign. Final Mem. at 5-6, Ex. 1 (Brown Decl.) ¶¶ 10-11. Despite the fact that the notice clearly advised Class Members of their right to opt-out of the settlement, not a single consumer opted-out. In addition, only one objection was filed with the Court in this action, and the "existence of even a relatively few objections certainly counsels in favor of approval." *Lorazepam II*, 2003 WL 22037741, at *6. Furthermore, as discussed below, the Court finds that the sole objection filed in this action lacks merit, and shall therefore overrule it.

The sole Objection in this action was filed by Rita R. Morales, who asserts that she purchased Ovcon 35 for personal or household use during the Class Period. Obj. at 1. The Objection contains only four sentences in support of its assertion that "the proposed settlement is unfair, inadequate and unreasonable." *Id.* at 3. Specifically, Objector Morales asserts that the "liability case against Defendants is strong based upon Plaintiffs' own pleadings," *id.*; however, as discussed above, while Plaintiffs' pleadings may have presented a bold face, Plaintiffs themselves admit that they faced substantial–and potentially fatal–defenses. Objector Morales next claims that the settlement is inadequate because damages in this action "are well into the tens of millions of dollars, perhaps more." *Id.* However, Plaintiffs' expert estimated their top-end single damages as approximately $12 million, Final Mem. at 15; Sink Decl. ¶ 3, and Defendants' experts opined that Plaintiffs in fact suffered no damages due to Warner Chilcott's extensive sampling of Ovcon 35. Final Mem. at 10-11; Grabowski Report ¶¶ 24-27. Thus, the magnitude of potential damages in this action is far from clear, and is tempered by the significant defenses discussed above. Moreover, Objector Morales demonstrates a fundamental misunderstanding of the instant action when she asserts that the settlement is unreasonable because it does not result in the launch of a generic Ovcon 35 in the future. Obj. at 3. Of course,

17

Barr entered the market with its generic, Balziva, in the fall of 2006 and a second generic,

Zenchent, is now available to consumers as well. Pls.' Resp. at 5.

Finally, Objector Morales complains that the settlement does not compensate class

members directly for monies they overpaid and, in her Reply, suggests that "at a minimum,

coupons could have been distributed to Ovcon consumers." Obj. at 3; Reply at 2. However,

Plaintiffs have presented significant evidence that the cost of administering individual claims,

coupled with the costs to consumers of obtaining records required for proof of claims, would

entirely swallow up any individual recoveries. In particular, the total value of the consumer fund

created by the settlement is $6 million, and between April 2004 and September 2006, consumers

purchased 6.2 million packs of Ovcon 35. Grabowski Report ¶ 31. In addition, Defendants'

expert opines that 58% of Class Members purchased four or fewer packs of Ovcon 35 during the

Class Period, while 73% of Class Members purchased seven or fewer packs of Ovcon 35 during

the Class Period. *See* 11/2/07 Suppl. Decl. of Orran L. Brown (submitted as Pls.' Ex. 3 at the

11/6/07 Fairness Hrg.) (hereinafter "Brown Suppl. Decl.") ¶ 8 (citing Decl. of Henry Grabowski,

Ph.D.). Thus, the consumer fund reflects a recovery value of $1.00 for each pack of Ovcon 35

purchased by Class Members during the Class Period, and approximately 58% of Class Members

would be entitled to recover $4.00 or less, while 73% of Class Members would be entitled to

recover $7.00 or less.

If the consumer fund were distributed via individualized distributions to Class Members,

the total costs for a Claims Administrator to (a) review each Class Member's records; (b)

calculate, process, and distribute benefits on each claim; and (c) provide an overall accounting of

claims distributions, would likely be between $25.00 and $40.00 per claim. Suppl. Brown Decl.

¶¶ 10-14. In addition, each Class Member seeking to recover a distribution would be required to

obtain and submit to the Claims Administrator copies of her pharmacy records, as well as her

medical records. *See* 11/6/07 Suppl. Decl. of Robert W. Sink (submitted as Pls.' Ex. 2 at the

11/6/07 Fairness Hrg.) (hereinafter "Sink Suppl. Decl.") ¶ 2. Obtaining pharmacy records from

two of the nation's three largest drug store chains costs between $6 and $50, *id.* ¶¶ 3-4, and states'

charges associated with patients obtaining copies of their medical records may be between $20.00

and $40.00, Suppl. Brown Decl. ¶ 15. It is therefore clear that the costs involved with creating

and administering a system for individualized distributions, combined with the costs to particular

Class Members of obtaining the requisite documentation, would dwarf the individual recovery to

any Class Member. Many of these same costs would apply in administering a coupon system,

such that the distribution of coupons to consumers is likewise not economically feasible.

Moreover, in light of the fact that most Class Members purchased relatively few packs of Ovcon

during the Class Period, it is not clear that a coupon system actually would benefit the majority of

Class Members.

For similar reasons, other courts have approved class action settlements that involve the

distribution of products rather than individualized recoveries. *See e.g.*, Order and Final Judgment,

*In re Childrens' Ibuprofen Oral Suspension*, Misc. No. 04-535 (ESH) (D.D.C. 11, 2006); *In re*

*Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 353 (S.D.N.Y. 2000) ("The decision to forego

individual recoveries was sensible, given the difficulty of identifying proper claimants and the

difficulty, and especially the costs, that such recoveries and their administration would have

entailed. The net monetary relief for any individual claimant would have been limited."); *Reebok*

*Int'l, Ltd.*, 96 F.3d 44, 49 (2d Cir. 1996). Significantly, the product distribution called for in the

settlement may provide a direct benefit to Class Members, in that they may receive samples of the

donated combined hormone contraceptives from their physicians or from university clinics.

Indeed, because the product distribution will go exclusively to health care providers who do not

currently receive samples of Ovcon 35, it may benefit Class Members who have not previously

received samples.  In addition, the parties note that because drug companies have apparently

stopped offering discounts on oral contraceptives to university health services, the product

donation may have a particular benefit for women who obtain contraceptives from such providers.

Final Mem. at 18 (citing *College Students Face Rising Birth-Control Prices*, Wall St. J., Jul. 26,

2007, at D1).  For all of the foregoing reasons, the Court concludes that the sole Objection in this

action lacks merit and shall be overruled.  In light of this conclusion, and in light of the fact that

Objector's counsel has provided no grounds on which he would be entitled to attorneys' fees, the

Application for Attorneys' Fees and Expenses submitted by Objector's counsel shall be denied as

well.

### 4.    *Arm's-Length Negotiation and the Opinion of Experienced Counsel*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery."  *Vitamins II*, 305 F. Supp. 2d at 104; *Lorazepam II*, 2003 WL 22037741, at * 2.  As

discussed above, the settlement in this action was reached after extensive discovery.  Sink Pet.

Decl. ¶ 3.  Furthermore, the settlement was the result of months of negotiations, including face-to-

face meetings, conference calls between counsel, and oversight by Magistrate Judge Kay.  Final

Mem. at 14; Sink Decl. ¶ 6.  The Court has been presented with absolutely no evidence that the

settlement is anything other than the product of arm's-length negotiation between experienced

counsel.

These experienced counsel are clearly of the opinion that the settlement in this action is fair, adequate, and reasonable, and their opinion "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam II*, 2003 WL 22037741, at *6. Here, the settlement creates three separate funds: one based on the value of the total product donation ($6 million), a second fund of $2 million to pay attorneys' fees, expenses, and incentive awards, and a fund of $300,000 used to pay the costs of notice to the Settlement Class. In such a case, as Judge Thomas F. Hogan concluded in the *Vitamins* case, it is appropriate to consider these funds collectively as a "constructive common fund," valued at $8.3 million. *See In re Vitamins Antitrust Litig.*, Misc. Action No. 99-197, 2001 WL 34312839, * 4 (D.D.C. Jul. 16, 2001) (hereinafter "*Vitamins III*"). In a true common fund case, attorneys' fees are paid out of a common fund shared with class plaintiffs, such that the amount recovered by plaintiffs is reduced by the amount awarded in attorneys' fees. *Id.* Here, in contrast, the settlement has separate funds for class recovery and attorneys' fees, and because the attorneys' fees are borne by defendants and not plaintiff, they represent a valuable part of the settlement. *Id.* at *4, *9.

As noted above, Plaintiffs' expert estimated their top-end single damages at approximately $12 million. Sink Decl. ¶ 7. A total common fund valued at $8.3 million thus represents a recovery of more 75% of Plaintiffs' highest estimate of damages, which significantly did not account for any reduction in damages due to sampling. Counsel believes that this comparison demonstrates the fairness, adequacy, and reasonableness of the settlement because "[o]ther settlements involving dramatically smaller percentages of single damages have been routinely approved." Final Mem. at 15-16 (citing cases with recoveries ranging from 8.1% - 36% of

damages).  In addition, as Class Counsel noted at the fairness hearing, an expert retained by plaintiffs in one of the related cases pending before this Court opined that individual consumers suffered total damages of $6.6 million as a result of Defendants' agreement.  Expert Report of Larry Karp, Ph.D. (submitted as Pls.' Ex. 1 at the 11/6/07 Fairness Hrg.) at 26.  Plaintiffs' total settlement of $8.3 million is therefore in excess of at least one estimate of their total damages.

The Court agrees with Plaintiffs' counsel that the total value of the settlement in this action compares quite favorably to either expert's estimate of total damages suffered by the Settlement Class.  Moreover, for all of the reasons discussed above, the Court finds that the settlement represents the product of arm's length-negotiations between experienced counsel, after adequate opportunity for discovery.  As such, the Court concludes that the settlement is fair, adequate, and reasonable, and that the requirements of Rule 23(e)(1)(C) are therefore met.

     D.     *Attorneys' Fees, Expenses, and Incentive Awards*

Finally, the Court turns to considering the attorneys' fees, expenses, and incentive awards requested in Class Counsel's Petition.  Class Counsel request that the Court grant them a fee award of $1,880,293.13, plus reimbursement of expenses totaling $104,706.87, and incentive awards of $7,500 to each of the Class Representatives (Plaintiffs Cohen and Croonquist).  The requested attorneys' fees, expenses, and incentive awards are to be paid out of the fund set aside for that purpose in the Settlement Agreement.  Sink Pet. Decl. ¶ 6.  The Court notes that Class Counsel separately negotiated regarding this fund, and only did so after negotiating the $6 million product donation on behalf of the Settlement Class.  *Id.*  Thus, importantly, class Counsel's requested fee does not diminish the recovery by the Settlement Class.  *Vitamins III*, 2001 WL 34312839, *12 (citing *Duhaime v. John Hancock Mutual Life Ins. Co.*, 989 F. Supp. 375, 379 (D.

Mass. 1997)).  Defendants do not oppose any of these requests, and the sole Objector in this action opposes only the attorneys' fee and expenses request.  The Court addresses each request in turn.

Courts have a duty to ensure that claims for attorneys' fees are reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993).  Class Counsel asserts that their fee award request is reasonable under either of the two main methods used by courts to assess the reasonableness of such requests: the percentage-of-recovery method and the lodestar method.  Pet. Mem. at 5 (citing *Vitamins III*, 2001 WL 34312839, at *2).  As noted above, the Court believes that the settlement in this case represents a constructive common fund.  "The D.C. Circuit has joined other circuits 'in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.'" *Lorazepam II*, 2003 WL 22307741, at * 7 (quoting *Swedish Hosp.*, 1 F.3d at 1271).

In the *Lorazepam* case, Judge Hogan noted that factors that may be considered by courts evaluating fee requests include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the award in similar cases.

*Id.* at *8 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)).  As noted above, the Court considers the settlement to represent a constructive common fund of $8.3 million and the Settlement Class is estimated to include two million consumers.  It is undisputed that this

litigation was complex and stretched over roughly a year and a half.  In addition, as discussed

above, Class Counsel are experienced litigators who have served as lead or co-counsel in

numerous complex antitrust class actions and other actions benefitting consumers.  Furthermore,

the Court notes again that the settlement in this action was obtained in the face of substantial

defenses, and that the settlement compares quite favorably with either expert's estimate of

damages to the Settlement Class.

The Court has already addressed the sole Objection to the settlement, which also includes

an Objection to Class Counsel's requested fees and expenses.  Specifically, Objector Morales

asserts that "[b]ased upon the utter lack of success to provide any compensation to the class, the

attorneys' fees and expenses are grossly excessive."  Obj. at 3.  However, for the reasons

discussed above, individualized distributions to Class Members were not economically feasible in

light of the minimal individual damages and the costs of administering an individualized recovery

system.  Moreover, as further discussed above, Class Members may directly benefit from the

settlement, albeit not in the form of monetary damages or coupons.  Finally, Objector Morales'

response to the settlement does not appear to be representative of Class Members, as Class

Counsel avers that following publication of notice to the Class, he "received numerous telephone

calls from Class Members who expressed that they were pleased with the product donation giving

women free access to birth control."  Sink Pet. Decl. ¶ 9.

As to the risk of non-payment, Class Counsel handled this case on a purely contingent

basis.  *Id.* ¶ 10.  Class Counsel devoted over 3600 hours of time to litigating this case, including

reviewing documents and data, retaining and consulting with experts, participating in

approximately twenty depositions, and researching and briefing numerous complex motions.  *Id.* ¶

3.  Moreover, in light of the substantial defenses raised by Defendants, "[t]he risk of nonpayment through either an award of summary judgment or loss at trial was significant and real in this case." *Lorazepam II*, 2003 WL 22037741, at *8 (quotation omitted).  Class Counsel have to-date expended more than 3600 of time and $100,000 in expenses without receiving any compensation. Pet. Mem. at 10; Sink Pet. Decl. ¶ 10.

Finally, the Court notes that "fee awards in common fund cases may range from fifteen to forty-five percent" and that "the normal range of fee recovery in antitrust suits is twenty to thirty percent of the common fund."  *Lorazepam II*, 2003 WL 22037741, at *8. (citing cases).  Here, Class Counsel's requested fee award of $1,880,293.13 represents roughly twenty-three percent (23%) of the constructive common fund of $8.3 million.  Class Counsel also notes a number of complex pharmaceutical antitrust actions in which courts have awarded significantly larger fee awards.  Pet. Mem. at 13-14 (citing cases with awards of 30% to 33.3%).  As such, Class Counsel's requested fee appears reasonable in comparison to fee awards in other comparable cases.  In light of the foregoing considerations, the Court concludes that Class Counsel's attorneys' fee request is reasonable, and shall therefore award Class Counsel $1,880,293.13 in attorneys' fees.[4]

Class Counsel also seek reimbursement for $104,706.87 in out-of-pocket expenses.

---

[4] Class counsel also avers that they expended an aggregate of 3,653.7 hours prosecuting this action, resulting in a total lodestar of $2,006,231.  *See* Sink Decl. ¶ 13.  These figure do not include any time expended following the submission of the parties' Joint Motion for Final Approval of the Settlement on October 2, 2007.  *Id.*  Class counsel is requesting attorneys' fees that are less than their lodestar without any multiplier, which serves as further evidence of the reasonableness of their attorneys' fee request.  *See Lorazepam II*, 2003 WL 22037741, at *9 ("multiples ranging up to 'four are frequently awarded in common fund cases when the lodestar method is applied.'") (quoting *Prudential Ins.*, 148 F.3d at 341).

"[T]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *Vitamins III*, 2001 WL 34312839, at *13 (citation omitted).  However, "counsel are entitled to reimbursement only for those expenses incurred in the course of work that benefitted the class." *Id.*  Here, Class Counsel have submitted a Declaration itemizing their expenses from the inception of this litigation to date, and aver that the expenses for which they seek reimbursement "are reflected in the books and records of Class Counsel," which "are prepared from checks, bills, and expense vouchers that are regularly kept and maintained by the firm and accurately reflect the expenses incurred."  Sink Pet. Decl. ¶¶ 14-15.  Based upon a review of this Declaration, the Court finds that Class Counsel reasonably expended the claimed amounts, and shall therefore approve payment of Class Counsel's requested expenses.

Class Counsel also request that the Court approve incentive awards of $7,500 to each of the named Plaintiffs, Stephanie Cohen and Sunda Croonquist.  The Court notes that Class Members were advised of these potential awards via the notice program, and that no objections to the incentive awards were received.  Pet. Mem. at 16.  As Judge Hogan noted in the *Lorazepam* case, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  2003 WL 22037741, at *10.  Here, the named Plaintiffs "fully complied with all demands placed on them during this litigation and assisted in Class Counsel's investigation of this case" by providing documents and information to aid counsel, and undergoing cross examination during their depositions.  Pet. Mem. at 16-17.  The Court therefore concludes that "the additional payments to the named Plaintiffs are reasonable in light of their investments of . . . money, and effort on the

part of the class." *Lorazepam III*, 2003 WL 22037741, at *11 (quoting *Collins v. Pension Benefit Guaranty Corp.*, No. CA 88-3406-AER, 1996 WL 335346, at *6 (D.D.C. Jun. 7, 1996)). The Court shall accordingly grant the requested incentive awards.

Finally, the parties advise the Court that there is a sum of $9,097.21 remaining in unexpended funds in the Notice Fund and that there are no anticipated additional fees or costs related to giving notice. Pet. Mem. at 18; Sink Pet. Decl. ¶ 16. The Settlement Agreement is silent as to the use of unexpended funds and the parties have agreed that a donation of the $9,097.21 to the National Women's Law Center in Washington, D.C. is appropriate. Pet. Mem. at 18. As the Court is unaware of any objection to this donation, the Court shall approve it.

## IV:  CONCLUSION

For the foregoing reasons, the Court shall grant the parties' [93] Joint Motion for Final Approval of the Settlement, and shall grant [95] Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Expenses, Incentive Awards to the Class Representatives, and Authorization to Distribute the Remaining Funds in the Notice Account to Charity. The parties' proposed Order and Final Judgment Approving Settlement Between Consumer Class Plaintiffs and Defendants accompanies this Memorandum Opinion.

Date:   November 15, 2007

                                        */s/*
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge